ACCEPTED
01-15-00715-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/21/2015 3:23:43 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-15-00715-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/21/2015 3:23:43 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE FIRST DISTRICT COURT OF APPEALS
## HOUSTON, TEXAS

## IN RE CVR ENERGY, INC. AND CVR REFINING, LP,

## RELATORS

Original Proceeding
From the 268th Judicial District Court of Fort Bend County, Texas
Cause No. 2015-DCV-220330
The Honorable Brady G. Elliott, Presiding

## PETITION FOR WRIT OF MANDAMUS

Phillip D. Sharp
State Bar No. 18118680
MARTIN, DISIERE, JEFFERSON &
WISDOM, L.L.P.
808 Travis, 20th Floor
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile
*sharp@mdjwlaw.com*

Lee M. Smithyman
Kansas State Bar No. 09391
SMITHYMAN & ZAKOURA, CHARTERED
750 Commerce Plaza II Building
7400 West 110th Street
Overland Park, Kansas 66210-2362
(913) 661-9800 – Telephone
(913) 661-9861 – Facsimile
*lee@smizak-law.com*
*Application for pro hac admission
pending*

## ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

**Relators/Defendants**:

CVR Energy, Inc. and CVR Refining, LP

In the trial court, the relators/defendants are represented by the following attorneys:

Phillip D. Sharp
State Bar No. 18118680
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
808 Travis, 20th Floor
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile
*sharp@mdjwlaw.com*

Lee M. Smithyman
Kansas State Bar No. 09391
SMITHYMAN & ZAKOURA, CHARTERED
750 Commerce Plaza II Building
7400 West 110th Street
Overland Park, Kansas 66210-2362
(913) 661-9800 – Telephone
(913) 661-9861 – Facsimile
*lee@smizak-law.com*

In this original proceeding, the relators/defendants are represented by the following attorneys:

Mr. Sharp and Mr. Smithyman

i

**<u>Real Parties In Interest/Plaintiffs</u>**:

Donald R. Collier, Jennifer J. Collier, Dale A. Niemeyer, and Wendy Niemeyer

In the trial court the real parties in interest/plaintiffs are represented by the following attorneys:

Mr. Gary M. Riebschlager
State Bar No. 16902200
THE RIEBSCHLAGER LAW FIRM, PC
801 Congress, Suite 250
Houston, Texas 77002
Telephone: (713) 980-5300
Facsimile: (713) 583-5915
*gary@riebschlagerlaw.com*

Mr. Richard L. Tate
State Bar No. 19664460
Ms. Kristin Reis
State Bar No. 24060478
TATE, MOERER & KING, LLP
206 South 2nd Street
Richmond, Texas  77469
Telephone: (281) 341-0077
Facsimile:  (281) 341-1003
*rltate@tate-law.com*
*kreis@tate-law.com*

ii

**Respondent**:

The Honorable Brady G. Elliott
268TH JUDICIAL DISTRICT COURT
FORT BEND COUNTY, TEXAS
1422 Eugene Heimann Circle
Room 30250, Courtroom 3D
Richmond, Texas 77469
Telephone: (281) 341-8610
Facsimile: unknown
E-mail: unknown

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL ..........................................................i

TABLE OF CONTENTS.................................................................................iv

TABLE OF AUTHORITIES ...........................................................................vi

STATEMENT OF THE CASE.........................................................................ix

STATEMENT REGARDING ORAL ARGUMENT ........................................x

STATEMENT OF JURISDICTION................................................................x

STATEMENT OF FACTS ...............................................................................1

SUMMARY OF THE ARGUMENT ................................................................6

ARGUMENT ...................................................................................................7

I.      THE STANDARD FOR MANDAMUS RELIEF ON FORUM NON CONVENIENS DECISIONS.................................................................7

II.     THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING RELATORS' MOTION TO DISMISS FOR FORUM NON CONVENIENS. ...............................................................................10

      A.      Consideration of Section 71.051 (b) Factors. ...................................12

          1.      Kansas is an Alternate Forum in Which the Claim or Action May be Tried.................................................................12

          2.      Kansas is a Forum Which Provides an Adequate Remedy. ...............................................................................13

          3.      Maintenance of the Claim or Action in Texas Would Work a Substantial Injustice. ...................................................14

          4.      Kansas Can Exercise Jurisdiction Over Properly-Joined Defendant. ....................................................................18

          5.      Balance of Private and Public Interests. .................................18

iv

III.    KANSAS LAW APPLIES TO THIS ACCIDENT.......................................21

      A.    Restatement General Factors........................................................22

           1.    Needs of the Interstate and International Systems...................23

           2.    Relevant Policies of the Forum................................................23

           3.    Relevant Policies and Interests of Other Interested States. .....24

           4.    Protection of Justified Expectations. ......................................24

           6.    Certainty, Predictability, and Uniformity of Result.................25

           7.    Ease in Determination and Application of the Law to be Applied........................................................................................26

      B.    Restatement Specific Factors. ...........................................................26

      C.    The Fact that Kansas Law is Different is Irrelevant. .........................27

IV.    PLAINTIFFS' ARGUMENT THAT DEFENDANTS' NEGLIGENCE OCCURRED IN TEXAS DOES NOT OVERCOME THE SECTION 71.051 FACTORS. .......................................................................................28

V.    CONCLUSION & PRAYER.........................................................................32

CERTIFICATION .................................................................................................33

CERTIFICATE OF COMPLIANCE.....................................................................34

CERTIFICATE OF SERVICE ..............................................................................34

APPENDICES & RELATOR'S RECORD

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Berg v. AMF, Inc.*,
  29 S.W.3d 212 (Tex. App.—Houston [14th Dist.] 2000, no pet.)................13, 28

*Coca-Cola Co. v. Harmar Bottling Co.*,
  218 S.W.3d 671 (Tex. 2006) ........................................................................7, 21

*Duncan v. Perry Packing Co.*,
  162 Kan. 79 P.2d 78 (1946) ...............................................................................23

*Fugit v. United Beechcraft, Inc.*,
  222 Kan. 312, 564 P.2d 521 (1977) ...................................................................20

*Gomez de Hernandez v. Bridgestone/Firestone N. Am. Tire, L.L.C.*,
  204 S.W .3d 473 (Tex. App.—Corpus Christi 2006, pet. denied)......................28

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ...........................................16

*Gutierrez v. Collins*,
  583 S.W.2d 312 (Tex. 1979)........................................................................21, 26

*Hollingsworth v. Fehrs Equip. Co. of K.C.*,
  240 Kan. 398, 729 P.2d 1214 (1986) .................................................................20

*Hughes Wood Prods. v. Wagner*,
  18 S.W.3d 202, 205-206 (Tex. 2000).....................................................20, 22, 25

*In re Arthur Andersen LLP,*
  121 S.W.3d 471 (Tex. App.—Houston [14th Dist.] 2003,
  orig. proceeding) ...................................................................................................8

*In re BPZ Res.*,
  359 S.W.3d 866 (Tex. App.—Houston [14th Dist.] 2012,
  orig. proceeding) ........................................................................................ passim

*In re Dauajare-Johnson*,
   No. 14-14-00256-CV,
   2014 WL 3401094 (Tex. App.—Houston [14th Dist.] July 10, 2014,
   orig. proceeding) ................................................................................12, 19, 26

*In re Ensco Offshore Int'l Co.*,
   311 S.W.3d 921 (Tex. 2010)................................................................... passim

*In re Gen. Elec. Co.*,
   271 S.W.3d 681 (Tex. 2008)................................................................... passim

*In re Mantle Oil & Gas, LLC*,
   426 S.W.3d 182 (Tex. App.—Houston [1st Dist.] 2012,
   orig. proceeding) ................................................................................... passim

*In re Omega Protein, Inc.*,
   288 S.W.3d 17 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ..................10, 17

*In re Pirelli Tire, L.L.C.*,
   247 S.W.3d 670 (Tex. 2007)................................................................... passim

*In re Team Rocket, L.P.*,
   256 S.W.3d 257 (Tex. 2008) ..............................................................................8

*Lalila v. Parker Drilling Co.*,
   No. 01-07-00281-CV, 2009 WL 618248
   (Tex. App.—Houston [1st Dist.] Mar. 12, 2009, no pet.)..................................13

*Liberty Mut. Ins. Co. v. Transit Mix Concrete & Materials Co*,
   06-12-00117-CV, 2013 WL 3329026
   (Tex. App.—Texarkana, Oct. 18, 2013, pet. denied)............................13, 26, 27

*Quixtar, Inc. v. Signature Mgmt. Team, LLC*,
   315 S.W.3d 28 (Tex. 2010).............................................................................17

*Sacks v. Four Seasons Hotel, Ltd.*,
   No. 5:04CV73, 2006 WL 783441 (E.D. Tex. Mar. 24, 2006)...........................23

*Sammons & Berry P.C. v. Nat'l Indem. Co.*,
   No. 14-13-00070-CV, 2014 WL 3400713
   (Tex. App.—Houston [14th Dist.] July 10, 2014, no pet.) .....................14, 19, 28

*Schippers v. Mazak Props., Inc.*,
   350 S.W.3d 294 (Tex. App.—San Antonio 2011, pet denied) ......................14, 16

*Torrington v. Stutzman*,
   46 S.W.3d 829 (Tex. 2000) ...............................................................................21

*Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico*,
   336 S.W.3d 664 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ....13, 19, 21, 26

*Zermeno v. McDonnell Douglas Corp.*,
   246 F. Supp. 2d 646 (S.D. Tex. 2003) ...............................................................21

**Statutes**

K.S.A. § 44-501 ........................................................................................................2

K.S.A. § 44-501b(d)............................................................................................20, 23

K.S.A. § 60-258a...................................................................................................14

K.S.A. § 60-513a(4)...............................................................................................14

TEX. CIV. PRAC. & REM. CODE § 71.051........................................................ passim

TEX. GOV'T CODE § 22.221(b)....................................................................................x

**Other Authorities**

P.I.K.4th § 171.02 ..................................................................................................14

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145........................................22, 26

RESTATEMENT (SECOND) CONFLICT OF LAWS § 6.................................................22

TEX. CONST. art. V § 6 .............................................................................................x

**Rules**

TEX. R. CIV. P. 176.3(a) .........................................................................................15

TEX. R. CIV. P. 52 ....................................................................................................x

## STATEMENT OF THE CASE

Relators' Petition for a Writ of Mandamus addresses Judge Elliott's denial of a motion to dismiss for forum non conveniens pursuant to Section 71.051 of the Texas Civil Practice and Remedies Code in the 268th Judicial District Court of Fort Bend County, Texas.

Real Parties in Interest are the plaintiffs in a Fort Bend County civil suit for damages sustained by Donald Collier and Dale Niemeyer in a Coffeyville, Kansas refinery fire, caused by a pump seal leak, during their Kansas employment with Coffeyville Resources Refining & Marketing, LLC ("CRRM"). Relators, who are the named Defendants, are parent companies with an equity interest in CRRM. The Respondent is the Honorable Brady G. Elliott.

Plaintiffs' Original Petition was filed on January 12, 2015; service was obtained on May 18, 2015. Relators filed their Motion to Dismiss for forum non conveniens on June 1, 2015 because:

(1)     virtually all material witnesses and evidence regarding the accident are located in Kansas;

(2)     Kansas law applies to the Kansas accident; and

(3)     the Plaintiffs reside in Independence, Kansas and the adjacent South Coffeyville, Oklahoma.

Judge Elliott denied said Motion on August 7, 2015.

## STATEMENT REGARDING ORAL ARGUMENT

The relators respectfully suggest that the Court should grant oral argument. This case requires detailed analysis of the Texas forum non conveniens statute, the facts, and Kansas law. Oral argument will provide the Court helpful elaboration on the issues, which are detailed and particular.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to issue a writ of mandamus in this case under Article V, Section 6 of the Texas Constitution, Section 22.221(b) of the Texas Government Code, and Rule 52 of the Texas Rules of Appellate Procedure.

## ISSUE PRESENTED

Did the district court abuse its discretion by denying a motion to dismiss for forum non conveniens where the evidence established (1) the real parties in interest are residents of Kansas and Oklahoma, (2) the real parties in interest were injured in a fire occurring in Kansas during the course and scope of their employment in a Kansas refinery, and (3) virtually all witnesses and evidence surrounding the cause of the fire, the events occurring during and after the fire, and damages are located in Kansas and Oklahoma, outside subpoena range of the Fort Bend County, Texas trial court.

## STATEMENT OF FACTS

1.      Real Parties in Interest/Plaintiffs Donald R. Collier and Jennifer J. Collier are individuals who reside in Independence, Kansas.  RR Tab 4 at 1.[1]

2.      Real Parties In Interest/Plaintiffs Dale A. Niemeyer and Wendy Niemeyer are individuals who reside in South Coffeyville, Oklahoma, which is immediately adjacent to Coffeyville, Kansas.  RR Tab 4 at 1.

3.      The Plaintiffs filed their Original Petition on January 12, 2015.  RR Tab 4 at 1.

4.      The Relator Defendants, CVR Energy, Inc. and CVR Refining, LP (collectively, "CVR"), were served on or about May 18, 2015.  RR Tab 3 at 2.

5.      The Plaintiffs' causes of action address work injuries sustained in an accident by Mr. Collier and Mr. Niemeyer, which occurred in the Coffeyville Refinery, located in Coffeyville, Kansas.  RR Tab 4 at 2-3.

6.      Mr. Collier and Mr. Niemeyer are employees of Coffeyville Resources Refining & Marketing, LLC ("CRRM"), which is a subsidiary of these Relators.  RR Tab 4 at 3.

---

[1] For ease of reference, the Appendix and Relator's Record is cited as "RR Tab [Number] at [Page Number]."

1

7.     CRRM is alleged to be a wholly-owned subsidiary of CVR. RR Tab 4 at 3.[2]

8.     Mr. Collier and Mr. Niemeyer received workers' compensation benefits pursuant to the Kansas Workers' Compensation Act, K.S.A. 44-501, *et. seq.* RR Tab 7 at Ex. 1.

9.     Plaintiffs allege that the fire resulted when "a critical leak occurred on a pump in the Isometric Unit of the Refinery." RR Tab 4 at 3.

10.     Plaintiffs allege that because CRRM is a wholly-owned subsidiary of CVR, CVR is liable for the torts of CRRM.[3] RR Tab 4 at 3-4.

11.     Plaintiffs allege that CVR committed unspecified acts of negligence. Paragraph 19 of their Petition states:

> On the occasion in question, CVR, by and through their officers, employees, agents and representatives, independently committed acts of omission and commission which collectively and severally constitute negligence that proximately caused the deaths of plaintiffs' decedents and damages to Plaintiffs. CVR failed. CVR's failure is negligence as defined above.[4]

---

[2] That allegation is inaccurate, CRRM is a wholly-owned subsidiary of CVR Refining, LP. CVR Energy, Inc. owns the General Partner and 66% of the Limited Partner units of CVR Refining, LP; hence, CRRM is not a wholly-owned subsidiary of CVR Energy, Inc. RR Tab 7 at Ex. 1.

[3] See fn. 2 above. Independent of the factual inaccuracy, wholly-owned status does not result in the liability of a parent or owner as a matter of law. *Abdel-Fattah v. Pepsico, Inc.*, 948 S.W.2d 381, 384 (Tex. App.-Houston [14th Dist.] 1997, no writ).

[4] The allegation is inaccurate; neither Mr. Collier nor Mr. Niemeyer died in the fire and no wrongful death case is being pursued. *See* RR Tab 4.

2

12.     Plaintiffs also allege that CVR committed acts of gross negligence, without further specification.  RR Tab 4 at 4.

> Defendants' acts and omission are of such a character as to lead to the conclusion that they not only constitute negligence, but rise to the level of gross negligence/malice.  Defendants acted with conscious indifference to the rights, safety and welfare of Donald R. Collier and Dale A. Niemeyer, and proximately caused their injuries through the enumerated acts or omissions.

RR Tab 4 at 4.

13.     On June 1, 2015, twelve days after service upon them, Relators filed their motion to dismiss for forum non conveniens pursuant to section 71.051 of the Texas Civil Practice and Remedies Code.  RR Tab 6.

14.     On July 6, 2015, Relators responded to Plaintiffs' Rule 194 Request for Disclosure by identifying 34 potential witnesses with knowledge of the relevant facts associated with the accidental fire.  RR Tab 8.  Of those witnesses identified:

> (i)     Twenty-nine are residents of Kansas,
>
> (ii)    Three are residents of Oklahoma or Missouri,
>
> (iii)   Two (one being an expert) are residents of Texas.

RR Tab 8 at Ex. 1 at 4-10.

15.     Relators' Rule 194 disclosures identified CRRM, which owns the refinery located in Coffeyville, Kansas, as a responsible third party ("RTP").  RR Tab 8 at Ex. 1 at 11.

16.     While emergency medical technicians (EMTs), police officers and firemen have not yet been identified, all emergency responders to the Kansas fire are likely from the Coffeyville, Kansas area. To the best of Relators' belief, all healthcare providers are located in Kansas, or adjacent areas of Oklahoma and Missouri. To Relators' knowledge, there are no Texas healthcare providers associated with the care and treatment of Mr. Collier or Mr. Niemeyer.

17.     On August 7, 2015, the date the motion to dismiss was orally argued, the Plaintiffs filed a Supplemental Petition to also allege:

> In addition to the allegations previously pled, Plaintiffs allege that Defendants were independently negligent in the performance of their duties under the Management Services Agreement proximately causing Plaintiffs damages and injuries as previously pled.

RR Tab 10 at 1.[5]

18.     By the terms of that Services Agreement (RR Tab 11), the Relators agreed that:

(i.)    They were amenable to legal proceedings brought in the State of Kansas (RR Tab 11 at ¶ 10.08);

(ii)    The agreement would be governed by Kansas law (RR Tab 11 at ¶ 10.07); and

(iii)   The agreement's provisions would create no rights for alleged third party beneficiaries (RR Tab 11 at ¶ 10.05).

---

[5] The referenced Services Agreement is found at RR Tab 11.

19.    Judge Elliott denied Relators' motion to dismiss for forum non conveniens on the record at the conclusion of August 7 oral argument.  RR Tab 2 at 33 ("On the issue that I have to decide on today, I'm going to deny your motion.").

20.    CVR Energy, Inc. and CVR Refining, LP, are in good standing with and registered to do business in Kansas.  RR Tab 8 at Ex. 1, ¶¶ 8-9.  Both are amenable to service of process through their registered agent in Kansas. *See id.*

21.    The pump which experienced a seal failure is estimated to weigh 1,000 pounds and is stored in Coffeyville, Kansas.  RR Tab 8 at Ex. 1, ¶¶ 8-9.

## SUMMARY OF THE ARGUMENT

The district court abused its discretion by denying the relators' motion to dismiss for forum non conveniens where the evidence presented to the district court established that Texas is an inconvenient forum to try the underlying lawsuit. Specifically, as required by Section 71.051 of the Civil Practice and Remedies Code, the evidence established (1) Kansas is an alternate forum in which the underlying lawsuit may be tried; (2) Kansas law provides an adequate remedy to the real parties in interest; (3) that maintenance of the lawsuit in Texas would work a substantial injustice to the relators as witnesses necessary to the defense are outside the district court's subpoena power; (4) Kansas can exercise jurisdiction over all the defendants in the underlying lawsuit, as well as the designated responsible third party; and (5) that dismissal of the underlying lawsuit in order to allow the case to proceed in Kansas would not result in unreasonable duplication or proliferation of litigation. *See* Tex. Civ. Prac. & Rem. Code § 71.051.

The balance of private interests of the parties, as well as the public interest of Texas and Kansas favor the dismissal of the underlying lawsuit in Texas in order to allow the Kansas judicial system to assert jurisdiction. Texas has no public interest in taxing its citizens and judicial system to adjudicate claims of Kansas and Oklahoma citizens injured in a fire occurring in Coffeyville, Kansas. Moreover, this case concerns novel issues of Kansas law, specifically, whether

6

Kansas workers' compensation law bars employees of a subsidiary entity from suing the subsidiary's parents. Comity requires dismissal of the Texas action to allow the Kansas judicial system to define the scope of its own laws. *See Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 680-82 (Tex. 2006).

The evidence simply does not support the district court's conclusion that Texas is a proper and convenient forum. The Court should direct the district court to vacate its order denying the relators' motion to dismiss for forum non conveniens and instruct it to dismiss the underlying lawsuit in order to allow the suit to proceed in the courts of Kansas. *See* Tex. Civ. Prac. & Rem. Code § 71.051.

## ARGUMENT

## I. THE STANDARD FOR MANDAMUS RELIEF ON FORUM NON CONVENIENS DECISIONS.

A district court's decision to deny a motion to dismiss for forum non conveniens is reviewed for abuse of discretion. *In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008). The district court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles. *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007). In applying the forum non conveniens factors of section 71.051 of the Texas Civil Practice and Remedies Code, "a trial court has no discretion in determining what the law is or in applying the law to the particular facts." *In re Mantle Oil & Gas, LLC*, 426 S.W.3d 182,

7

187 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding); *In re Brokers Logistics, Ltd.*, 320 S.W.3d 402, 405 (Tex. App.—El Paso 2010, orig. proceeding) (holding that a failure by the district court to analyze or apply the law correctly constitutes an abuse of discretion); *see also In re Arthur Andersen LLP,* 121 S.W.3d 471, 476 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) ("[A]s to legal issues, an error amounting to an abuse of discretion can be as simple as misinterpreting or misapplying the law.").

Mandamus relief is appropriate to remedy an improper denial of a motion to dismiss for forum non conveniens. *See In re Ensco Offshore Int'l Co.,* 311 S.W.3d 921, 923, 929 (Tex. 2010); *In re Mantle Oil & Gas*, 426 S.W.3d at 187; *In re Omega Protein, Inc.*, 288 S.W.3d 17, 21 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Indeed, the Supreme Court specifically recognizes that "[a]n adequate remedy by appeal does not exist when a motion to dismiss for forum non conveniens is erroneously denied." *In re Gen. Elec. Co.*, 271 S.W.3d at 685.

Mandamus relief in the present situation will "spare litigants and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008). The benefits of mandamus review clearly outweigh the detriments. Here, the grant of mandamus can prevent this Kansas based dispute, which is governed by Kansas law, from proceeding in a Texas forum five hundred miles from the

8

location of the witnesses and evidence. Mandamus relief will spare the litigants and the State of Texas from the waste of time and money preceding an eventual reversal for improperly conducted proceedings. The judiciary and citizenry of Texas should not be burdened to resolve a dispute involving a Kansas accident to Kansas workers, governed by Kansas law, for which Kansas evidence is required.

Mandamus is an appropriate remedy where, as here, a district court abuses its discretion in denying a motion to dismiss for forum non conveniens. *See In re Ensco Offshore Int'l Co.,* 311 S.W.3d 921, 929 (Tex. 2010) (granting mandamus, despite defendants' Dallas offices, where Australian citizen employed by Australian company suffered fatal accident on drilling rig in Singapore waters); *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 676 (Tex. 2007) (granting mandamus in Texas suit by Mexican citizens as survivors of Mexican citizen who died in rollover accident on Mexican highway); *In re Gen. Elec. Co.*, 271 S.W.3d 681, 694 (Tex. 2008) (granting mandamus where Maine citizen injured from asbestos exposure at Maine jobsite filed suit against Texas companies that manufactured or distributed asbestos); *In re BPZ Res.*, 359 S.W.3d 866, 881 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding (granting mandamus where Peruvian oil tanker exploded off Peruvian coast, despite fact that Texas corporations were parents of Peruvian company that owned oil production platform); *In re Mantle Oil & Gas, LLC*, 426 S.W.3d 182, 187 (Tex. App.—Houston [1st Dist.] 2012, orig.

9

proceeding)*, (granting mandamus where Louisiana residents injured by a Louisiana oil well blowout sued the Texas oil well operator in Texas); *In re Omega Protein, Inc.,* 288 S.W.3d 17, 21 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("We hold that an analysis incorporating the *Gulf Oil* factors strongly favors a Virginia forum, where the plaintiff and the witnesses live, the documents are housed, and the fishing vessel alleged to be unseaworthy docks.").

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING RELATORS' MOTION TO DISMISS FOR FORUM NON CONVENIENS.

Upon receipt of a motion to dismiss due to forum non conveniens, the district court must evaluate and analyze the section 71.051 factors in order to determine whether to stay or dismiss the action. The forum non conveniens statute does not place the burden of proof on either party. *In re Ensco Offshore Int'l Co.*, 311 S.W.3d at 927. To the extent evidence is necessary to support a party's position, the trial court must base its decision on the greater weight of the evidence. *In re Gen. Elec. Co.*, 271 S.W.3d at 687. If the court determines that in the interest of justice and for the convenience of the parties, the plaintiff's claim would be more properly heard in a forum outside the state, the statute instructs that "the court **shall** decline to exercise jurisdiction under the doctrine of forum non conveniens and **shall** stay or dismiss the claim or action." Tex. Civ. Prac. & Rem. Code § 71.051(b) (emphasis supplied).

Section 71.051(b) of the Texas Civil Practice & Remedies Code sets forth the factors relevant to the inconvenient forum analysis, providing:

> In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court shall consider whether:
>
> > (1) an alternate forum exists in which the claim or action may be tried;
> >
> > (2) an alternative forum provides an adequate remedy;
> >
> > (3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;
> >
> > (4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;
> >
> > (5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and
> >
> > (6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

Tex. Civ. Prac. & Rem. Code § 71.051(b).

The statute further provides:

> The court **shall dismiss** a claim under Subsection (b) if the court finds by a preponderance of the evidence that a party was joined solely for the purpose of obtaining or maintaining jurisdiction in this state and the party's claim would be more properly heard in a forum outside this state.

Tex. Civ. Prac. & Rem. Code § 71.051(e) (emphasis supplied.). As noted by the Texas Supreme Court: "The word 'shall' in the statute 'requires dismissal of the claim or action if the statutory factors weigh in favor of the claim or action being more properly heard in a forum outside of Texas.'" *In re Ensco Offshore Int'l Co.*, 311 S.W.3d 921, 924 (Tex. 2010) (quoting *In re Gen. Elec.*, 271 S.W.3d at 686.

### A. Consideration of Section 71.051 (b) Factors.

Consideration of the section 71.051 factors reflects that Kansas is clearly an appropriate and superior forum to resolve the issues presented by the underlying litigation.

#### 1. Kansas is an Alternate Forum in Which the Claim or Action May be Tried.

"An alternate forum is one where the defendant is amenable to process." *In re Ensco Offshore Int'l Co at* 311 S.W.3d at 924; *In re Gen. Elec. Co.*, 271 S.W.3d at 687. A alternative forum is available when the entire case and all the parties can come within the jurisdiction of that forum. *Vinmar Trade Fin. Ltd.*, 336 S.W.3d at 674; *In re Dauajare-Johnson*, No. 14-14-00256-CV, 2014 WL 3401094 (Tex. App.—Houston [14th Dist.] July 10, 2014, orig. proceeding). CVR Energy, Inc. and CVR Refining, LP are registered to do business in Kansas and doing business in Kansas. *See* RR Tab 8 at Ex 1. Thus, each Relator has a registered agent amenable to process in the State of Kansas. *See id.*

12

### 2. Kansas is a Forum Which Provides an Adequate Remedy.

"An alternative forum is inadequate if the remedies that it offers are so unsatisfactory that they really comprise no remedy at all." *In re Ensco*, 311 S.W.3d at 924; *In re Gen. Elec.*, 271 S.W.3d at 688; *In re Mantle*, 426 S.W.3d at 189. "That the substantive law of alternative forum may be less favorable to the plaintiff is entitled to little, if any, weight." *In re Pirelli Tire*, 247 S.W.3d 670, at 678 (Tex. 2007). "An alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico*, 336 S.W.3d 664, 674 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

In the recent past, Texas appellate courts have determined the following forums provide adequate remedies: Mexico (*Id.*), Peru (*In re BPZ Res.*, 359 S.W.3d at 879), Australia (*In re Ensco, supra*), Canada (*Berg v. AMF, Inc.*, 29 S.W.3d 212, 217 (Tex. App.—Houston [14th Dist.] 2000, no pet.)), Bangladesh (*Lalila v. Parker Drilling Co.*, No. 01-07-00281-CV, 2009 WL 618248 (Tex. App.—Houston [1st Dist.] Mar. 12, 2009, no pet.)), Louisiana (*In re Mantle, supra*), Arkansas (*Liberty Mut. Ins. Co. v. Transit Mix Concrete & Materials Co*, 06-12-00117-CV, 2013 WL 3329026 at *10 (Tex. App.—Texarkana, Oct. 18, 2013, pet. denied)), Florida (*Schippers v. Mazak Properties, Inc.*, 350 S.W.3d 294,

13

298 (Tex. App.—San Antonio 2011, pet denied)), and New Mexico (*Sammons & Berry P.C. v. Nat'l Indem. Co.*, No. 14-13-00070-CV, 2014 WL 3400713, at \*5 (Tex. App.—Houston [14th Dist.] July 10, 2014, no pet.)).

Kansas has a comparative negligence statute similar to that of Texas. *See* K.S.A. § 60-258a (RR Tab 13). Kansas has a two-year tort statute of limitations, similar to Texas, for personal injuries. K.S.A. § 60-513a(4) (RR Tab 14). Kansas permits full recovery of economic damages for bodily injury. *See* P.I.K.4th § 171.02 (RR Tab 15). As a sister state to Texas, Kansas provides similar causes of action and remedies to its citizenry. Obviously, a Kansas forum will provide an adequate remedy. *See In re Ensco*, 311 S.W.3d at 924

### 3. Maintenance of the Claim or Action in Texas Would Work a Substantial Injustice.

The Real Parties in Interest premise jurisdiction and venue in Fort Bend County upon the fact that the CVR Defendants operate a joint office in Sugar Land, Texas. RR Tab 4 at 3. However, the location of this office is the only real connection with Texas. As reflected in the Statement of Facts, virtually all identified witnesses to the accident are residents of Coffeyville, Kansas, or South Coffeyville, Oklahoma.[6] Common sense indicates that virtually all emergency responders and healthcare providers are also from Kansas or Oklahoma. Only two

---

[6] Plaintiffs identified four or five of Relators' employees who allegedly made management decisions in Texas. These allegations are addressed in Section IV.

of the identified witnesses could be compelled to testify by Texas process: one Sugar Land office worker investigated the incident and an identified expert witness. *See* RR Tab 8. The healthcare providers attending to Mr. Collier and Mr. Neimeyer would all reside in the Kansas and Oklahoma areas.

Texas Rule of Civil Procedure 176.3(a) states:

> A person may not be required by subpoena to appear or produce documents or other things in a county that is more than 150 miles from where the person resides or is served.

The Texas Supreme Court has held that "the lack of compulsory process in Texas for reaching the great majority of witnesses would be substantially unjust." *In re Ensco*, 311 S.W.3d at 921; *In re Gen. Elec.*, 271 S.W.3d at 689. It is undisputed, and indisputable, that witnesses residing in Kansas and Oklahoma are more than 150 miles from Fort Bend County, Texas. Accordingly, virtually none of the fact witnesses can be compelled to testify. *See* Tex. R. Civ. P. 176.3(a). In *General Electric*, the Texas Supreme Court emphasized that trial should proceed where the witnesses and evidence are located:

> . . . [T]he practical problems of trying a personal injury case hundreds of miles from the scene of the occurrence, the place where the lay witnesses reside, and where most other evidence is located is manifest. . . . Reasonable access to witnesses and evidence is a fundamental need in regard to any trial . . .

15

*In re Gen. Elec.*, 271 S.W.3d at 691-92. *See also In re BPZ Res.*, 359 S.W.3d at 879; *Schippers v. Mazak Props., Inc.*, 350 S.W. 3d 294, 296 (Tex. App.—San Antonio 2011, pet. denied).

In Judge Elliott's decision commentary, he noted that the witnesses of Kansas could be available to his Court through deposition presentations, video depositions, telephone testimony and the like. App Tab 2 at 9:24 - 12:20. However, the U.S. Supreme Court has long instructed that "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their case on deposition, is to create a condition not satisfactory to court, jury or most litigants." *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Moreover, while the availability of such witnesses remains speculative, trial presentation would certainly be impaired by days of reading depositions, presenting videotape depositions or telephone testimony. Video depositions have been commonly available for at least ten years. The "substantially unjust" determinations of the Texas Supreme Court in *Ensco* (2010) and *General Electric* (2008) were made at a time when video depositions were established procedures.

This court may take judicial notice that Coffeyville is approximately 500 miles from Fort Bend County, Texas. Live testimony would require that each

16

witness travel more than 500 miles to testify. Travel and lodging costs would be prohibitive.

Section 71.051 does not contain any language placing the burden of proof on a particular party; instead, section 71.051 simply requires the trial court to consider the factors, and it must do so to the extent the factors apply. *In re Mantle Oil & Gas, LLC*, 426 S.W.3d at 188. To the extent necessary, the trial court must base its decision on the weight of the evidence, and it is entitled to "take into account the presence or absence of evidence as to some issue or position of a party." *Id.*

Clearly, the weight of the evidence regarding compulsory witness testimony favors dismissal in favor of Kansas. *In re Gen. Elec. Co.*, 271 S.W.3d at 689 ("requiring parties to litigate a case . . . in Texas until it becomes clear that it is 'impossible' to defend the case due to unavailability of evidence and fact witnesses because they are beyond the reach of compulsory process is a waste of private and public resources.").

Plaintiffs are not Texas residents. RR Tab 4 at 1. The forum non conveniens doctrine "generally affords substantially less deference to a non resident's forum choice." *In re Mantle*, 426 S.W.3d at 188; *In re Pirelli Tire*, 247 S.W.3d at 675; *In re Omega Protein, Inc.*, 288 S.W.3d at 21; *Quixtar, Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010). "Dismissal on forum non conveniens grounds is appropriate where sufficient contacts between

17

the defendant and the forum state exist so as to confer personal jurisdiction, but the case itself has no significant connection to the forum state." *In re Pirelli Tire*, 247 S.W.3d at 675-76. "Allowing the suit to proceed in Texas simply because this State may provide the most attractive or convenient forum for the plaintiffs, or because plaintiffs rate Texas as the most advantageous forum as a matter of legal strategy, is not justified where Texas has no stake in the outcome." *Id.* at 682.

### 4. Kansas Can Exercise Jurisdiction Over Properly-Joined Defendant.

As previously stated, the Relator Defendants are in good standing and registered to do business in the State of Kansas. RR Tab 8 at Ex. 1, ¶¶ 8-9. As such, both are amenable to service through their registered agent in Kansas. *Id.* Thus, Kansas has jurisdiction over the Plaintiffs, these Relators, and the designated responsible third party (CRRM). *See id*. It also has jurisdiction over the vast majority of fact witnesses. *See* RR Tab 8 at Ex. 1 at 4-10.

### 5. Balance of Private and Public Interests.

#### (i) Private Interests of the Parties.

The pump which failed is estimated to weigh 1,000 pounds and is stored in Coffeyville, Kansas. RR Tab 8 at Ex. 1, ¶¶ 8-9. Obviously, the site of the accident and the related piping, machinery and facilities are all located within the Coffeyville refinery. Jury access to the site of the accident and the equipment exists in Kansas, not Texas. Thus, the private interests of the parties in the conduct

18

of trial in the jurisdiction where the accident occurred and machinery exists is beneficial to both the parties and to the proper resolution of the litigation.

### (ii) Public Interest of Texas.

This is an accident which occurred to Kansas residents, employed at a Kansas place of business, through a Kansas employment relationship, for which Kansas workers' compensation benefits were provided. *See* RR Tab 8 at Ex. 1, ¶¶ 8-9. Texas has little, if any, relevance to the litigation. "It is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State." *In re Mantle Oil & Gas*, 426 S.W.3d at 189, 194-195; *see also In re Dauajare-Johnson*, No. 14–14–00256–CV, 2014 WL 3401094, at *11 (Tex. App.—Houston [14th Dist.] July 10, 2014, orig. proceeding).

### (iii) Public Interest of Kansas.

In *In re Dauajare-Johnson*, the Fourteenth Court of Appeals recognized that "even the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds." 2014 WL 3401094 at *11; *see also Vinmar Trade Fin., Ltd.*, 336 S.W.3d at 679 (holding same); *Sammons & Berry, P.C.*, 2014 WL 3400713 at * 5 (holding same). As noted in Section III below, Kansas law applies to this accident. *See* Section III. Because the Plaintiffs received workers' compensation benefits pursuant to the Kansas Workers'

19

Compensation Act (RR Tab 8 at Ex. 1), there exists the issue of the extent to which the Kansas workers' compensation immunity provided by K.S.A. 44-501b(d) will protect parent companies. In *Hughes Wood Products, Inc. v. Wagner*, the Texas Supreme Court stated:

> Section 184 of the Restatement provides the standards by which a court is to determine immunity from a tort suit when an employee is covered by workers' compensation insurance . . . That section provides:
>
> > Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which
> >
> > (a)     the plaintiff has obtained an award for the injury, or . . . .

18 S.W.3d 202, 205-06 (Tex. 2000) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 184). The issue of whether the stockholders or the equity interest holders of an employer enjoy identical workers' compensation immunity, and what the parameters and extent of that immunity might be, are matters of developing Kansas law. Kansas provides workers' compensation immunity to independent contractors, providing work which "is necessarily inherent in and an integral part" of the statutory employer's trade or business. *Hollingsworth v. Fehrs Equip. Co. of K.C.*, 240 Kan. 398, 405, 729 P.2d 1214, 1219 (1986). However, that principle has received limited examination in the context of a parent-subsidiary relationship. *See Fugit v. United Beechcraft, Inc.,* 222 Kan. 312, 315, 564 P.2d 521, 524 (1977).

20

Kansas has a keen and abiding interest in allowing its judicial system to address and determine such issues, and such issues should not be determined by a district court sitting in Fort Bend County, Texas, as a matter of comity. *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 680-82 (Tex. 2006) ("On occasion, comity and choice of law may suggest that a Texas court should dismiss a claim in favor of a foreign forum under principles of forum non conveniens.").

## III.   KANSAS LAW APPLIES TO THIS ACCIDENT.

Where a foreign law governs the relief to be afforded by a lawsuit, such a factor also weighs in favor of dismissal under the doctrine of forum non conveniens. *See Vinmar Trade Fin., Ltd.*, 336 S.W.3d at 678. As Kansas law applies to the underlying litigation, this factor also shows the district court abused its discretion by denying Relators' motion to dismiss. *Id.*

Texas courts follow the "most significant relationship test" set out in the Second Restatement of the Conflict of Laws to determine the applicable law in tort cases where the injury occurred outside the state of Texas. *See Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 655 (S.D. Tex. 2003) (citing *Torrington v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000)); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). Section 145 of the Restatement outlines the factual matters to consider in applying the Section 6 principles to a given case. *See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 145. Applying the "most

21

significant relationship test," the present facts compel the application of Kansas substantive law to an employment accident for which workers' compensation was provided. *Hughes Wood Products v. Wagner*, 18 S.W.3d at 205-06.

## A. Restatement General Factors.

Section 6 of the Restatement identifies the general factors relevant to the choice of law question. As the Court will see, an analysis of these considerations weighs heavily in support of applying Kansas law:

(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) the protection of the justified expectations;

(e) the basic policies underlying the particular field of law;

(f) certainty, predictability and uniformity of result; and

(g) ease in determination and application of the law to be applied.

*See* RESTATEMENT (SECOND) CONFLICT OF LAWS § 6.

### 1. Needs of the Interstate and International Systems.

The goal of this initial factor is to harmonize relations between the states and to facilitate commercial activities between them. *See Sacks v. Four Seasons Hotel, Ltd.*, No. 5:04CV73, 2006 WL 783441 at *17 (E.D. Tex. Mar. 24, 2006). Statutory workers' compensation immunity is the most significant difference between the Kansas and Texas laws relevant to this case. Unlike Texas law, Kansas does not allow plaintiffs to circumvent the workers' compensation immunity by allegations of gross negligence. K.S.A. § 44-501b(d); *see also Duncan v. Perry Packing Co.*, 162 Kan. 79, 174 P.2d 78 (1946).

### 2. Relevant Policies of the Forum.

Texas is the site of the joint headquarters of CVR Energy, Inc. and CVR Refining, LP, which possess an indirect equity interest in Plaintiffs' employer, CRRM. *See* RR Tab 8 at Ex. 1; RR Tab 9 at Ex. 2. With that lone exception, Texas has no recognizable interest in protecting Kansas citizens from Kansas injuries occurring in Kansas by a company doing business in Kansas. *See In re Mantle Oil & Gas*, 426 S.W.3d at 189, 194-195. The fire at issue occurred on the premises of Coffeyville Resources Refining & Marketing, LLC's refinery, located in Coffeyville, Kansas. *See* RR Tab 4 at 3. This Kansas fire harmed Kansas residents who were full-time employees of their Kansas-based employer. *Id*. For their injuries, the Kansas residents received Kansas workers' compensation. RR

Tab 8 at Ex. 1. Texas has no real interest in the litigation. *See In re Mantle Oil & Gas*, 426 S.W.3d at 189, 194-195.

### 3. Relevant Policies and Interests of Other Interested States.

The relevant policies of Kansas impact this litigation. Kansas is the residential state of Donald R. Collier and the state in which Dale A. Niemeyer is employed. RR Tab 4 at 1-3. Kansas is the state where the employment relationship between Mr. Collier, Mr. Niemeyer and Coffeyville Resources Refining & Marketing, LLC ("CRRM") exists. *See id.* Kansas is the state where the accident occurred. *Id.* Kansas law governed the payment of workers' compensation benefits to Mr. Collier and Mr. Niemeyer and governs the subrogation rights of CRRM and its insurer. RR Tab 8 at Ex. 1. Again, Texas has no real interest in this matter. *See In re Mantle Oil & Gas*, 426 S.W.3d at 189, 194-195.

### 4. Protection of Justified Expectations.

According to comment (g) on Subsection 2 of Section 6 of the Restatement, the protection of justified expectations is least appropriate in negligence cases. Restatement (Second) Conflict of Laws § 6, cmt. (g). Specifically, comment (g) states:

> There are occasions, particularly on the area of negligence, when the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied. In such situations, the parties have no justified expectations to protect, and this factor **can**

24

**play no part in the decision of a choice-of-law question**. (Emphasis added.)

*Id.* Moreover, there is no evidence that the real parties' "justified expectation" was that Texas law would apply to any injuries resulting from their Kansas employment with CRRM.

### 5. Basic Policies Underlying the Particular Field of Law.

The workers' compensation policies of Texas have no relationship to the instant litigation. Here, Kansas workers' compensation benefits were provided to Kansas workers injured in Kansas. RR Tab 8 at Ex. 1. Kansas, not Texas, has the immediate interest to insure that its public policies are correctly implemented to regulate its employers and its employees.

### 6. Certainty, Predictability, and Uniformity of Result.

The principles of certainty, predictability and uniformity of result would be furthered by application of Kansas law to this Kansas accident. Plaintiffs received the statutory benefits available to them through the workers' compensation law of Kansas. *See* RR Tab 8 at Ex. 1. Utilization of the statutory workers' compensation immunity of the state in which the accident occurred is required to obtain a certain, predictable and uniform result. *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d at 205-206.

25

**7.** **Ease in Determination and Application of the Law to be Applied.**

The application of Kansas law to this case is best accomplished by a Kansas Court. Indeed, as courts recognize that "[e]ven the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds," the evidence establishes that the trial court abused its discretion in denying the relators' motion to dismiss. *In re Dauajare-Johnson*, 2014 WL 3401094 at \*11; *Vinmar*, 336 S.W.3d at 679.

**B.** **Restatement Specific Factors.**

While Section 6 of the Restatement "sets out the general principles by which the more specific rules are to be applied," Section 145 of the Restatement provides the more specific criteria applicable to a tort case. *Gutierrez*, 583 S.W.2d at 318-19. Section 145 emphasizes the following four factors:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* at 319 (quoting RESTATEMENT (SECOND) CONFLICTS OF LAW § 145).) *See also, Transit Mix Concrete & Materials Co.*, 2013 WL 3329026 at \*5.

26

"In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties . . ." *Transit Mix Concrete & Materials Co.*, 2013 WL 3329026 at *6. Here, the injuries occurred in Kansas. RR Tab 4 at 3; RR Tab 7 at Ex. 1. The pump seal leak occurred in Kansas. *Id*. The fire occurred in Kansas. *Id.* The conduct associated with the pump seal leak and fire occurred in Kansas. *Id.* The domicile, residence, and place of business of the parties is in Kansas. *Id.* The employment relationship between Mr. Collier, Mr. Niemeyer and their employer exists in Kansas. *Id.* Moreover, virtually all witnesses to the accident reside in Kansas. RR Tab 10 at Ex. 1. How could the law of any other forum apply?

## C.     The Fact that Kansas Law is Different is Irrelevant.

Plaintiffs are likely to argue that the law of Kansas is different in many respects. However, the fact "that the substantive law of the alternative forum may be less favorable to the plaintiff is entitled to little, if any, weight" in a choice of law or a forum non conveniens decision. *In re Mantle Oil & Gas, LLC*, 426 S.W.3d at 189  (Louisiana was an adequate alternative forum, despite the fact that plaintiff's claims would be barred under the Louisiana statute of limitations and punitive damages were not recoverable in Louisiana.); *see also, In re Pirelli Tire, LLC*, 247 S.W.3d at 678.

In *Sammons & Berry, P.C. v. Nat'l Indemnity Co.*, No. 14-13-00070-CV, 2014 WL 3400713 at * 5 (Tex. App.—Houston [14th Dist.] July 10, 2014, no pet.), the Court stated:

> [t]hat the substantive law of an alternative forum may be less favorable to the plaintiff is entitled to little, if any, weight." *In re Pirelli Tire, L.L.C.*, 247 S.W.3d at 678. Forum non conveniens requires an available remedy in the alternative forum, but does not require the same cause of action or equivalent relief be available. *In re Gen. Elec. Co.*, 271 S.W.3d at 687; *In re Pirelli Tire, L.L.C.*, 247 S.W.3d at 678 (holding Mexico was adequate forum even though it may not afford cause of action for strict liability, or provide for "American–Style" discovery or right to jury); *Berg v. AMF, Inc.*, 29 S.W.3d 212, 216–17 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding Canada was adequate forum although it "does not recognize strict liability causes of action, has monetary limits on non-economic damages, and only allows for recovery of punitive damages upon a showing of intentional conduct"); *Gomez de Hernandez v. Bridgestone/Firestone North Am. Tire, L.L.C.,* 204 S.W .3d 473, 483 (Tex. App.—Corpus Christi 2006, pet. denied) ("The primary consideration is whether the alternate forum entitles appellants to a remedy for their losses, even if the compensation available under the remedy is less than what may be recovered in a Texas court.").

Here, the evidence established that Kansas law should be applied by a Kansas court.

## IV.    PLAINTIFFS' ARGUMENT THAT DEFENDANTS' NEGLIGENCE OCCURRED IN TEXAS DOES NOT OVERCOME THE SECTION 71.051 FACTORS.

Here, the Plaintiffs' Original Petition does not identify any specific acts of negligence associated with the Relators. The closest identification of alleged negligence is the allegation that Relators "committed acts of omission and

commission which collectively and severally constitute negligence" at paragraph 19 of the Petition. RR Tab 4 at 4. Plaintiffs further allege those "acts of omission and commission" rose "to the level of gross negligence/malice" (RR Tab 4 at 4) and, such negligence occurred in the performances of a Management Services Agreement between the Relators and CRRM. RR Tab 10 at 1. No further specification is provided.

Plaintiffs are presently without a specific theory of negligence against the Relators. *See* RR Tab 4, 10. Plaintiffs clearly hope to develop a theory that Relators' corporate decisions somehow affected the pump seal leak, and the Texas law of gross negligence will allow them to circumvent the Kansas workers' compensation immunity. *See* RR Tab 10. However, even these theories are insufficient to avoid a dismissal on a forum non conveniens basis. Similar arguments were presented and rejected in *In re BPZ Resources, Inc.*, 359 S.W.3d 866, 870-80 (Tex. App.—Houston [14 Dist.] 2012, orig. proceeding):

> Though the relators are Texas corporations who made allegedly negligent decisions that allegedly led to the explosion on the Supe, consideration of all the *Lauritzen - Rhodits* factors, we conclude as a matter of law, that Peruvian law applies to the real parties' claims. . . .
>
> We presume, without deciding, that the relators made decisions in Houston that were a legal cause of the explosion when they allegedly ordered production on the platform to be "ramped up" to quickly generate needed cash, even though they allegedly knew that the operations involved dangerous procedures, insufficient equipment, and unseaworthy vessels. Under this presumption, the real parties' injuries would have resulted in part from acts or omissions that

29

occurred in Texas. Nonetheless, these alleged acts and omissions in Texas would be a more remote cause of the real parties' injuries than the alleged acts or omissions in Peru of Paolillo, the crew of the Supe, and BPZ Peru. . . .

We conclude that the balance of the parties' private interests and the public interest of the state predominate in favor of this action being brought in a Peruvian court. [Citations omitted.]

Similar arguments received similar results in *In re Mantle Oil & Gas, LLC*, 426 S.W.3d 182, 195 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding), where the plaintiffs contended that:

. . . because Mantle Oil is a Texas limited liability company and made decisions regarding the operation of the well from its Texas headquarters, Texas courts and juries have a "significant interest in how [it] operates as a business. Essentially, **the Alcee plaintiffs claim that Mantle Oil negligently operated the Well from its Texas headquarters which caused the blowout, and, therefore, because the acts in Texas caused their damages, Texas has a local interest in adjudicating this dispute. . . ."**

(Emphasis supplied). The *Mantle* court rejected these arguments holding that the plaintiffs were not Texas residents and Texas generally afforded "less deference to a non resident's forum choice." *In re Mantle*, 426 S.W.3d at 188. The court further stated:

. . . it is undisputed that the Alcee plaintiffs are Louisiana residents, that the blowout occurred in Louisiana, and that any alleged personal injuries and property damage occurred in Louisiana. Louisiana has a substantial interest in making sure that its citizens and their property are not harmed by oil and gas operations within its borders.

*Id.* at 195. After noting that the witnesses and evidence were primarily in Louisiana and that compulsory process was unavailable to compel witness testimony in Texas, the court concluded:

> It is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the state.

*Id.* at 189. Thus, arguments that the decisions of companies headquartered in Texas caused or contributed to accidents in the out-of-state operations of affiliates or subsidiaries have been rejected by the First and the Fourteenth Courts of Appeals. In such cases, the courts of appeals dismissed the litigation upon the forum non conveniens analysis statutorily enacted by Section 71.051 of the Texas Civil Practice & Remedies Code reflecting the fundamental:

> (1) need for reasonable access to out-of-state witnesses and evidence,
>
> (2) ease of having the out-of-state law administered by the courts of that state, and
>
> (3) burden which trial would place upon the people of Texas for issues not significant to Texas.

*See In re BPZ Resources, Inc.*, 359 S.W.3d at 870-80; *see also In re Mantle*, 426 S.W.3d at 188, 189

31

## V.    CONCLUSION & PRAYER.

The rulings of the Texas Supreme Court and the First and Fourteenth Courts of Appeals present clear decisions on similar forum non conveniens issues. Those decisions provide unmistakable binding guidance to the district court, which guidance the district court ignored. Where Kansas residents were injured in a Kansas accident performing work for their Kansas employer, the case should be tried in Kansas under Kansas law. Kansas is the state of compulsory service; Texas is not. Texas has little or no interest in the matter and Texas courts and jurors should not be burdened with administering and resolving the litigation. The cause of action should have been dismissed in favor of Kansas litigation pursuant to Section 71.051(b) of the Texas Civil Practice and Remedies Code.

WHEREFORE, the Relators pray that this Court issue a Writ of Mandamus requiring the 268th Judicial District Court of Fort Bend County, Texas to vacate its order denying Relators' motion to dismiss and to order the dismissal of the underlying action pursuant to Section 71.051(b) of the Texas Civil Practice and Remedies Code.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON &
  WISDOM, L.L.P.

By: */s/ Philip D. Sharp*
      Phillip D. Sharp
      Texas State Bar No. 18118680
808 Travis, 20th Floor
Houston, TX 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101
*Email: sharp@mdjwlaw.com*


SMITHYMAN & ZAKOURA, CHARTERED

By: */s/ Lee M. Smithyman*
      Lee M. Smithyman
      KS Supreme Court #09391
750 Commerce Plaza II
7400 West 110th Street
Overland Park, KS 66210-2362
Telephone: (913) 661-9800
Facsimile: (913) 661-9863
*Email: lee@smizak-law.com*
*Application for pro hac admission pending*

**ATTORNEYS FOR RELATORS**

**CERTIFICATION**

The undersigned has reviewed the petition and concluded that every factual statement in the petition is supported by evidence included in the appendix.


      */s/ Philip D. Sharp*
      Philip D. Sharp


33

## CERTIFICATE OF COMPLIANCE

This is to certify that this computer-generated Petition for Writ of Mandamus contains 7,453 words and complies with rule 9.4 of the Texas Rules of Appellate Procedure.

*/s/ Philip D. Sharp*
Philip D. Sharp
Dated: August 21, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on this 21th day of August, 2015, a true and correct copy of the Petition for Writ of Mandamus and Relator's Record were sent by the method indicated to the following individuals:

Gary M. Riebschlager          *Via Email gary@riebschlagerlaw.com*
THE RIEBSCHLAGER LAW FIRM
801 Congress, Suite 250
Houston, TX 77002

Richard L. Tate              *Via Email: rltate@tate-law.com*
Kristin Reis                 *Via Email: kreis@tate-law.com*
TATE, MOERER & KING, LLP
206 South Second Street
Richmond, TX 77469

*/s/ Philip D. Sharp*
Philip D. Sharp

# APPENDIX & RELATOR'S RECORD

## INDEX TO APPENDIX & RELATOR'S RECORD

Tab 1        Affidavit of P. Sharp
Tab 2        Transcript of August 7, 2015 Motion to Dismiss Hearing
             with Ruling Denying Motion To Dismiss
Tab 3        Docket Sheet
Tab 4        Original Petition
Tab 5        Original Answer
Tab 6        Defendants' Motion To Dismiss
Tab 7        Memorandum in Support of Defendants' Motion To Dismiss
Tab 8        Supplemental Memorandum in Support of Defendants'
             Motion To Dismiss
Tab 9        Plaintiffs' Response To Motion To Dismiss
Tab 10       Plaintiffs' Supplemental Petition
Tab 11       Services Agreement
Tab 12       Tex. Civ. Prac. & Rem. Code § 71.051
Tab 13       KSA 60-258a
Tab 14       KSA 60-513
Tab 15       Kansas Pattern Jury Instructions – 171.02

# Tab 1

# AFFIDAVIT OF PHILLIP SHARP

STATE OF TEXAS          §
                               §

COUNTY OF HARRIS      §

BEFORE ME, the undersigned authority, on this day personally appeared Phillip Sharp, being by me duly sworn upon his oath, and he deposed and stated as follows:

1. My name is Phillip Sharp. I am a resident of Harris County, Texas. I am over 21 years of age and have never been convicted of a felony or a crime involving moral turpitude, nor have I ever been adjudged incompetent.

2. I am duly competent and qualified in all respects to make this affidavit and everything stated within this affidavit is true and within my personal knowledge.

3. I represent Relators/Defendants, CVR Energy, Inc. and CVR Refining, LP (collectively "CVR"), in this mandamus proceeding, which arises out of the trial court cause no. 2015-DCV-220330 in the 268th District Court of Fort Bend County, Texas (the "Underlying Proceeding"). I also represent CVR in the Underlying Litigation.

4. I have personal knowledge from my representation of the Relators that the following items in the Relators' Record are true and correct copies of the original documents material to the Relators' claims and that were filed in the Underlying Proceeding:

> Tab 2: Transcript of August 7, 2015 Motion to Dismiss Hearing with Ruling Denying Motion To Dismiss;
> Tab 3: Docket Sheet;
> Tab 4: Original Petition;
> Tab 5: Original Answer;
> Tab 6: Defendants' Motion To Dismiss;
> Tab 7: Memorandum in Support of Defendants' Motion To Dismiss;
> Tab 8: Supplemental Memorandum in Support of Defendants' Motion To Dismiss;
> Tab 9: Plaintiffs' Response To Motion To Dismiss;
> Tab 10: Plaintiffs' Supplemental Petition.

I also have personal knowledge from my representation of the Relators that Tab 11: "Services Agreement" is a true and correct copy of an agreement between CVR Refining, L.P., CVR Refining GP, LLC, and CVR Energy, Inc., which is

referenced in the Plaintiffs' Supplemental Petition filed in the Underlying Proceeding, but which was not filed in the Underlying Proceeding itself.

5.     I am authorized by the Relators to make this affidavit.  I have read this affidavit and it is true and correct.  All matters stated therein are within my personal knowledge and are true and correct.

FURTHER AFFIANT SAYETH NOT.



_____
Phillip Sharp

SWORN TO AND SUBSCRIBED BEFORE ME on this 20th day of August, 2015.

KATHERINE M BOCCO
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
FEB. 19, 2017

_Katherine M. Bocco_
Printed Name: _Katherine M. Bocco_
Notary Public in and for the State of Texas.
My commission expires: _2-19-2017_

# Tab 2

REPORTER'S RECORD
VOLUME __1__ OF __1__ VOLUME(S)
COURT OF APPEALS NO. _____

TRIAL COURT CAUSE NO. 15-DCV-220330

| DONALD R. COLLIER, | ) | IN THE DISTRICT COURT OF |
| JENNIFER J. COLLIER, | ) | |
| DALE A. NIEMEYER, AND | ) | |
| WENDY NIEMEYER | ) | |
| | ) | |
| VS. | ) | FORT BEND COUNTY, T E X A S |
| | ) | |
| CVR ENERGY, INC. AND | ) | |
| CVR REFINING, L.P. | ) | 268TH JUDICIAL DISTRICT |

_____

**MOTION TO DISMISS HEARING**

_____

On the 7th day of August, 2015, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Brady G. Elliott, Judge Presiding, held in Richmond, Fort Bend County, Texas.

Proceedings reported by Certified Shorthand Reporter and Machine Shorthand/Computer-Aided Transcription.

Mary Nancy Capetillo, CSR, RPR, CRR

*A P P E A R A N C E S*

*COUNSEL FOR THE PLAINTIFFS:*

        Richard Tate
        Texas State Bar No. 19664460
        E-mail: rltate@tate-law.com
        Tate, Moerer & King, LLP
        206 South Second Street
        Richmond, Texas   77469
        Telephone: (281)341-0077

        David Medina
        Texas State Bar No. 00000088
        5300 Memorial Drive, Suite 890
        Houston, Texas   77007
        Telephone: (713)653-3147

*COUNSEL FOR THE DEFENDANTS:*

        Lee Smithyman
        Kansas Supreme Court No. 09391
        E-mail: lee@smizak-law.com
        Smithyman & Zakoura, Chartered
        750 Commerce Plaza II
        7400 West 110th Street
        Overland Park, Kansas   66210
        Telephone: (913)661-9800

**VOLUME 1**

**REPORTER'S RECORD**

August 7, 2015

PAGE VOL.

Proceedings ....................................4    1

Ruling of the Court ............................33    1

Adjournment ....................................33    1

Reporter's Certificate .........................34    1

Mary Nancy Capetillo, CSR, RPR, CRR

*P R O C E E D I N G S*

THE COURT: Collier, et al. versus CVR Energy. Let's start off with the proposition that I have read your pleadings relating to the motion to dismiss and the response thereto. So, make your points.

MR. SMITHYMAN: Your Honor, I am Lee Smithyman. I am counsel for the defendants -- the CVR defendants in this case.

As you know from reading those pleadings, this is a case on behalf of a Mr. Collier and a Mr. Niemeyer. One is a resident of Coffeyville, Kansas; the other of Coffeyville, Oklahoma, same town, just over the line; and it relates to an accident that occurred in their -- while they were employed at Coffeyville Resources Marketing -- Refining & Marketing, a subsidiary of the CVR defendants that are here in Sugar Land.

It occurred because of a leak in a pump -- a rotating pump which created a vapor cloud which caused a fire and caused the injuries to these men. It was a workers' compensation injury during employment, and workers' compensation benefits were provided by Coffeyville Resources.

Coffeyville Resources is essentially -- it's a statutory employer; and it is a subsidiary of CVR

Energy, which is here in Sugar Land; and it is two-thirds owned by CVR Refining, which is another limited liability -- actually a general partnership, but it is -- pardon me -- a limited partnership. The general partner is here also in Sugar Land. So it's quite down the food chain, if you will.

A lawsuit has been filed here, and you -- if you have looked at the petition -- and the petition is also shown as an exhibit to what was provided to you -- the only allegation, negligence, occurs at paragraph 19 of that which simply says that the accident in Kansas occurred because of, quote, omissions and commissions by the -- by CVR in the Sugar Land area.

So, essentially, that is the lawsuit; and the issue before you is: Why would we burden your judicial resources and 12 jurors here in Texas over an accident that occurred in Kansas to Kansas residents while in a Kansas employment relationship for a Kansas-resident refinery? Why would we do that, take care of that?

We filed a motion under Texas statute 71.051 for -- and asking you to dismiss for forum non conveniens purposes because this is not a convenient forum. There's a five-step test that is provided by that statute, as you know from reading the pleadings;

and the first one is: Does an alternate forum exist where the claim can be tried?

And, essentially, that answer is, yes; because these two defendants are registered to do business in Kansas, doing business in Kansas, subject to process in Kansas; and anything that can be done in Texas can be done in Kansas as we go with that.

Does it have an adequate remedy?

Of course, it does. It's a sister state. And as the Texas Supreme Court has said in *In Re: ENSCO* and as the Fourteenth panel has stated in *Sammons* and -- *Sammons versus National Indemnity*, the fact that the remedy is not exactly the same doesn't matter. It's a reasonable remedy. It should go forward.

The third question is: Would the maintenance of a claim or an action in Texas work a substantial injustice to the parties? This works hand-in-glove with another issue which is the public-interest factor. That's sort of the gulf factors here.

We've provided a Rule 194 disclosure of those witnesses that are available for this. There's 25 Kansas-resident witnesses, none of which are subject to your -- to compulsory process from your court here because you -- we can subpoena for a 150-mile area and

so on. They're living and residing in different states. So we have 25 resident witnesses not available to this Court.

We have three identified Missouri and Oklahoma witnesses. We have all of the physicians of the health care personnel, the EMTs, the police. All that were witnesses to this accident or aspects to this accident are in Kansas or Missouri, one or -- maybe a health care or two provider in Oklahoma; but they are all -- they all have one characteristic. They're not subject to process by this Court. That makes this very inconvenient.

The Texas Supreme Court in *In Re: ENSCO*, which was the first forum non conveniens decision to really -- to sort of set the standard on the statute -- for non conveniens statute, said: Lack of compulsory process in Texas is fundamentally unjust. They said that in *In Re: ENSCO* when they upheld that case. They also -- the Fourteenth Texas Court of Appeals said the same thing in *In Re: BPZ*. We'll talk about it in a minute. And the First District Court of Appeals in Texas in *In Re: Mantle* reiterated that point.

We have established through that affidavit and through our discovery on this that all of the witnesses to the accident logically are in Kansas,

Missouri, or Oklahoma. They're not here.

You then have to determine the balance of the private interest of the parties and the public interest of Texas. I've talked about the public interest of Texas, the unfair burden to the judiciary and to the citizens. *In Re: Mantle* talks about that; so does *In Re: BPZ;* so does *ENSCO.*

One of the issues that's important in a forum non conveniens determination is: What is the law that will be applied? And many of the cases that were cited to you here address that issue. And the reason is it's inconvenient to the parties and to the Court to apply the law of a different jurisdiction if it's unnecessary.

THE COURT: Counsel, that reminds me of a case I had over 20 years ago in which I interpreted the Koran as it applied to the nation of Afghanistan, which at that point in time was divided between two entities; and the civil law of Russia applied to administering. I didn't have any trouble interpreting those laws. I think I can interpret Kansas laws.

MR. SMITHYMAN: Well, Your Honor --

THE COURT: Oh, by the way, it also included the law of Louisiana. That was probably the toughest to apply. But that's aside.

MR. SMITHYMAN: I can assure you, Judge, that the law -- if you can handle that, you can probably handle Kansas law; and I concede that point; but it -- be that as it may, Kansas has -- essentially is the place where the injury occurred. It's where the conduct causing the injury occurred. It's the domicile of the plaintiffs, the domicile of the employer. It's where everyone is. We have essentially no argument.

THE COURT: I don't want to make the argument for the Defense; but as I'm reading your pleadings, questions come to mind regarding these various factors. And as you pointed out in your argument, there are at least three states that you've named that various parties, witnesses, and so forth are involved in; but that's not uncommon.

I think one of the telling points to me -- or one of the points that really flared up was one of the examinations that you cited of the particular tool/device/whatsoever that is the nexus of the cause of the explosion was sent to Missouri to be examined by an expert. So we've already involved at least three states in this litigation that are not related to Texas but are not related any more to Kansas than Texas is.

Why should I think that the location of the various witnesses and parties over three states

should be a critical factor in the determination I'm going to make here?

MR. SMITHYMAN: Because they're not subject to compulsory process here, and your Supreme Court has said that the lack of compulsory process in Texas is fundamentally unjust and --

THE COURT: Unfortunately, we live in the year of 2015; and video examination is readily at hand and constantly done. In fact, I did it in a med-mal case not too long where the physician was in Tennessee. So the fact that the witnesses can't be here in person doesn't mean they're not available. Now I may not be able to order them to be available; but as I've just found from a course I took this -- early part of this week, judges in different states are now talking to each other.

MR. SMITHYMAN: Your Honor, I don't disagree that ultimately videos would be used; but if you've ever sat through three days of videos of various people and looked at the glazed eyes of jurors, you know that it is not a fundamentally good way to present evidence to --

THE COURT: I will not argue that point with you at all, Counsel; but that's the life we live in right now. And, yes, it doesn't take but about ten

minutes for a video deposition to put every juror asleep, including the judge of the court, which y'all have witnessed many times; but that's the world we live in. I'll also point out places of refinery explosion; and we're 50 miles from the largest concentration of refineries in the United States, if not the world. So experts and those who can testify are resulting -- are certainly within the jurisdiction of this court. And I guess those are the kind of questions that started popping up as it related to your argument and these decisions the Supreme Court of the State of Texas made years ago, not that many years ago; but it all plays into my making a decision.

I'd like you to respond to the fact that technology has changed a lot about how we try cases.

MR. SMITHYMAN: Well, Your Honor, I will tell you that videotaped depositions have been here for ten years. I've been certainly doing it for ten years. And every case that I have given to you has been decided since 2010. *In Re: ENSCO* is 2010. The *Mantle* case is 2012.

THE COURT: I'll point out to you, Counsel, that, in fact, I have had live testimony from people that are outside of this area by whatever the devices are that seem to have worked very well; and

technology is in Kansas just as well as it is here. So I'm not lessening the impact of what you're saying. I'm just saying that in the world we live here today, in 2015, there are ways to present the case that is just as effective as it would be in Kansas as here.

The witnesses may be in an office in Kansas -- city of Kansas or wherever it may be, but they'll be live in their testimony here. We're doing that consistently and more frequently than I'd like to think -- my gray hair never imagined -- but that seems to put us in a different light than those cases do. So I want you to focus in on specifically that technology available, what it is that I can't do here that a Kansas courtroom would be able to do.

*MR. SMITHYMAN:* You can't have the live witnesses. You will have videos, you know, for days on end. That is perhaps the biggest, but the issue of convenience of this forum goes to issues of whether this is appropriate here or more appropriately handled in Kansas; and the interesting --

*THE COURT:* Let me interrupt you. We're not going to be trying the Kansas workmen's comp case here. May I presume that's correct?

*MR. SMITHYMAN:* No. Actually you may have -- there may be legal defenses that are associated

with the Kansas workers' compensation benefits.

*THE COURT:* I will give you that there are some preemptive laws that apply in almost every state that has workers' comp laws that would preempt the ability of this Court to address the workers' comp issues and the other issues that are going to be -- I presume to be presented. Now I will give you that, but refresh my memory. It's been a long time since I saw Kansas law. Is there -- is there an overriding preemptive provision in Kansas law that basically shuts down all other tort actions?

*MR. SMITHYMAN:* Yes. Yes. And that statute -- and it is entirely different from Texas. Because in Texas one can circumvent the workers' compensation immunity by alleging gross negligence and establishing gross negligence. In Kansas that cannot be done. That's one major, major difference here.

The second major difference is the subrogation rights and how they -- they particularly work in terms of what an employer's -- or his insurer's subrogation rights are in that situation. Those are different areas as well. There are -- there are -- there are a number of procedural differences in Kansas, as you would imagine; but those are the -- those are the most important ones, and certainly the issue of what is

the -- what is the responsibility of a parent, because it's nothing more than a stockholder or an equity holder in a subsidiary. And corporations are formed in order to shield liability and stop it. And so the issue then becomes: What is the situation in that?

And that is something that will be addressed very thoroughly with you, and that is an issue that is going to be different in Kansas than it is in Texas. And, frankly, I think that it would be difficult for you to look at all those issues in Kansas and be making decisions on a Kansas issue that is not really as fully developed, candidly, in Kansas it is here in Texas.

And if it should be developed, who should develop it for Kansas? A Kansas court and go through the Kansas courts of appeals. Why should we have a Texas judge deciding that kind of an issue going through the Texas courts of appeals as to what Kansas law would be? That to me -- that is -- that is why, Your Honor, when you go through those cases that the choice of law and what law will be applied is always sort of in the background and sometimes at the forefront talking about those issues; and that's why, if that law is to be applied, it's very strong. Your Honor --

THE COURT: So it's not uncommon that we

apply other states' laws to cases that arise in Texas, even Louisiana.

MR. SMITHYMAN: Even Louisiana. Even Louisiana, but you know Louisiana --

THE COURT: Back in the day when I went to law school, Louisiana was still heavily into the Napoleonic Code.

MR. SMITHYMAN: And I am actually aware of that; and, Your Honor, one of the most important cases that governs this is a Louisiana case. It was *In Re: Mantle Oil & Gas*, which is cited for you; and there's two really important cases that were in the brief I filed on Tuesday, I want to say; and it's in the back section, the last two pages. One is *In Re: Mantle*. The other is *In Re: BPZ* Resources.

*In Re: Mantle* had Louisiana plaintiffs that sued over an oil well blow-out that injured them in Louisiana. The interesting thing is that -- and the -- in that case there was a Texas employer, and they sued here; and because that accident occurred in Louisiana and you had Louisiana plaintiffs, it was kicked back to Louisiana even though it was Louisiana law; and we all know that that is the one state in the nation with -- that everything is different.

But, Your Honor, if you look at, like --

let me give you four cases here that I think, more than any other, give you the strength of this -- these concepts -- the vigor with which the Supreme Court and the courts of appeals are enforcing this non conveniens statute and doing it to ensure that we don't open up a forum here in Texas for cases that really aren't for Texas.

The best example is *ENSCO Offshore*, which is the leading case. I'm sure you're aware of that. That was an Australian plaintiff, Australian employer, Australian accent -- accident, which is another rig that blew up; and that used a Texas -- and they sued a Texas parent here in Houston. And the Supreme Court said: No. You have to dismiss on a forum non conveniens basis. We've talked about *In Re: Mantle*.

*In Re: BPZ Resources* was a case with Peruvian plaintiffs over a Peruvian rig -- actually a ship -- tanker with a Peruvian employer; but, again, the parent company was here in Houston; and that, too -- that, too, was dismissed; and it was -- the dismissal upheld.

Finally, there is a second Fourteenth district case that was decided in 2014. A Mexican plaintiff over a contract with another Mexican who had offices here in Texas is the defendant; and they said:

No.  This is really about what is occurring in Mexico, and we should dismiss this in favor of the more appropriate forum.

I've gone back through all these cases. As you can imagine, this is a very important issue.  I think I can make one rather bold comment; and that is: Every case that I have seen in the last eight years, okay, all of them since the new statute of 2003 and its revision, 2007, every one I've seen where the accident occurred in a different jurisdiction from Texas and the case is being brought by residents of that forum, not Texans, the judge who dismissed it was upheld; and the judge who retained jurisdiction was reversed.  Every single case.  And that goes for all the ones I've talked to you about as well as others that are in there such as *Liberty Mutual versus Transit Mix*, *Sammons versus National Indemnity*, *Schippers versus Mazak Properties*.

I was unable to find a case in which -- if we cut to the chase in the biggest, broadest concepts -- we've talked about all the little bit -- the place where the accident occurred and everyone is injured, whatever test you use, most significant relationship or whatever, you end up with the law of the place where it occurred. That's a critically important factor.  Then you have the residents that are there, and you have the defendants

Mary Nancy Capetillo, CSR, RPR, CRR

doing business there. That is the logical place for the forum, and there has not been a case in which a motion to dismiss was granted in that situation where the judge was reversed. There's not been a case where the judge retained jurisdiction in which he was not reversed.

The Fourteenth district -- Court of Appeals and the First Court of Appeals have generated more decisions than anyone else because we're in Houston and because of the oil industry and because we have these serious accidents on rigs all around the world. And because of that -- and they have followed *ENSCO*, the decision of the Supreme Court, right down the line. So, Your Honor, I would -- I would ask that you dismiss this case; and I'm available for any other questions you might have.

THE COURT: Mr. Tate?

MR. TATE: Well, Your Honor --

THE COURT: Tell me why. First, tell me what the involvement of the Sugar Land corporations were in the Kansas refinery that makes them more than just an administrative operation. What will you be able to show me in evidence that shows they had direct operating control over that Kansas refinery?

MR. TATE: Thank you, Your Honor.

At the outset I will say two things, two

prefatory remarks. First of all, this morning I filed a supplemental petition which supplements our existing petition which just simply -- since he seemed to complain that there wasn't enough specificity -- he knows what our allegation is -- but essentially seemed to complain there wasn't enough specificity. I said that the Sugar Land defendants, CVR Energy, Inc. and CVR Refining, were negligent in the performance of their duties under the shared services agreement that they undertake to provide management, operational, and day-to-day operational control of their subsidiaries. Now I'm going to come back to that because that is at the heart of the answer to your question.

Secondly, I just -- I want to observe that Mr. Smithyman has spent a large amount of his time arguing that this case can't be conveniently tried here and would need to be tried in Kansas because of the location of witnesses and compulsory process.

Well, first of all, as the Court noticed, he mentioned three states up there, Kansas, Oklahoma, and Missouri; and Kansas can't force Oklahoma witnesses to come to Kansas, nor can it force Missouri witnesses to come to Kansas. So compulsory process is not available in Kansas to reach those out-of-state witnesses.

In addition to that, there is going to be -- the heart of this case -- the heart of this case is going to be decisions made right here in Sugar Land, Texas not to spend the money that was allocated in the budget under a management of change forum to make the specific improvement on this hydrogen separator that would have prevented this accident. Now, I'm going to come back to that in a minute; but he also --

THE COURT: Well, let's talk about that a little.

MR. TATE: Okay.

THE COURT: And I perceived in the pleadings that there was -- there's issues involving the management direction of the Kansas refinery.

MR. TATE: Right.

THE COURT: In listening to what you just said, there's certainly a difference between budget and application of that budget.

MR. TATE: Right.

THE COURT: The negligence would have to fall in that gray area in between and the degree of control exercised by the Sugar Land company over the Kansas refinery.

MR. TATE: Exactly, Your Honor. And Exhibit --

THE COURT: And I think -- and I'm sure you perceive where I'm going.  If that is going to be the primary issue, then that may drive a decision here; or it may drive a decision to Kansas because, "Okay.  We need to do this"; and the Kansas operators' not doing it is entirely two different things.

MR. TATE:  Well, the Kansas operators can't do it until Sugar Land tells them to.  Exhibit F, Your Honor, to our -- to our response is an excerpt from Form 10-Q for CVR Refining, Inc.; and it discusses in very small print the shared services agreement and the responsibilities that CVR Energy and CVR Refining undertake under the management services agreement to provide daily day-to-day operations and supervision of the operations of their -- of the Coffeyville refinery and the Wynnewood refinery which incidentally is the subject of the lawsuit down in Judge Shoemake's court.

THE COURT:  "Operational" I perceive to be, "I'm the guy on the ground; I'm the guy who tells the guy to turn it off."

MR. TATE:  Yes.

THE COURT:  Administrative may differentiate in saying, "This is our rules and regulations.  You have to follow them."  There's a gap there.

Mary Nancy Capetillo, CSR, RPR, CRR

MR. TATE: No.

THE COURT: And that is an important gap because that determines in my mind whether this should be a Kansas case or this should be a Texas case.

MR. TATE: Operations includes the guy in Kansas who decides -- who implements -- who implements the improvement, the change, the modification to the hydrogen separator that was -- that failed in this case and caused a fire.

He can't make that decision. He can't turn that -- he can't, you know, turn the wrench to start that operation until he's given permission from the man in Sugar Land to do it; and that's what the deposition testimony attached as Exhibit H to our -- to our motion shows. He's -- Mr. Hogan is the treasurer of the company, and he shows -- he says that all decisions are made out of Sugar Land in that deposition testimony.

THE COURT: Show me.

MR. TATE: It starts here, and he discusses all the things that they do out of Sugar Land.

THE COURT: Do you have that handy, Counsel?

MR. SMITHYMAN: I do.

MR. TATE: He discusses all the things they do out of Sugar Land.

MR. SMITHYMAN: What page?

MR. TATE: Page 9 in particular.

THE COURT: All right.

MR. TATE: And let me tell you why that's important specifically in this case, Your Honor. There was a form called an MOC. It's called a Management of Change that was prepared in calendar year 2013. It established the need for and the requirement for improvements to the hydrogen separator, specifically improvements to the seal of the hydrogen separator to keep the fumes from being released which ignited in this accident. But it required those to be done, and it required those to be done by June of 2014.

Management decided to spend that money elsewhere. They didn't spend it there. They didn't make the improvement until July -- well, they didn't take and make the improvement in June, as it was scheduled; and this accident occurred on July 29, 2014, almost eight weeks after the improvement was scheduled and budgeted to be done.

Your Honor, Mr. Hogan makes the decision as to when they will spend that money. He makes the --

THE COURT: All right. How are you going to try to tie the probable cause of the accident to the failure to spend money to effectuate the repairs?

Mary Nancy Capetillo, CSR, RPR, CRR

MR. TATE: It's like any other products case, Your Honor. They knew there was a defect in that hydrogen separator. They acknowledge it in this management of summary change. They are under an obligation to go fix it under all kinds of regulations. Okay. And then they delayed doing it because Mr. Hogan or someone else who is controlling the purse strings here says, "I'm not going to spend that money there. I'm going to spend it somewhere else." At the same time, Your Honor, they're paying their chairman a 16-million-dollar bonus in that year.

Now those are -- and those decisions, Your Honor, are all made right here in Sugar Land. Mr. Hogan admits it. The deposition testimony we've taken in the other case say it throughout. We have alleged -- we have alleged independent negligence, Your Honor -- independent negligence in the performance of the duties that they undertook to perform under the shared services agreement.

THE COURT: Let's talk about the preemptive regulations and statutes regarding workmen's comp law in Kansas. How is this going to separate itself from the workmen's compensation claim? And I presume there was an award in Kansas that would preempt any causes of action that could be lodged elsewhere.

Mary Nancy Capetillo, CSR, RPR, CRR

MR. TATE: First of all, he will have to prove that under -- first of all, he'll have to prove that Kansas law applies; and he attempted that, by the way, in the other case down in Judge Shoemake's court in his summary judgment; and his summary judgment was denied. He tried to prove the law of lex loci. He has got another motion pending that hasn't been specifically ruled on to determine the local law that will apply. But first of all, he's got to apply -- prove that Kansas law, not Texas law, will apply which he hasn't done yet.

Secondly, even if he proves that Kansas law will apply, he's got to prove that these two non-employer entities -- these are not employers -- are entitled to the benefit of Kansas law. The employer, Your Honor, is the refinery on the ground there which is Coffeyville Resources Refining & Marketing, Inc. It is 60 percent owned by the limited partnership which is 100 percent owned by --

THE COURT: Clarify this: The Sugar Land operation under the operating agreement that you have cited stands in the shoes of the local operating authority or operating managers for the Colleyville refinery. Is that what you're saying?

MR. TATE: No, I'm not saying it stands in the shoes at all. I'm saying it has the authority and

the responsibility because it has assumed that to control -- and it does control the local plant, but that does not make it the employer.  The employer is still the company that he works for, the local plant up in Kansas.  So whether or not he gets the benefit of the Kansas workers' comp -- whether or not the two defendants that they're alleging here will be entitled to the benefit of the Kansas workers' compensation law is a determination you will make when you make the determination of which law applies; and then once you decide which law applies, if it's Kansas law, you will apply Kansas law.

And one point I really wanted to make, it's always interesting to me that a Kansas lawyer will come into a Texas courtroom --

*THE COURT:*  By the way, I like Kansas lawyers.  I've dealt with a lot of them.

*MR. TATE:*  I like Kansas lawyers too.

*MR. SMITHYMAN:*  On behalf of Kansas, we thank you, Your Honor.

*MR. TATE:*  I like Kansas lawyers too because every time he comes in here he contributes $500 to the Access to Justice Foundation, which you know is dear to my heart.

Okay.  But, Your Honor, a Kansas lawyer

comes before you and argues Texas law to tell you, a Texas judge, that you will be in some way handicapped in applying Kansas law. If a Kansas lawyer is not handicapped in arguing Texas law to you, why would you be handicapped in applying Kansas law? You're not. That makes no sense to me.

MR. *SMITHYMAN:* I'll stipulate I'm not as good as a Texas lawyer would be in arguing my points.

MR. *TATE:* But this is specifically a case, Your Honor, where they have chosen -- the CVR entities have chosen to locate in Sugar Land. They're both publicly traded companies, and they've chosen to locate in Sugar Land; and they have chosen to control the day-to-day operations of their operating subsidiaries. They have chosen to do that. They are not the employer. They would not be entitled to workers' compensation protection; and all of their decisions, Your Honor, that we are going to challenge were made here in Sugar Land.

There are four management witnesses here in Sugar Land that we deposed in the other case; we'll be deposing them in this case. We had no problem -- no problem with depositions in Oklahoma in the other -- in the other refinery explosion down in Judge Shoemake's court. None. Most of those -- many of those people

work for them, and they can get them to come up here for a deposition if they want to.  In fact, if they work for them, they can bring them down here live if they want to.  So this argument about the inconvenience of the witnesses, again, with all the number of cases we've tried in this court over the years with witnesses all over the world, it's just not -- it's not a serious factor to be considered in this case.

Now, as to *ENSCO* and *BPZ*, if the Court -- and I know you always read the cases; but in both *ENSCO* and *BPZ*, the emphasis there was how much it was going to cost to go to Australia and get witnesses, how much it was going to cost to go to Peru and get witnesses.  In this case we -- it's going to cost us, the plaintiffs, more because if we have to take a Kansas deposition, Mr. Riebschlager, Justice Medina, or I are going to have to go up there to Kansas to take the depositions.  He's there already.  He doesn't even have to go.  He's there.  And so it's actually more convenient.

And then with respect to Sugar Land, we're going to go and take the depositions of the Sugar Land people wherever they tell us to, likely in Mr. Sharp's office in Houston.  Even though I detest crossing the Brazos to go take depositions, for Mr. Sharp I'll do it.

But the point of the matter is, Your

Honor, this is all about decisions made in Sugar Land by executives in Sugar Land who because they've -- the record will show they've been in the course of preparing for, of making acquisitions, and being acquired by Carl Icahn or being involved in various public trading activities, they have chosen to make -- to defer expenditures. They have chosen to put workers of their subsidiaries at risk. And, frankly, Your Honor, they should be held responsible for those choices; and it is certainly under no circumstances unfair to make them face a Fort Bend County jury of their neighbors in doing so.

THE COURT: As just a matter of clarification, what are the differences between this particular case and the case in the 434th? Both parties understanding, I'm not bound by any rulings of the 434th.

MR. TATE: None at all except that it was at a different refinery. That one -- well, at that one there was a boiler explosion at the Wynnewood refinery. This one is a fire that occurred in a hydrogen separator at the Coffeyville refinery. But -- and, Your Honor, the liability facts as to what caused the accident, those aren't even going to be contested. It's -- you know, the real contest in this case is whether or not

the Sugar Land people are responsible.

In both cases liability is going to be crystal clear, and the question is simply going to be: Is the -- are the parent companies located here in Sugar Land that have chosen to manage the day-to-day operations responsible for their independent negligence in causing these accidents?

THE COURT: Do you want to answer that question?

MR. SMITHYMAN: I want to answer. Yes, I do.

THE COURT: Okay.

MR. SMITHYMAN: Very quickly. The only argument I heard why there's any responsibility here is a shared services agreement between CVR Energy and subsidiaries. Primarily if you look at what they've submitted to you between them and the general partner or the limited partnership -- and that's the shared services agreement -- I'm not sure that these plaintiffs are third-party beneficiaries to that contract. I don't see how they would be or how they can rely upon that issue.

More important, you know, there is a -- there is obviously some truth to the fact that we can get some of those employees here reasonably easily.

Mary Nancy Capetillo, CSR, RPR, CRR

Okay. That's the truth, but we can't for EMS people. We can't for the police. We can't for the physicians. We can't for those that have -- that have retired that have seen things, that have moved from the company; and there's been a lot that have moved from the company on a yearly basis, and we're learning that in the other case.

The other case has a number of differences here, but the most important one for you is the simplest. There was no motion to dismiss for forum non conveniens in the earlier case; and there's a time limit on that, and it's a 180-day time limit. And if you realize how really inconvenient it has been, then you shouldn't be damned to the same mistake each time a case is filed in Sugar Land -- in Sugar Land. None of those go to the main issue before you, Your Honor; and I think the last two pages of my supplemental brief -- three pages -- address those issues.

Mr. Tate just argued that it was decisions concerning the budgeting or decisions on a macro level in Sugar Land that were the cause of the pump failure -- rotating pump failure in Coffeyville at the refinery. Those same arguments were made in In Re: *BPZ*. I was thrilled to hear that you read these cases. Because in *In Re: BPZ* here is what the Court of Appeals said: We presume without deciding that the relators' decisions in

Houston were the legal cause of the explosion when they allegedly ordered production on the platform to be ramped up to quickly generate needed cash. Even though they knew these operations involved dangerous procedures, insufficient equipment, unworthy -- unseaworthy vessels, nevertheless, the acts and omissions in Texas would be a more remote cause of the real parties' injuries than the alleged acts and omissions in Peru.

And, Your Honor, the first district -- the first panel in the *Mantle* case did the exact same thing. They said: The Alcee, meaning these are the Louisiana plaintiffs, assumed that because Mantle Oil was the well operator and made big decisions concerning operations of the Louisiana well at its Texas headquarters their injuries were undoubtedly caused by Mantle's acts and omissions that occurred in Kansas.

Essentially they said: Although big decisions were made, obviously a lot of smaller decisions were not made; and on the basis of that, they too determined that any decisions that would be made here in the macro scheme of things were remote compared to Louisiana; and Louisiana had the -- was the appropriate forum and had the right to resolve those issues between its residents and the operations that

were there.  And that's how the First -- that's how our First Circuit panel decided it in both cases.

That's exactly what Mr. Tate is arguing. Decisions made at the macro level by a parent somehow create liability that would allow jurisdiction to appropriately be here -- well, jurisdiction is here, but that allow the case to be tried here.  In fact, in both cases this statute, 71.051, and the consideration of those factors has been determined that macro decisions by a parent are insufficient where all other factors say:  Go to the jurisdiction of the accident.

*MR. TATE:*  And what I'm arguing is they're not macro.  They're micro decisions, and that's a fact issue which he brought up on summary judgment in the other case and lost.

*MR. SMITHYMAN:*  Actually could I address that?

*THE COURT:*  That's all right, Counsel. I've heard enough.  On the issue that I have to decide on today, I'm going to deny your motion.

*(Proceedings concluded at 10:04 a.m.)*

Mary Nancy Capetillo, CSR, RPR, CRR

THE STATE OF TEXAS        )

COUNTY OF FORT BEND       )

I, Mary Nancy Capetillo, CSR, Deputy Court Reporter in and for the 268th District Court of Fort Bend County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence.

I further certify that the total cost for the preparation of this Reporter's Record is $ 324.00 and was paid by  Smithyman & Zakoura, Chartered  .

WITNESS MY OFFICIAL HAND on this, the  14th  day of  August , 2015 .

Mary Nancy Capetillo, Texas CSR No. 3698
Expiration: 12/31/2016
Deputy Court Reporter
7022 Bois D'Arc Lane
Richmond, Texas 77406
Telephone: (281)344-7973

Mary Nancy Capetillo, CSR, RPR, CRR

# Tab 3

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search Back   Location : Fort Bend   Images Help

# REGISTER OF ACTIONS
## CASE NO. 15-DCV-220330

Donald R Collier, Jennfier J Coiller, Dale A Neimeyer and Wendy Neimeyer vs CVR Energy Inc. and CVR Refining, LP.

§
§
§
§
§

Case Type: **Injury or Damage - Other Injury or Damage**
Date Filed: **01/12/2015**
Location: **268th District Court**

---

### PARTY INFORMATION

| | | | Attorneys |
|---|---|---|---|
| Defendant or Respondent | CVR Energy Inc. | | **Lee M Smithyman** *Retained* |
| | Dallas, TX 75201-3136 | | **Phillip D. Sharp** *Retained* 713-223-2900(W) |
| Defendant or Respondent | CVR Refining, LP | | **Lee M Smithyman** *Retained* |
| | Austin, TX 78701 | | **Phillip D. Sharp** *Retained* 713-223-2900(W) |
| Plaintiff or Petitioner | Collier, Donald R Houston, TX 77002 | | **Gary M. Riebschlager** *Retained* 281-904-1404(W) |
| Plaintiff or Petitioner | Collier, Donald R. | | **Richard L. Tate** *Retained* 281-341-0077(W) |
| Plaintiff or Petitioner | Collier, Jennfier J Houston, TX 77002 | | **Gary M. Riebschlager** *Retained* 281-904-1404(W) |
| Plaintiff or Petitioner | Neimeyer, Dale A Houston, TX 77002 | | **Gary M. Riebschlager** *Retained* 281-904-1404(W) |
| Plaintiff or Petitioner | Neimeyer, Wendy Houston, TX 77002 | | **Gary M. Riebschlager** *Retained* 281-904-1404(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | |
|---|---|---|
| 01/12/2015 | Docket Sheet *Docket Sheet* | |
| 01/12/2015 | Petition      Doc ID# 1 *Plaintiff's Original Petition* | |
| 01/12/2015 | Jury Fee Paid *Jury Demand Fee Paid* | |
| 01/13/2015 | Issuance      Doc ID# 2 *Citation Issued to CVR Energy Inc.* | |
| 01/13/2015 | Citation *Mailed to Atty* CVR Energy Inc. | Unserved |
| 01/13/2015 | Issuance      Doc ID# 3 *Citation Issued to CVR Refining LP* | |
| 01/13/2015 | Citation *Mailed to Atty* CVR Refining, LP | Unserved |
| 01/13/2015 | Letters *Form Letter* | |
| 04/08/2015 | Request      Doc ID# 4 *Request for Process* | |
| 04/09/2015 | Issuance      Doc ID# 5 | |

http://tylerpaw.co.fort-bend.tx.us/CaseDetail.aspx?CaseID=1439943                    8/19/2015

| | |
|---|---|
| 04/09/2015 | *Citation by CM Issued to CVR Energy Inc*<br>**Citation by Certified Mail**<br>*CMRRR 7196 9008 9115 6076 0290*<br>CVR Energy Inc. |

Returned Unserved 04/20/2015
Returned 04/20/2015

04/09/2015 **Issuance** Doc ID# 6
*Citation by CM Issued to CVR Refining LP*
04/09/2015 **Citation by Certified Mail**
*CMRRR 7196 9008 9115 6076 0313*
CVR Refining, LP Unserved

05/14/2015 **Issuance** Doc ID# 7
*(Re-Issued) Citation By Certified Mail Issued to CVR Refining LP*
05/14/2015 **Citation by Certified Mail**
*(Re-Issued) CMRRR# 9414 7266 9904 2956 2259 38*
CVR Refining, LP Served 05/18/2015
Returned 05/28/2015

05/14/2015 **Issuance** Doc ID# 8
*(Re-Issued) Citation By Certified Mail Issued to CVR Energy Inc.*
05/14/2015 **Citation by Certified Mail**
*(Re-Issued) CMRRR# 9414 7266 9904 2956 2259 21*
CVR Energy Inc. Served 05/18/2015
Returned 05/22/2015

05/28/2015 **Answer/Contest/Response/Waiver** Doc ID# 9
*Defendants CVR Energy, Inc. and CVR Refining, LP's Original Answer*
06/01/2015 **No Fee Documents** Doc ID# 10
*Plaintiffs' Special Exceptions to Defendants CVR Energy, Inc. and CVR Refining, LP's Original Answer*
06/01/2015 **Proposed Order** Doc ID# 11
*(Returned Unsigned 06/05/2015)Order Granting Plaintiffs Special Exceptions to Defendants CVR Energy, Inc. and CVR Refining, LP's Original Answer*
06/01/2015 **Motion (No Fee)** Doc ID# 12
*Defendants' Motion to Dismiss Based on Forum Non Conveniens*
06/01/2015 **No Fee Documents** Doc ID# 13
*Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Texas Civil Practice & Remedies Code Chapter 71.051*
06/02/2015 **Motion (No Fee)** Doc ID# 15
*Motion of Phillip D. Sharp to Admit Lee M. Smithyman Pro Hac Vice for the Sole Purpose of This Case*
06/04/2015 **Order** Doc ID# 14
*Order Granting Pro Hac Vice Motion*
06/23/2015 **Notice** Doc ID# 16
*Notice of Hearing*
07/21/2015 **Notice** Doc ID# 17
*Amended Notice of Hearing*
07/24/2015 CANCELED M/Hearing (9:00 AM) (Judicial Officer Elliott, Brady G)
*Passed*
*DEFENDANT'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS*
08/04/2015 **No Fee Documents** Doc ID# 18
*Supplemental Memorandum in Support of Defendants' Motion to Dismiss Pursuant to Texas Civil Practice & Remedies Code Chapter 71.051*
08/05/2015 **Answer/Contest/Response/Waiver** Doc ID# 19
*Plaintiff's Response to Defendants' Motion to Dismiss Pursuant to Texas Civil Practice & Remedies Code Chapter 71.051*
08/07/2015 M/Hearing (9:00 AM) (Judicial Officer Elliott, Brady G)
*DEFENDANT'S MOTION TO DISMISS BASED ON FORUM NON CONVENIENS*
08/07/2015 **No Fee Documents** Doc ID# 20
*Plaintiffs' Supplemental Petition*

---

## FINANCIAL INFORMATION

| | | | |
|---|---|---|---:|
| **Defendant or Respondent CVR Energy Inc.** | | | |
| Total Financial Assessment | | | 16.00 |
| Total Payments and Credits | | | 16.00 |
| Balance Due as of 08/19/2015 | | | 0.00 |
| | | | |
| 05/28/2015 | Transaction Assessment | | 2.00 |
| 05/28/2015 | E-filing Receipt # 2015-28318-DCLK | CVR Energy Inc. | (2.00) |
| 06/02/2015 | Transaction Assessment | | 2.00 |
| 06/02/2015 | E-filing Receipt # 2015-29082-DCLK | CVR Energy Inc. | (2.00) |
| 06/02/2015 | Transaction Assessment | | 2.00 |
| 06/02/2015 | E-filing Receipt # 2015-29083-DCLK | CVR Energy Inc. | (2.00) |
| 06/02/2015 | Transaction Assessment | | 2.00 |
| 06/02/2015 | E-filing Receipt # 2015-29496-DCLK | CVR Energy Inc. | (2.00) |
| 06/02/2015 | Transaction Assessment | | 2.00 |
| 06/02/2015 | E-filing Receipt # 2015-29497-DCLK | CVR Energy Inc. | (2.00) |
| 06/23/2015 | Transaction Assessment | | 2.00 |
| 06/23/2015 | E-filing Receipt # 2015-33899-DCLK | CVR Energy Inc. | (2.00) |
| 07/22/2015 | Transaction Assessment | | 2.00 |
| 07/22/2015 | E-filing Receipt # 2015-39517-DCLK | CVR Energy Inc. | (2.00) |
| 08/04/2015 | Transaction Assessment | | 2.00 |
| 08/04/2015 | E-filing Receipt # 2015-41956-DCLK | CVR Energy Inc. | (2.00) |
| | | | |
| **Plaintiff or Petitioner Collier, Donald R** | | | |
| Total Financial Assessment | | | 730.00 |

| | Total Payments and Credits | | | 730.00 |
|---|---|---|---|---|
| | Balance Due as of 08/19/2015 | | | 0.00 |
| 01/12/2015 | Transaction Assessment | | | 518.00 |
| 01/12/2015 | E-filing | Receipt # 2015-01543-DCLK | Collier, Donald R | (518.00) |
| 04/09/2015 | Transaction Assessment | | | 206.00 |
| 04/09/2015 | E-filing | Receipt # 2015-18309-DCLK | Collier, Donald R | (206.00) |
| 06/01/2015 | Transaction Assessment | | | 2.00 |
| 06/01/2015 | E-filing | Receipt # 2015-28888-DCLK | Collier, Donald R | (2.00) |
| 08/06/2015 | Transaction Assessment | | | 2.00 |
| 08/06/2015 | E-filing | Receipt # 2015-42204-DCLK | Collier, Donald R | (2.00) |
| 08/07/2015 | Transaction Assessment | | | 2.00 |
| 08/07/2015 | E-filing | Receipt # 2015-42462-DCLK | Collier, Donald R | (2.00) |

# CASE NO. 15-DCV-220330
# DONALD R COLLIER, JENNFIER J COLLIER, DALE A NEIMEYER AND WENDY NEIMEYER VS CVR ENERGY INC. AND CVR REFIINING, LP.

| Selected Event | Image | Page Count |
|---|---|---|
| 01/12/2015 Docket Sheet | Docket Sheet | 2 |

| Other Events on This Case | Image | Page Count |
|---|---|---|
| 01/12/2015 Petition | Plaintiffs Original Petition | 14 |
| 01/13/2015 Issuance | Issuance | 1 |
| 01/13/2015 Issuance | Issuance | 1 |
| 01/13/2015 Letters | Letters | 1 |
| 04/08/2015 Request | Request for Process | 2 |
| 04/09/2015 Issuance | Issuance | 2 |
| | Certified Mail Receipt for CVR Energy Inc. | 2 |
| | Issuance | 4 |
| 04/09/2015 Issuance | Issuance | 2 |
| | Certified Mail Receipt for CVR Refining LP | 2 |
| | Issuance - Citation by Certified Mail Issued to CVR Refining Returned Unserved | 4 |
| 05/14/2015 Issuance | Issuance - (Re-Issued) Citation By Certified Mail Issued to CVR Refining LP | 2 |
| | Issuance | 2 |
| | Issuance | 2 |
| 05/14/2015 Issuance | Issuance - (Re-Issued) Citation By Certified Mail Issued to CVR Energy Inc. | 2 |
| | Issuance | 2 |
| | Issuance | 2 |
| 05/28/2015 Answer/Contest/Response/Waiver | Defendants CVR Energy, Inc. and CVR Refining, LP's Original | 3 |
| 06/01/2015 No Fee Documents | Special Exceptions | 4 |
| 06/01/2015 Proposed Order | Proposed Order | 2 |
| 06/01/2015 Motion (No Fee) | Defendants' Motion to Dismiss Based on Forum Non Conveniens. | 3 |
| 06/01/2015 No Fee Documents | Memorandum in Support of Defendants' Motion to Dismiss Pursu | 17 |
| 06/02/2015 Motion (No Fee) | Motion of Phillip D. Sharp to Admit Lee M. Smithyman Pro Hac | 9 |
| 06/04/2015 Order | Order - Order Granting Pro Hac Vice Motion | 1 |
| 06/23/2015 Notice | Notice of Hearing | 2 |
| 07/21/2015 Notice | Amended Notice of Hearing | 2 |
| | Amended Notice of Hearing | 2 |
| 08/04/2015 No Fee Documents | Supplemental Memorandum in Support of Defendants' Motion to | 27 |
| 08/05/2015 Answer/Contest/Response/Waiver | Collier Nei 08 05 15 Response Mtn Dismiss.pdf | 66 |
| 08/07/2015 No Fee Documents | Plaintiffs' Supplemental Petition | 2 |

| Other Images on This Case | Image | Page Count |
|---|---|---|

# Tab 4

COPY

Filed
1/12/2015 11:34:37 AM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Sonny Garcia

CAUSE NO. **15-DCV-220330** _____

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NIEMEYER | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| v. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| CVR ENERGY, INC. and, | § | |
| CVR REFINING, LP. | § | Fort Bend County - 268th Judicial District Court |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE COURT:

COME NOW, Plaintiffs DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER and WENDY NIEMEYER complaining of and against CVR ENERGY, INC. and CVR REFINING, LP (hereinafter collectively referred to "CVR"); Defendants herein, and for cause of action, would respectfully show unto the Court as follows:

### I. DISCOVERY CONTROL PLAN

1.      Plaintiffs intend to conduct discovery under Level 3 pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

### II. PARTIES

2.      Plaintiff DONALD R. COLLIER, is an individual who resides in Independence, Kansas.

3.      Plaintiffs JENNIFER J. COLLIER, is an individual who resides in Independence, Kansas.

4.      Plaintiff DALE A. NIEMEYER, is an individual who resides in S. Coffeyville, Oklahoma.

5.      Plaintiff WENDY NIEMEYER, is an individual who resides in S. Coffeyville, Oklahoma.

1

6. Defendant CVR ENERGY, INC. (hereinafter referred to as "CVR") is a Delaware corporation with its principal place of business located in Fort Bend County, Texas. Defendant may be served with process by serving citation on its Registered Agent C. T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

7. Defendant CVR Refining, LP (hereinafter referred to as "CVR Refining") is a Delaware corporation with its principal place of business located in Fort Bend County, Texas. Defendant may be served with process by serving citation on its Registered Agent CSC, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

### III. JURISDICTION AND VENUE

8. Plaintiffs seek damages within the jurisdictional limits of this Court.

9. This Court has personal jurisdiction over defendants because each of the Defendants has its principal place of business in Fort Bend County, Texas and all Defendants are engaged in foreseeable, intentional, continuous, and/or systematic contacts within Texas, so that there is both general and specific personal jurisdiction.

10. Furthermore, exercising jurisdiction over those Defendants based outside of Texas will not offend the notions of fair play and substantial justice.

11. Venue is proper in Fort Bend County, Texas pursuant to TRCP § 15.002(a) (3) because it is the county of the defendant's principal office in this state.

### IV. BACKGROUND AND FACTS

12. Plaintiffs are employees of Defendant Coffeyville Resources Refining &Marketing, LLC (hereafter referred to as "CRRM"). CRRM is a wholly-owned subsidiary and controlled by Defendants CVR Refining LP, CVR Refining, LLC, and CVR Energy, Inc. (hereafter referred to as "CVR").

2

13.     Plaintiffs, as employees of CRRM, worked at an oil refinery in Coffeyville, Kansas, hereafter referred to as the Coffeyville Refinery or the Refinery. The Coffeyville Refinery is owned and controlled by CVR.

14.     On July 29, 2014, a critical leak occurred on a pump in the Isometric Unit of the Refinery. A huge, fiery explosion resulted, severely injuring Plaintiffs and causing the death of another employee, Greg Rigdon.

## V. CAUSE OF ACTION—NEGLIGENCE

### Relationship of CRRM and CVR

15.     Plaintiffs incorporate, by reference to paragraphs two (2) through fifteen (15) herein, their previous allegations.

16.     CRRM is a wholly-owned subsidiary of CVR Refining LP, and ultimately, up the corporate chain, a wholly-owned subsidiary of CVR Energy, LLC.

17.     CVR Energy, Inc., and CVR Refining, LP ("CVR Refining") collectively own/control CRRM. CVR are parent companies of CRRM. The CVR companies are created as a vast web of corporate control and direction created for the sole purpose of maximizing profit, corporate greed and veiled legal attempts to protect themselves from their own negligence.

18.     CVR controls CRRM in one or more of the following methods:

   a.   CVR owns all or most of CRRM stock;

   b.   CVR and CRRM have common directors and officers;

   c.   CVR provides financing to CRRM;

   d.   CVR subscribes to all of CRRM's stock;

   e.   CRRM is undercapitalized without CVR;

   f.   CVR refers to CRRM as its subsidiary, division or department;

3

g. CRRM's officers or directors follow direction from CVR; and

h. the legal formalities for keeping these entities (CVR and CRRM) separate and independent are observed.

CVR is the collective, dominant corporation over CRRM, their wholly-owned subsidiary and is therefore liable for the torts of its wholly-owned subsidiary.

19.    On the occasion in question, CVR, by and through their officers, employees, agents and representatives, independently committed acts of omission and commission which collectively and severally constitute negligence that proximately caused the deaths of Plaintiffs' decedents and damages to Plaintiffs. CVR failed. CVR's failure is negligence as defined above.

## VI. CAUSE OF ACTION—GROSS NEGLIGENCE

20.    Plaintiffs incorporate, by reference to paragraphs two (2) through nineteen (19) herein that additionally, Defendants' acts involved an extreme degree of risk to Donald R. Collier and Dale A. Niemeyer, considering the probability and magnitude of the potential harm to others, especially in light of certain facts which were known to Defendants before Donald R. Collier and Dale A. Niemeyer sustained severe and disabling injuries.

21.    Defendants' acts and omissions are of such a character as to lead to the conclusion that they not only constitute negligence, but rise to the level of gross negligence/malice. Defendants acted with conscious indifference to the rights, safety, and welfare of Donald R. Collier and Dale A. Niemeyer, and proximately caused their injuries through the enumerated acts or omissions.

## VIII. CHOICE OF LAW – TEXAS

22.    The corporate domicile of the CVR Defendants is Sugar Land, Texas. The acts of negligence and gross negligence of Defendants CVR occurred in Texas by and through its

4

corporate officers, directors and employees in Texas. Defendants CVR seek all benefits and protections of Texas law. Texas has a vested interest in the conduct of its corporate citizens.

## IX. DAMAGES

23. As a result of the Defendants' actions, each Plaintiff has been deprived of the care, maintenance, support, services, advice, counsel, and contributions of a pecuniary value, as well as companionship and society, including love and comfort as a result of the injuries of DONALD R. COLLIER and DALE A. NIEMEYER. Further, Plaintiffs have suffered pecuniary losses, in the past, have experienced and will continue to experience immense mental anguish, suffering and grief in the future. Plaintiffs seek all damages available for the injuries of DONALD R. COLLIER and DALE A. NIEMEYER.

24. The Defendants have been guilty of reckless disregard for the rights of others, have acted intentionally and with malice towards others and engaged in conduct life-threatening to humans. Plaintiffs are, therefore, entitled to an award of punitive damages.

## X. CONDITIONS PRECEDENT

25. All conditions precedent to Plaintiffs' right to recover herein and to Defendants' liability have been performed or have occurred.

## XI. JURY DEMAND

26. Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

## XII. REQUEST FOR DISCLOSURE

27. Plaintiffs request all information be provided pursuant to Texas Rule of Civil Procedure 194.2.

## XIII. CONCLUSION AND PRAYER

5

28. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, after trial on the merits,

Plaintiffs obtain judgment against Defendants for the following:

    i. monetary relief over $1,000,000.00;

    j. pre-judgment and post-judgment interest thereon at the maximum legal rate;

    k. costs of Court; and

    l. such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

THE RIEBSCHLAGER LAW FIRM, PC
801 Congress, Suite 250
Houston, TX  77002
Telephone:  (281) 904-1404
Email:  gary@riebschlagerlaw.com


/s/Gary M. Riebschlager
GARY M. RIEBSCHLAGER
Texas Bar No. 16902200


TATE MOERER & KING, LLP
RICHARD L. TATE
State Bar No. 19664460
Email: rltate@tate-law.com
KRISTIN REIS
State Bar No. 24060478
Email: kreis@tate-law.com
206 South 2nd Street
Richmond, Texas 77469
Telephone:     281-341-0077
Facsimile:     281-341-1003

ATTORNEYS FOR PLAINTIFFS
DONNIE COLLIER AND JENNIFER COLLIER
DALE A. NIEMEYER AND WENDY NIEMEYER

6

## CAUSE NO. _____

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NIEMEYER<br>Plaintiffs,<br><br>v.<br><br>CVR ENERGY, INC. and,<br>CVR REFINING, LP.<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br>FORT BEND COUNTY, TEXAS<br><br><br>_____ JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
## TO DEFENDANTS CVR ENERGY, INC. AND CVR REFINING, LP

TO: Defendant CVR ENERGY, INC., by and through its Registered Agent, C. T. Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 77201

Defendant CVR REFINING, LP, by and through their Registered Agent, CSC, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701

COME NOW, DONALD L. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NEIMEYER (hereafter collectively referred to as "Plaintiffs"), in the above entitled and numbered cause, and hereby pursuant to Rule 196 of the Texas Rules of Civil Procedure, serve the attached written requests for production on Defendants CVR ENERGY, INC. and CVR REFINING, LP, requesting that Defendants produce and permit the inspection and copying the documents or things requested below, within fifty (50) days after service of this request, at the office of the undersigned located at THE RIEBSCHLAGER LAW FIRM, PC, 801 Congress, Suite 250, Houston, Texas 77002, or at such other time and place as may mutually agreed upon.

Respectfully submitted,

THE RIEBSCHLAGER LAW FIRM, PC


/s/Gary M. Riebschlager
GARY M. RIEBSCHLAGER

1

Texas Bar No. 16902200
801 Congress, Suite 250
Houston, TX 77002
Telephone: (281) 904-1404
Email: gary@riebschlagerlaw.com


TATE MOERER & KING, LLP
RICHARD L. TATE
State Bar No. 19664460
Email: rltate@tate-law.com
KRISTIN REIS
State Bar No. 24060478
Email: kreis@tate-law.com
206 South 2nd Street
Richmond, Texas 77469
Telephone:     281-341-0077
Facsimile:     281-341-1003

ATTORNEYS FOR PLAINTIFFS
DONNIE COLLIER AND JENNIFER COLLIER
DALE A. NIEMEYER AND WENDY NIEMEYER

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the requests listed below:

1. "Plaintiffs" refer to the Plaintiffs named in this lawsuit unless specifically referred to otherwise.

2. "Defendant" refers to CVR ENERGY, INC.; and CVR REFINING, LP and its agents, representatives and employees (past or present) unless referred to otherwise.

3. "You," "your," or "yours" shall mean CVR ENERGY, INC.; and CVR REFINING, LP or your agent, contractor or designee

4. The term "and/or," "or," and "and" are used inclusively, not exclusively.

5. "Document(s)" shall mean all original or copies of communications reduced to tangible form, whether print or electronic format, in the possession, custody or control of the Defendant.

6. The term "communication(s)" shall mean all emails, letters, telegraphs, memoranda, including all reports of or references to telephone conversations, face-to-face conversations or other forms of oral or written communications, whether maintained as print or electronic format.

7. "Incident" or "Incident in Question" means the valve failure in the ISOM Unit occurring on or about July 29, 2014 causing the events and damages described in Plaintiffs' pleadings.

8. "Relevant Time Period" shall mean 5 years prior to the Incident, inclusive.

9. "OSHA" refers to Occupational Health & Safety Administration.

10. "EPA" shall mean the Environmental Protection Agency.

3

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
## TO CVR ENERGY, INC.; CVR REFINING, LP

If you claim any document(s) are privileged and not discoverable, please identify generally the document(s) withheld and the basis of privilege.

**REQUEST FOR PRODUCTION NO. 1:**
All documents evidencing statements made by witnesses pertaining to the Incident in question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**
All initial, preliminary, interim or final incident reports pertaining to the Incident in question including but not limited to those prepared for or by:

    a)    You;
    b)    OSHA;
    c)    any other government agency or department.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**
All drafts of any accident/incident investigation reports pertaining to the Incident in question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**
All documents furnished to any governmental agency related to the Incident in question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:**
All photographs or video recordings of or near the location of the Incident taken or obtained as a result of the Incident in question.

**RESPONSE:**

4

## REQUEST FOR PRODUCTION NO. 6:

All safety bulletins or memos issued or circulated pertaining to the Incident in question.

### RESPONSE:


## REQUEST FOR PRODUCTION NO. 7:

All documents which identify any members of any incident investigation team pertaining to the Incident in question.

### RESPONSE:


## REQUEST FOR PRODUCTION NO. 8:

All documents which identify any members of any incident investigation team pertaining to the Incident in question.

### RESPONSE:


## REQUEST FOR PRODUCTION NO. 9:

All photographs or video recordings taken or recorded during any site inspection related to the Incident in Question.

### RESPONSE:


## REQUEST FOR PRODUCTION NO. 10:

All safety manuals, user manuals, maintenance and repair manuals in your possession with regards to the ISOM Unit that forms the basis of this lawsuit.

### RESPONSE:


## REQUEST FOR PRODUCTION NO. 11:

All documents, pertaining to the maintenance and repairs made, within the Relevant Time Period.to the ISOM Unit valve that failed causing the Incident in Question.

### RESPONSE:

5

**REQUEST FOR PRODUCTION NO. 12:**
All communications pertaining to the maintenance and repairs made, within the Relevant Time Period.to the ISOM Unit valve that failed causing the Incident in Question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:**
All OSHA reports and OSHA violations issued regarding your refinery in Coffeyville, Kansas within the Relevant Time Period

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**
All documents prepared and submitted by you to OSHA or any other governmental agency concerning your refinery in Coffeyville, Kansas regarding the Incident in Question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**
All documents prepared by you or any third party regarding the ISOM Unit valve failure regarding the Incident in Question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**
The Budget prepared by and for the Coffeyville plant, inclusive of the ISOM Unit, for the year 2014 and submitted to the Board of Directors of Coffeyville Refining and Marketing and/or its parents CVR Refining LLC or CVR Refining, LP.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**
The Budgets prepared by the Coffeyville plant for the Relevant Time Period.

**RESPONSE:**

6

**REQUEST FOR PRODUCTION NO. 18:**
The Capital Plan prepared by and for the Coffeyville plant, inclusive of the ISOM Unit, for the year 2014 and submitted to the Board of Directors of Coffeyville Refining and Marketing and/or its parents CVR Refining LLC or CVR Refining LP

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**
All Capital Plans prepared by the Coffeyville plant for the Relevant Time Period.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**
All communications between you and any agent, employee or representative of CVR Refining LLC and /or CVR Refining LP regarding the Budget of 2014.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:**
All communications between you and agent, employee, or representative of CVR Refining LLC and/or CVR Refining LP regarding the Capital Plan of 2014.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:**
All documents evidencing any actual maintenance upon the valve/pump from which product leaked causing the Incident in Question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:**
All documents evidencing any planned maintenance upon the valve/pump from which product leaked causing the Incident in Question.

7

## REQUEST FOR PRODUCTION NO. 23:

All documents evidencing any actual maintenance upon the valve/pump from which product leaked causing the Incident in Question.

### RESPONSE:


## REQUEST FOR PRODUCTION NO. 2:

All documents evidencing any inspection of the valve/pump from which product leaked causing the Incident in Question during the Relevant Time Period.

### RESPONSE:

8

Filed
5/28/2015 2:38:12 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Vanessa Vasquez

## CAUSE NO. 15-DCV-220330

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, AND WENDY NIEMEYER | § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| V. | § § | FORT BEND COUNTY, TEXAS |
| CVR ENERGY, INC. AND CVR REFINING, LP | § § | |
| Defendants | § | 268TH JUDICIAL DISTRICT |

## DEFENDANTS CVR ENERGY, INC. AND CVR REFINING, LP'S ORIGINAL ANSWER

TO THE HONORABLE COURT:

COME NOW, Defendants CVR Energy, Inc. and CVR Refining, LP ("Defendants"), and file their Original Answer, and would respectfully show the Court as follows:

### I.
### GENERAL DENIAL

Pursuant to Tex. R. Civ. P. 92, Defendants generally deny the allegations contained in Plaintiffs' Original Petition and demand strict proof by a preponderance of the evidence of all Plaintiffs' allegations.

### II.

### AFFIRMATIVE DEFENSES

**The Kansas Workers Compensation Bar**

The applicable workers compensation bar under Kansas law, which governs the claims in this case, bars the claims in their entirety.

**Intervening cause**

The injuries sustained and damages alleged in this case were the result of an intervening cause not reasonably foreseeable to the Defendants.

**Superseding cause**

The injuries sustained and damages alleged in this case were the result of a new and independent superseding cause not reasonably foreseeable to the Defendants.

**Comparative responsibility**

The damages claimed in this case should be reduced, or are rendered not recoverable at all, by the comparative responsibility of the plaintiffs Donald Collier and Dale Niemeyer, their employer Coffeyville Resources Refining and Marketing, LLC, and their employer's contractors, subcontractors and suppliers.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiffs take nothing by way of this suit, that Plaintiffs' claims be dismissed with prejudice to refile same, and that Defendants receive any and all further relief to which they are entitled.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By: _____

Phillip D. Sharp
Texas State Bar No. 18118680
sharp@mdwjlaw.com
808 Travis Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

**ATTORNEYS FOR CVR ENERGY, INC. AND CVR REFINING, LP**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served pursuant to Rules 21 and 21a of the Texas Rules of Civil Procedure, via fax and/or email on the 28th day of May, 2015, upon the following counsel of record:

Gary M. Riebschlager
The Riebschlager Law Firm
801 Congress, Suite 250
Houston, TX 77002

*Via e-mail: gary@riebschlagerlaw.com
and facsimile: 713-228-2210*

Richard L. Tate
Kristin Reis
Tate, Moerer & King, LLP
206 South Second Street
Richmond, TX 77469

*Via email: rltate@tate-law.com
Via email: kreis@tate-law.com
and facsimile: 281-341-1003*

Phillip D. Sharp

1927-0004
1339195

```
        MODE = MEMORY TRANSMISSION            START=MAY-28 15:34    END=MAY-28 15:37

           FILE NO.=599

STN    COMM.       STATION NAME/EMAIL ADDRESS/TELEPHONE NO.     PAGES      DURATION
NO.

001    OK          ⌂###9567132282210                          004/004    00:01:13
002    OK          ⌂###9562813411003                          004/004    00:00:41


                                                    -MDJW

***** KM-F1060 ********************* -           - ***** -          - *********
```

## MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

ATTORNEYS AT LAW
Niels Esperson Building
808 Travis St., 20ᵗʰ Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

### FACSIMILE TRANSMISSION

DATE:_____5/28/15_____

TO:   Gary M. Riebschlager              Facsimile No.: 713-228-2210
      The Riebschlager Law Firm

      Richard L. Tate                   Facsimile No.: 281-341-1003
      Kristin Reis
      Tate, Moerer & King, LLP

FROM:____Phillip Sharp_____

RE:   Cause No. 15-DCV-220330; *Donald Collier, et al v. CVR Energy, Inc., et al.*; In the
      268ᵗʰ Judicial District Court of Fort Bend County, Texas

CLIENT/MATTER:____1927-0004____  *RETURN TO:____Kathy B/17____

MESSAGE:

      Please see attached Original Answer.

No. of Pages Sent including cover sheet:__4__

If you had any problems receiving this fax transmission, or if you did not receive the complete
fax, please call (713) 632-1798 immediately. Thank you.

The information contained in this fax message is intended only for the personal and confidential use of the designated recipient's names above. This message may be an attorney-client communication, and as such, is privileged and confidential. If either reader of this message is not the intended recipient, or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail.

H:\wdox\1927\0004\01340315.DOCX

Revised 5/28/2015          CONTACT CHERYL THORNTON FOR CHANGES

 CT Corporation

**TO:**  John Walter
CVR Energy, Inc.
10 E Cambridge Circle Dr Ste 250
Kansas City, KS 66103-1393

**RE:**  **Process Served in Texas**

**FOR:**  CVR Energy, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Donald R Collier, et al., Pltfs. vs. CVR Energy, Inc. and CVR Refining LP, Dfts. |
| **DOCUMENT(S) SERVED:** | Citation, Certificate, Petition, Request, Instructions |
| **COURT/AGENCY:** | 268th Judicial District Court Fort Bend County, TX<br>Case # 15DCV220330 |
| **NATURE OF ACTION:** | Plaintiff sustain damages due to violation of relationship of CRMM and CVR |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 05/18/2015 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | By 10:00 a.m. on the Monday next after the expiration of 20 days |
| **ATTORNEY(S) / SENDER(S):** | Gary M. Riebschlager<br>The Riebschlager Law Firm PC<br>801 Congress<br>Suite 250<br>Houston, TX 77002<br>281-904-1404 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 780681139525<br>Image SOP<br>Email Notification, John Walter jwalter@cvrenergy.com<br>Email Notification, Allen Jones ajones@cvrenergy.com<br>Email Notification, Connie Fitzmaurice cfitzmaurice@CVREnergy.com |
| **SIGNED:**<br>**ADDRESS:**<br><br><br><br>**TELEPHONE:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>214-932-3601 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

ANNIE REBECCA ELLIOTT
FORT BEND COUNTY
DISTRICT CLERK
301 JACKSON
RICHMOND, TX 77469

OFFICIAL BUSINESS

Penalty for Private Use

CERTIFIED MAIL®

9414 7266 9904 2956 2259 21
**RETURN RECEIPT REQUESTED**

CVR ENERGY INC
C/O CT CORPORATION SYSTEM
1999 BRYAN ST. SUITE 900
DALLAS TX 75201-3136

SERVICE FEE COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS

CITATION

TO:   CVR ENERGY INC
      C/O CT CORPORATION SYSTEM
      1999 BRYAN ST. SUITE 900
      DALLAS TX 75201-3136

**NOTICE:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **PLAINTIFF'S ORIGINAL PETITION** filed on **January 12, 2015**, a default judgment may be taken against you. Said answer may be filed by mailing to the District Clerk's Office at 301 Jackson Street, Richmond, Texas 77469, or by bringing said answer to the physical address at 1422 Eugene Heimann Circle, Richmond, Texas 77469. We are located on the first floor of the Courthouse building.

The case is presently pending before the **268TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas, and was filed on **January 12, 2015**. It bears cause number **15-DCV-220330** and is styled:

**DONALD R COLLIER, JENNFIER J COLLIER, DALE A NEIMEYER AND WENDY NEIMEYER VS CVR ENERGY INC. AND CVR REFIINING, LP.**

The name and address of the attorney for **PLAINTIFF** is:

**GARY M. RIEBSCHLAGER**
**THE RIEBSCHLAGER LAW FIRM, PC**
**801 CONGRESS, SUITE 250**
**HOUSTON, TX 77002**
**713-980-5300**

The nature of the demands of said PLAINTIFF is shown by a true and correct copy of the **PLAINTIFF'S ORIGINAL PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 14th day of May, 2015.**

DISTRICT CLERK ANNIE REBECCA ELLIOTT
Fort Bend County, Texas

By:_____
Deputy District Clerk JENNIFER E MELENDEZ
Telephone: (281) 633-7634

**SERVICE**

15-DCV-220330                    268th Judicial District Court
Donald R Collier, Jennfier J Collier, Dale A Neimeyer and Wendy Neimeyer vs CVR Energy Inc. and CVR Refining, LP.

## CERTIFICATE OF DELIVERY BY CERTIFIED MAIL

Came to hand on the **8th day of April, 2015** at **4:39 P.M.** o'clock and executed at **1999 BRYAN ST. SUITE 900 DALLAS TX 75201-3136**, on the **14th day of May, 2015**, by delivering to the within named **CVR ENERGY INC.** by registered or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation together with the accompanying copy of the petition were attached thereto.

Service Fee......... **$80.00**

**CMRR# 9414 7266 9904 2956 2259 21**

DISTRICT CLERK ANNIE REBECCA ELLIOTT
Fort Bend County, Texas

By:_____
Deputy District Clerk  Jennifer E Melendez

*State day and hour and place of serving each person.

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is
            (First, Middle, Last)

_____, and my address is _____
                                              (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____,

on the day of _____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)



Citation (By Certified Mail) issued to CVR Energy Inc. on 5/14/2015.

# Tab 5

Filed
5/28/2015 2:38:12 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Vanessa Vasquez

## CAUSE NO. 15-DCV-220330

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. | § | IN THE DISTRICT COURT |
| COLLIER, DALE A. NIEMEYER, AND | § | |
| WENDY NIEMEYER | § | |
| Plaintiffs, | § | |
| V. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| CVR ENERGY, INC. AND | § | |
| CVR REFINING, LP | § | |
| Defendants | § | 268TH JUDICIAL DISTRICT |

## DEFENDANTS CVR ENERGY, INC. AND CVR REFINING, LP'S ORIGINAL ANSWER

TO THE HONORABLE COURT:

COME NOW, Defendants CVR Energy, Inc. and CVR Refining, LP ("Defendants"), and file their Original Answer, and would respectfully show the Court as follows:

## I.
## GENERAL DENIAL

Pursuant to Tex. R. Civ. P. 92, Defendants generally deny the allegations contained in Plaintiffs' Original Petition and demand strict proof by a preponderance of the evidence of all Plaintiffs' allegations.

## II.

## AFFIRMATIVE DEFENSES

**The Kansas Workers Compensation Bar**

The applicable workers compensation bar under Kansas law, which governs the claims in this case, bars the claims in their entirety.

**Intervening cause**

The injuries sustained and damages alleged in this case were the result of an intervening cause not reasonably foreseeable to the Defendants.

**Superseding cause**

The injuries sustained and damages alleged in this case were the result of a new and independent superseding cause not reasonably foreseeable to the Defendants.

**Comparative responsibility**

The damages claimed in this case should be reduced, or are rendered not recoverable at all, by the comparative responsibility of the plaintiffs Donald Collier and Dale Niemeyer, their employer Coffeyville Resources Refining and Marketing, LLC, and their employer's contractors, subcontractors and suppliers.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants pray that Plaintiffs take nothing by way of this suit, that Plaintiffs' claims be dismissed with prejudice to refile same, and that Defendants receive any and all further relief to which they are entitled.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By _____

Phillip D. Sharp
Texas State Bar No. 18118680
sharp@mdwjlaw.com
808 Travis Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

**ATTORNEYS FOR CVR ENERGY, INC. AND CVR REFINING, LP**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served pursuant to Rules 21 and 21a of the Texas Rules of Civil Procedure, via fax and/or email on the 28th day of May, 2015, upon the following counsel of record:

Gary M. Riebschlager
The Riebschlager Law Firm
801 Congress, Suite 250
Houston, TX 77002

*Via e-mail: gary@riebschlagerlaw.com*
*and facsimile: 713-228-2210*

Richard L. Tate
Kristin Reis
Tate, Moerer & King, LLP
206 South Second Street
Richmond, TX 77469

*Via email: rltate@tate-law.com*
*Via email: kreis@tate-law.com*
*and facsimile: 281-341-1003*

Phillip D. Sharp

1927-0004
1339195

MODE = MEMORY TRANSMISSION          START=MAY-28 15:34     END=MAY-28 15:37

FILE NO.=599

| STN NO. | COMM. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|
| 001 | OK | ###9567132282210 | 004/004 | 00:01:13 |
| 002 | OK | ###9562813411003 | 004/004 | 00:00:41 |

-MDJW                    -

***** KM-F1060 ********************* -            - ***** -            - *********

## MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
ATTORNEYS AT LAW
Niels Esperson Building
808 Travis St., 20th Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

### FACSIMILE TRANSMISSION

DATE:       5/28/15

TO:   Gary M. Riebschlager              Facsimile No.: 713-228-2210
      The Riebschlager Law Firm

      Richard L. Tate                    Facsimile No.: 281-341-1003
      Kristin Reis
      Tate, Moerer & King, LLP

FROM:   Phillip Sharp

RE:   Cause No. 15-DCV-220330; *Donald Collier, et al v. CVR Energy, Inc., et al.*; In the
      268th Judicial District Court of Fort Bend County, Texas

CLIENT/MATTER:       1927-0004        *RETURN TO:    Kathy B/17

MESSAGE:

      Please see attached Original Answer.

No. of Pages Sent including cover sheet:   4

If you had any problems receiving this fax transmission, or if you did not receive the complete
fax, please call (713) 632-1798 immediately. Thank you.

The information contained in this fax message is intended only for the personal and confidential use of the designated recipient's names above. This message may be an attorney-client communication and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us by mail.

H:\wdox\1927-0004\01340315.DOCX

Revised 5/28/2015          CONTACT CHERYL THORNTON FOR CHANGES

# Tab 6

Filed
6/1/2015 4:54:17 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Vanessa Vasquez

CAUSE NO. 15-DCV-220330

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NIEMEYER, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | FORT BEND COUNTY, TEXAS |
| CVR ENERGY, INC. and CVR REFINING, LP, § | § § | |
| Defendants. | § § | 268TH JUDICIAL DISTRICT |

## DEFENDANTS' MOTION TO DISMISS
## BASED ON FORUM NON CONVENIENS

TO THE HONORABLE COURT:

COME NOW the Defendants, CVR ENERGY, INC. ("CVR Energy") and CVR REFINING, LP ("CVR Refining") (collectively, "CVR"), and pursuant to Chapter 71.051 of the Texas Civil Practice & Remedies Code, move the Court to dismiss this litigation under the doctrine of forum non conveniens. Kansas is a more reasonable and appropriate jurisdiction because:

1.      Maintenance of the action in Texas will work a substantial injustice to the Defendants because the work-related accident occurred in Kansas and all witnesses to the accident are in Kansas or in nearby Oklahoma;

2.      Kansas has jurisdiction and will exercise that jurisdiction over all of the Defendants associated with Plaintiffs' claim;

3.      The balance of the private interests of the parties and the public interest of Texas clearly favor of the claim being adjudicated in Kansas.

In support of said Motion, the Defendants provide the accompanying Memorandum

-1-

which will establish that Kansas is a much more appropriate forum because Kansas is the location of the parties, the place where the accident occurred, and the place of the employment relationship between the Plaintiffs and Defendants' subsidiary. More important, the law of Kansas should be applied to Plaintiffs' claims in this case.

WHEREFORE, premises considered, Defendants ask that this case be dismissed on the grounds of forum non conveniens so that it may be pursued, if anywhere, in the State of Kansas, and that Defendants receive any and all further relief to which they are justly entitled.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By:

Phillip D. Sharp
Texas State Bar No. 8118680
808 Travis, 20th Floor
Houston, TX 77002
Telephone: (713) 632-1700
Telefacsimile: (713) 222-0101
Email: sharp@mdjwlaw.com

ATTORNEYS FOR DEFENDANTS
CVR ENERGY, INC. AND CVR REFINING, LP

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served pursuant to Rules 21 and 21a of the Texas Rules of Civil Procedure, via fax and/or email on the 1st day of June, 2015, upon the following counsel of record:

Gary M. Riebschlager
The Riebschlager Law Firm
801 Congress, Suite 250
Houston, TX 77002
Email: gary@riebschlagerlaw.com

Richard L. Tate
Kristin Reis
Tate, Moerer & King, LLP
206 South Second Street
Richmond, TX 77469
Email: rltate@tate-law.com
         kreis@tate-law.com

Attorneys for Plaintiffs

_____
Phillip D. Sharp

# Tab 7

Filed
6/1/2015 4:56:03 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Vanessa Vasquez

CAUSE NO. 15-DCV-220330

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NIEMEYER, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § | FORT BEND COUNTY, TEXAS |
| CVR ENERGY, INC. and CVR REFINING, LP, § | § § | |
| Defendants. | § § | 268TH JUDICIAL DISTRICT |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
PURSUANT TO TEXAS CIVIL PRACTICE & REMEDIES CODE CHAPTER 71.051**

TO THE HONORABLE COURT:

COME NOW the Defendants, CVR ENERGY, INC. ("CVR Energy") and CVR REFINING, LP ("CVR Refining") (collectively, "CVR"), and submit this Memorandum in Support of their Motion to Dismiss the claims and actions of the Plaintiffs under the Texas doctrine of forum non conveniens, pursuant to Chapter 71.051 of the Texas Civil Practice & Remedies Code.

This Memorandum will establish that:

1. Maintenance of the action in Texas will work a substantial injustice to the Defendants because the work-related accident occurred in Kansas and all witnesses to the accident are in Kansas or in nearby Oklahoma;

2. Kansas has jurisdiction and will exercise that jurisdiction over all of the Defendants associated with Plaintiffs' claim;

3. The balance of the private interests of the parties and the public interest of Texas

-1-

clearly favor the claim being adjudicated in Kansas.

I.    FACTS.

1.    Plaintiffs Donald R. Collier and Jennifer J. Collier are individuals who reside in Independence, Kansas. (Petition, ¶¶ 2 & 3.)

2.    Plaintiffs Dale A. Niemeyer and Wendy Niemeyer are individuals who reside in South Coffeyville, Oklahoma, which is immediately adjacent to Coffeyville, Kansas. (*Id.*, ¶¶ 4 & 5.)

3.    The Plaintiffs' cause of action addresses work injuries sustained in an accident by Donald R. Collier and Dale A. Niemeyer, which occurred in the Coffeyville Refinery, located in Coffeyville, Kansas. (*Id.*, ¶ 14.)[1]

4.    Another employee, Greg Rigdon, died in the accident. (*Id.*, ¶ 14.)

5.    Plaintiffs Donald R. Collier and Dale A. Niemeyer are employees of Coffeyville Resources Refining & Marketing, LLC ("CRRM"), which is a subsidiary of these Defendants. (*Id.*, ¶ 13.)

6.    CRRM is alleged to be a wholly-owned subsidiary of CVR. (*Id.*, ¶ 12.)[2]

7.    Mr. Collier and Mr. Niemeyer received benefits under Kansas law, namely the Kansas Workers' Compensation Act, K.S.A. 44-501, et. seq. (Exhibit 1, ¶ 3.)

8.    Plaintiffs allege that because CRRM is a wholly-owned subsidiary of CVR[3], CVR is liable for the torts of CRRM. (Petition, ¶ 18.)

---

[1]    Actually, the accident created a fire rather than the explosion alleged in the Petition.

[2]    Actually, CRRM is a wholly-owned subsidiary of CVR Refining, LP. CVR Energy, Inc. owns the General Partner and 66% of the Limited Partner units of CVR Refining, LP; hence, CRRM is not a wholly-owned subsidiary of CVR Energy, Inc.

9.    Although Plaintiffs have alleged that CVR committed acts of negligence, no specific negligence allegations of any type are asserted in their Petition. (*Id.*, ¶ 19.)

10.    CVR Energy, Inc. and CVR Refining, LP, are in good standing with and registered to do business in Kansas. (Exhibit 1, ¶¶ 8-9.) As such, both are amenable to service of process through their registered agent in Kansas. (*Id.*)

## II.    ISSUES.

Upon receipt of a written § 71.051 motion, this Court shall determine whether to stay or dismiss the claim or action under the doctrine of forum non conveniens. If this Court determines that in the interest of justice and for the convenience of the parties, the Plaintiffs' claim would be more properly heard in a forum outside this state, "the court *shall* decline to exercise jurisdiction under the doctrine of forum non conveniens and *shall* stay or dismiss the claim or action." (Tex. St. § 71.051(b); emphasis supplied.)

> In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court shall consider whether:
>
>   (1)  an alternate forum exists in which the claim or action may be tried;
>
>   (2)  an alternative forum provides an adequate remedy;
>
>   (3)  maintenance of the claim or action in the courts of this state—Texas—would work a substantial injustice to the moving party;
>
>   (4)  the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;
>   (5)  the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and

---

[3]    See fn. 2 above. Independent of this factual inaccuracy, this allegation incorporates an incorrect statement of the law, whether applying the law of Texas or Kansas.

-3-

(6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation. (*Id.*)

Texas Civil Practice & Remedies Code. § 71.051(e) concludes:

The court *shall dismiss* a claim under Subsection (b) if the court finds by a preponderance of the evidence that a party was joined solely for the purpose of obtaining or maintaining jurisdiction in this state and the party's claim would be more properly heard in a forum outside this state.

Consideration of the section these factors reflects that Kansas is clearly a superior and appropriate forum to resolve the issues presented in Plaintiffs' Petition.

## III. KANSAS IS MORE APPROPRIATE AND MORE CONVENIENT TO THE PARTIES.

Forum non conveniens is an equitable doctrine exercised by courts to prevent the imposition of an inconvenient forum on a litigant. *Exxon Corp. v. Choo*, 881 S.W.2d 301, 302 n. 2 (Tex. 1994). "A 'foreign forum' is available when the entire case and all the parties can come within the jurisdiction of that forum." *In re Dauajare-Johnson*, 2014 WL 3401094 (Tex. App.-Hous. 14th Dist.). Texas courts hold that another forum is available if the defendant submits to the jurisdiction of the other forum. *In re BPZ Resources, Inc.*, 359 S.W.3d 866, 873 (Tex. App.-Hous. 14th Dist 2012).

CVR Energy, Inc. and CVR Refining, LP, are both amenable to jurisdiction in Kansas. Both entities are registered in the State of Kansas (Facts, ¶ 10). CVR Energy, Inc. has appeared in the courts in Kansas many times. CVR Refining, LP has not yet litigated in the State of Kansas but is registered in and amenable to the jurisdiction of Kansas and would have no valid objection to the jurisdiction of Kansas.

Once the defendant establishes that an available alternative forum exists, the plaintiff must prove that the available alternative forum is, for some reason, inadequate. *Sarieddiene v.*

*Moussa*, 820 S.W.2d 837, 839 (Tex. App.-Dallas 1991), writ denied. The Court should note that none of the Plaintiffs in this case are Texas residents. That point is worth noting because "A nonresident plaintiff's . . . choice of forum is afforded substantially less deference under the forum non conveniens doctrine." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Quixtar v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010). Moreover, the specific nature of the remedies within the more appropriate jurisdiction is not entitled to consideration. "[T]hat the substantive law of an alternate forum may be less favorable to the plaintiff is entitled to little, if any, weight." *In re Pirelli Tire, LLC*, 247 S.W.3d 678.

## IV. THE *GULF OIL* FACTORS STRONGLY MANDATE DISMISSAL IN FAVOR OF A KANSAS FORUM.

If there is an alternative forum, which there is in this instance, the court must then consider the private and public interest factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-9 (1947). The Texas courts apply the *Gulf Oil* factors in the forum non conveniens analysis. *Quixtar, Inc.*, 315 S.W.3d at 33-34; *Pirelli Tire, LLC*, 247 S.W.3d at 676-77. The private interest factors of *Gulf Oil Corp.*, 501 U.S. at 508, include:

> (1)     the relative ease of access to sources of proof;
>
> (2)     the availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses;
>
> (3)     the possibility of a view of the premises, if a view would be appropriate to the action;
>
> (4)     the enforceability of a judgment once obtained; and
>
> (5)     all other practical problems that make trial of the case easy, expeditious and inexpensive.

(*Id.*)

1.     **Access to the Sources of Proof Clearly Favor Kansas.**

Plaintiffs' cause of action relates to an accident which occurred at CRRM's Coffeyville refinery in Coffeyville, Kansas. (Facts, ¶ 3.) The pump at issue remains in Kansas. (Exhibit 1, ¶5.) All witnesses to the accident are CRRM employees who were on the refinery premises on the date of the accident. (Exhibit 1, ¶ 6.) The investigation of the pump failure and causes of the accident were being undertaken at the refinery in Kansas or in Lee's Summit, Missouri. (Exhibit 1, ¶ 5.) Plaintiffs' treating physicians, health care providers and hospitals are all either in Kansas or the adjacent areas of Tulsa, Oklahoma. (Exhibit 1, ¶ 7.) Because the Plaintiffs' Petition is not specific as to any allegations of negligence, it is clear that any potential and possible negligence or sources of proof related to negligence would be at or near CRRM's Coffeyville refinery. All issues related to Plaintiffs' injuries, treatment and recovery, are also in Kansas or adjacent areas of Oklahoma. None of the "sources of proof" associated with the accident exist in Fort Bend County or, for that matter, in Texas.

2.     **Availability of Compulsory Service.**

Compulsory service in Kansas is available for all participants in and witnesses of the accident of July 29, 2014. The cost of compelling witnesses to appear in a Kansas court is negligible. The cost of obtaining willing witnesses to appear in a Kansas court from nearby Oklahoma is negligible.

Conversely, Texas cannot, by compulsory process, compel the attendance of any witness residing in Kansas or Oklahoma. Even the cost of attendance of witnesses who would appear in Texas voluntarily is substantially greater, because all would require travel of almost 600 miles from Coffeyville, Kansas, and its environs to Fort Bend County.

### 3. Possibility of a View of the Premises.

While it is presently difficult to determine whether a view of the premises will be necessary, that ability only exists in an action which would be brought in the State of Kansas. A Fort Bend County action cannot, under any circumstances, make a view of the premises of the accident available to a fact finder.

### 4. Enforceability of a Judgment and Other Practical Problems.

Obviously, a judgment obtained in either Kansas or Texas would be equally enforceable and valid. However, practical considerations would make trial of Plaintiffs' litigation much more easy, expeditious and inexpensive in Montgomery County, Kansas. Montgomery is the county in which the Colliers reside, the refinery exists, the employee-witnesses observed the incident, and much of the medical care was provided. Moreover, Montgomery County, Kansas is the situs of the employment relationship between the Plaintiffs and CRRM which is at the heart of the cause of action.

## V. *GULF OIL* PUBLIC INTEREST FACTORS FAVOR KANSAS.

*Gulf Oil* identified the following public interest factors which should be considered in a forum non conveniens determination:

    (1)    administrative difficulties flowing from court congestion;

    (2)    the burden of jury duty imposed on the citizens of the community with no relation to the litigation;

    (3)    local interest in having localized controversies decided at home; and

    (4)    the avoidance of unnecessary problems in conflicts of law, or in the application of foreign law.

*Gulf Oil*, 330 U.S. at 508-09.

## 1. Administrative Difficulties Favor Kansas.

While Fort Bend County enjoys a new, large and efficient courthouse, Montgomery County, Kansas will have no administrative difficulties whatsoever. Court congestion in rural Kansas counties, such as Montgomery County, is nonexistent. Montgomery County, like most Kansas rural counties, has few civil lawsuits, fewer civil cases that go to trial, and fewer still cases that go to jury trial. Montgomery County is a close, uncongested, and rural venue with a vital interest in the litigation. Montgomery County is the venue in which the majority of the witnesses and treating physicians reside.

## 2. The Burden of Jury Duty.

There would appear to be no reason why jury duty should be imposed on 12 Texas citizens, where the accident, the relationship between the parties, the injuries and the losses associated therewith, have absolutely no relationship to Fort Bend County or, for that matter, to Texas. Plaintiffs are all residents of Coffeyville, Kansas, or reside just over the Oklahoma state line. CRRM's refinery operates exclusively in Kansas. The accident occurred in Kansas. The accident participants and witnesses are located in either Kansas or in nearby Oklahoma towns. Texas simply has no relationship to the incident, the Plaintiffs, the employment relationship, or the litigation.

## 3. Local Interest in Having Localized Controversies Decided at Home.

Kansas is the state in which the accident occurred, the employment relationship existed, and the state in which workers' compensation benefits were obtained. The significance of Kansas' regulatory interest weighs heavily in favor of Kansas as the appropriate forum. Kansas has every right to govern and regulate work-related injuries which call into play its tort law and its statutory scheme of workers' compensation benefits. Indeed, when such benefits have already

been provided to each of these Plaintiffs, Kansas has a strong regulatory interest in determining and resolving any remaining issues which might be addressed, such as statutory immunity, workers' compensation liens, and the like.

## VI. AVOIDANCE OF THE APPLICATION OF FOREIGN LAW.

A forum non conveniens analysis favors conducting the trial in a court that is familiar with the law that will govern the case. *See*, *Gulf Oil*, 330 U.S. at 509 (1947); *In re Dauajare-Johnson*, 2014 WL 3401094, *10 (Tex. App.-Hous. 14th Dist.). "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984).

"The fifth statutory factor of Section 71.051 requires consideration of whether the forum is at home with the law that governs the case and, therefore, whether a choice of law analysis is necessary." *Schippers v. Mazak Props., Inc.*, 350 S.W.3d 294, 300 (Texas. App.-San Antonio 2011, pet. denied).

In determining the law which is applicable, Texas follows the "most significant relationship" test for personal injury lawsuits. *Liberty Mut. Ins. Co. v. Transit Mix Concrete & Materials Co.*, 2013 WL 3329026, *5 (Tex. App.-Texarkana). That "most significant relationship" test involves three levels. The first level, as stated in Section 6 of the Restatement of Conflict of Laws, involves a general test which weighs the competing policy interests of the different jurisdictions. *Vanderbilt Mortg. & Fin., Inc. v. Posey*, 146 S.W.3d 302, 313 (Tex. App.-Texarkana 2004, no pet.). Section 6 requires the consideration of:

    (a) the needs of the interstate and international systems,

    (b) the relevant policies of the forum,

    (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Kansas clearly has the greatest interest in and need to govern the legal ramifications of employment accidents occurring to Kansas residents within its borders. Kansas policies will govern the expectations of the parties, the certainty, predictability and uniformity of the results.

The second level of the analysis is equally important, particularly in a tort case. That involves Section 145 of the Restatement 2d of Conflict of Laws (1971). There, Section 145 emphasizes the following four factors:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the par[ties] is centered.

Kansas is the place where the injury occurred, the place where the conduct causing the injury occurred, the residence of the Plaintiffs Collier, the place of the business of CRRM, and the place where the employment relationship between the parties existed. Kansas law will apply. Kansas law will determine the rights and liabilities of the parties. Unless, with respect to the particular issue, some other state has a more significant relationship in an action for a personal injury, the local law of the state where the injury occurred typically determines the rights and liabilities of the parties. *Liberty Mut. Ins. Co. v. Transit Mix Concrete & Materials Co.*, 2013 WL 3329026, *6 (Tex. App.-Texarkana). Moreover, "it is the plaintiff's residence at the time of

the injury, not at the time of filing, that is relevant." *Tullis v. Georgia-Pacific Corp.*, 45 S.W.3d 118, 127 (Tex. App.-Fort Worth 2000). In some cases, the place of the injury is deemed so important that it has been considered the appropriate forum, even where all parties are Texas residents. In *Liberty*, the court determined that Arkansas was the appropriate jurisdiction to hear the case because it was the place of (1) the injury and (2) the conduct causing the injury, even though the Texas employee was allegedly injured by the negligence of his Texas employer.

## VII. FORUM SELECTION IS INDEPENDENTLY DETERMINED WITHOUT A "BURDEN OF PROOF" ALLOCATION.

The Court should note that Tex. St. 71-051(b) was enacted in 2003. Since then, the Texas Supreme Court has held that the new statute states that a Texas trial court "**shall** dismiss" where the Texas forum would work a substantial injustice to the defendant corporation. *Ensco Offshore Int'l. Co.*, 311 S.W.3d 921 (Tex. 2010). Moreover, the Texas Supreme Court has also held that, unlike the earlier version of the statute, the 2003 version of the forum non conveniens statute "does not contain language placing the burden of proof on a particular party in regard to the factors." (*Id.*, at 927; *In re Gen. Elec. Co.*, 271 S.W.3d 681, 687 (Tex. 2008).) Because substantial justice requires that a motion to dismiss based on forum non conveniens be reviewed prior to trial, a large number of mandamus applications have been decided under that statute. In reviewing the decisions of the Texas Supreme Court and the Texas Court of Appeals, it is clear that Texas favors dismissals based on forum non conveniens in any action in which the litigation would and should have been brought in the jurisdiction in which the employment relationship or injury occurred. *In re BPZ Resources, Inc.*, 359 S.W.3d 866 (Houston-14th Dist. 2012)(Crew members of a Peruvian oil tanker's cause of action dismissed to allow litigation in Peru. Allegations in that case that decisions by a parent company in Houston to step up production or

avoid maintenance were *insufficient* to retain the Houston forum.) *Schippers v. Mazak Props., Inc.*, 350 S.W.3d 294 (Texas. App.-San Antonio 2011)(Dismissal of wrongful death action related to Texas airplane crash, where Florida was location of survivors of the passengers killed, the Florida plane, and the Florida owner.) *Mantle Oil & Gas, LLC*, 426 S.W.3d 182 (Houston-1st Dist. 2012)(Dismissal of Louisiana residents affected by the blowout of a Louisiana oil well operated by a Texas limited liability company in favor of Louisiana jurisdiction.) *Sammons & Berry, P.C. v. Nat'l Indem. Co.*, 2014 WL 3400713 (Tex. App.-Hous. 14th Dist.)(Texas lawsuit dismissed in favor of New Mexico, where accident, accident participants, and employment relationship all existed in New Mexico and not in Texas.)

## VIII. CONCLUSION

In litigation between Kansas parties over an accident that occurred in Kansas related to an employment relationship in Kansas, for which Kansas law will apply, a petition filed in Fort Bend County, Texas has little, if any, relationship to the cause of action. This Court should dismiss Plaintiffs' cause of action pursuant to Tex. Civ. Prac & Rem. Code § 71.051(b) in favor of the filing of this cause of action in Montgomery County, Kansas.

WHEREFORE, premises considered, CVR Energy, Inc. and CVR Refining, LP reiterate their plea that this case be dismissed in light of the forum non conveniens factors outlined herein, that the case be allowed to proceed, if at all, in the state of Kansas, and that the Defendants receive any and all further relief to which they are entitled

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By: _____
Phillip D. Sharp
Texas State Bar No. 18178680

-12-

808 Travis, 20th Floor
Houston, TX 77002
Telephone: (713) 632-1700
Telefacsimile: (713) 222-0101
Email: sharp@mdjwlaw.com

ATTORNEYS FOR DEFENDANTS CVR
ENERGY, INC. AND CVR REFINING, LP

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served pursuant to Rules 21 and 21a of the Texas Rules of Civil Procedure, via fax and/or email on the 1st day of June, 2015, upon the following counsel of record:

Gary M. Riebschlager
The Riebschlager Law Firm
801 Congress, Suite 250
Houston, TX 77002
Email: gary@riebschlagerlaw.com

Richard L. Tate
Kristin Reis
Tate, Moerer & King, LLP
206 South Second Street
Richmond, TX 77469
Email: rltate@tate-law.com
       kreis@tate-law.com

Attorneys for Plaintiffs

_____
Phillip D. Sharp

# EXHIBIT 1

CAUSE NO. 15-DCV-220330

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NIEMEYER, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | FORT BEND COUNTY, TEXAS |
| CVR ENERGY, INC. and CVR REFINING, LP, | § § § | |
| Defendants. | § § | 268TH JUDICIAL DISTRICT |

## AFFIDAVIT OF EDMUND S. GROSS

STATE OF KANSAS )
                ) ss:
COUNTY OF JOHNSON )

COMES NOW the affiant, who is of sound mind and majority, and after first being placed upon his oath, states:

1.     I, Edmund S. Gross, served as the General Counsel to CVR Energy, Inc., CVR Refining, LP, and Coffeyville Resources Refining & Marketing, LLC ("CRRM"), for a number of years prior to my retirement on December 31, 2014.

2.     I have personal knowledge of the facts and information provided below, and I am competent to testify concerning these matters.

3.     The accident which injured Donald R. Collier and Dale A. Niemeyer occurred while they worked at the refinery of Coffeyville Resources Refining & Marketing, LLC, all in Coffeyville, Kansas, on July 28, 2014. Two other CRRM

-1-

employees were also injured, one fatally, in the accident. All employees or their families received workers' compensation benefits for the injuries and losses sustained.

4. The accident occurred when one of CRRM's pumps within the refinery, P-2217, experienced a shaft seal failure which caused the release of a volatile vapor which ignited.

5. The investigation of the pump failure was undertaken at the refinery in Coffeyville, Kansas and at a shop located in Lee's Summit, Missouri. The pump, which is estimated to weigh 1,000 pounds, is stored in Coffeyville, Kansas.

6. All witnesses to the accident were either CRRM employees who were at work at the time, or medical or emergency personnel from the Coffeyville, Kansas area who arrived soon thereafter.

7. I believe that the majority of the physicians, healthcare providers and hospitals that initially cared for Mr. Collier and Mr. Niemeyer are either in Kansas or in the adjacent areas of Tulsa, Oklahoma.

8. CVR Energy, Inc. is registered to do business and doing business in the State of Kansas. CVR Energy, Inc. is amenable to process in the State of Kansas through its resident agent, The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, Kansas, 66603.

9. CVR Refining, LP is registered to do business and doing business in the State of Kansas. CVR Refining, LP is amenable to service within the State of Kansas through its resident agent, Corporate Service Company, 200 SW 30th Street, Topeka, Kansas, 66611.

-2-

Further affiant saith naught.

Edmund S. Gross

Subscribed and sworn to before me, a Notary Public in and for said County and State, by Edmund S. Gross, on this 26th day of May, 2015.



Notary Public

My Appointment Expires:

6-21-17

# Tab 8

Filed
8/4/2015 2:39:53 PM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Sunset Romo

CAUSE NO. 15-DCV-220330

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NIEMEYER, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| vs. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| CVR ENERGY, INC. and CVR REFINING, LP, | § § § | |
| Defendants. | § § | 268TH JUDICIAL DISTRICT |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO TEXAS CIVIL PRACTICE & REMEDIES CODE CHAPTER 71.051

TO THE HONORABLE COURT:

COME NOW the Defendants, CVR ENERGY, INC. ("CVR Energy") and CVR REFINING, LP ("CVR Refining") (collectively, "CVR"), and submit this Supplemental Memorandum in Support of their Motion to Dismiss the claims of the Plaintiffs under the Texas doctrine of forum non conveniens, pursuant to Chapter 71.051 of the Texas Civil Practice & Remedies Code

This Supplemental Memorandum will establish that:

1.      Defendants' Motion to Dismiss under the Texas doctrine of forum non conveniens was filed on June 1, 2015.

2.      On July 6, 2015, Defendants responded to Plaintiffs' Rule 194 Request for Disclosure.

-1-

3.     Through that Disclosure (Exhibit 1), Defendants identified 34 potential witnesses with knowledge of the relevant facts associated with the accident. Of those witnesses identified:

- 29 are residents of Kansas,

- 3 are residents of Oklahoma or Missouri,

- 2 (1 being an expert) are residents of Texas.

4.     Defendants' disclosures further identified Coffeyville Resources Refining & Marketing, LLC ("CRRM"), which is located in Coffeyville, Kansas, as a Responsible Third Party ("RTP").

5.     Defendants have not yet learned which health care providers served Donald R. Collier and Dale A. Niemeyer. However, to the best of Defendants' belief, all such health care providers are located in Kansas, Oklahoma and/or Missouri. There are no Texas health care providers associated with the care and treatment of Mr. Collier or Mr. Niemeyer.

## I.
## THE *GULF OIL* FACTORS STRONGLY MANDATE DISMISSAL IN FAVOR OF A KANSAS FORUM

Defendants' original forum non conveniens Memorandum supporting the Motion to Dismiss (filed 06/01/15; Doc. 12) preliminarily addressed the *Gulf Oil* factors mandating dismissal (*Id.* at p. 5). The specific witness and accident information within the Rule 194 Disclosure (Exhibit 1) subsequently provided the details in support of dismissal. The Texas forum non conveniens statute, Chapter 71.051, has only been in existence since 2003. In 2010, the Texas Supreme Court determined that a Writ of

Mandamus was appropriate where a district court, after an erroneous consideration of the statutory factors, did not follow the statutory mandate that "the court **shall** decline to exercise jurisdiction under the doctrine of forum non conveniens." (Emphasis supplied.) *In re Ensco Offshore Int'l Co.*, 311 S.W.3d 921 (2010). Since that time, Fort Bend County's First and Fourteenth appellate districts have rendered a large number of very thorough decisions interpreting the forum non conveniens statute. Those decisions, which are discussed below, provide unmistakable guidance to this Court. Where Kansas residents were injured in a Kansas accident while performing work for their Kansas employer, the case should be tried in Kansas under Kansas law. Texas has little or no interest in the matter and Texas courts and jurors should not be burdened with administering and resolving the litigation. The cause of action should be dismissed in favor of Kansas litigation.

## A. Witnesses to the Refinery Accident Cannot be Required to Appear.

Plaintiffs premise jurisdiction and venue in Fort Bend County upon the fact that the CVR Defendants operate a joint office in Sugar Land, Texas. However, the location of this office is the only real connection with Texas. As the Court may have observed from Exhibit 1, virtually all witnesses to the accident are residents of Coffeyville, Kansas, or South Coffeyville, Oklahoma. Two witnesses, who have moved since the accident, are residents of Wynnewood, Oklahoma. Only two witnesses could be compelled to testify by Texas process. One Texan, who investigated the incident, works in the Sugar Land offices; the other Texan is an expert witness. The health care

-3-

providers attending to Mr. Collier and Mr. Neimeyer are also in the Kansas and Oklahoma areas. Tex. R. Civ. P. 176.3(a) states:

> A person may not be required by subpoena to appear or produce documents or other things in a county that is more than 150 miles from where the person resides or is served.

The Texas Supreme Court has previously held that "the lack of compulsory process in Texas for reaching the great majority of witnesses would be substantially unjust." *In re Ensco*, 311 S.W.3d 921, 925 (2010); *In re General Electric*, 271 S.W.3d 681, 689 (2008). Here, virtually none of the factual witnesses can be compelled to testify. "Reasonable access to witnesses and evidence is a fundamental need in regard to any trial . . ." *In re General Electric*, 271 S.W.3d at 691-92. *See also, In re BPZ Res.*, 359 S.W.3d 866, 879 (Tex. App.-Hous. [14 Dist.]), and *Schippers v. Mazak Properties, Inc.*, 350 S.W. 3d 294, 296 (Tex. App.-San Antonio 2011).

## B.     Available Forum.

"A foreign forum is available when the entire case and all the parties can come within the jurisdiction of that forum." *Vinmar Trade Fin. Ltd. v. Util. Trailers de Mexico*, 336 S.W.3d 664, 674 (Tex. App.-Hous. [1st Dist.] 2010); *In re Dauajare-Johnson*, 2014 WL 3401094 (Tex. App.-Hous. [14 Dist.]). Here, Kansas is an available forum because all witnesses are amenable to its jurisdiction, it is the site of the accident, it is the site of the employment relationship, and it is the jurisdiction in which workers' compensation benefits were provided. "An alternative forum is adequate if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Pirelli Tire, LLC*, 247 S.W.3d 670,

-4-

678 (Tex. 2007) (quoting *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003)). The substantive law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions to the foreign forum made known to the court plainly demonstrate that the plaintiff is unlikely to obtain basic justice there. *Vinmar Trade Fin. Ltd.*, 336 S.W.3d at 674; *In re Dauajare-Johnson*, 2014 WL 3401094 at *5. Obviously, Kansas is an adequate forum in which basic justice is available.

## C.   Kansas Law Will Apply to This Accident.

Texas courts follow the "most significant relationship test" set out in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 ("RESTATEMENT") to determine the applicable law in tort cases where the injury occurred outside the state of Texas. *See, Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 655 (S.D. Tex. [Houston] 2003); *Sacks v. Four Seasons Hotel, Ltd.*, 2006 WL 783441 (citing *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)). Section 145 of the RESTATEMENT outlines the factual matters to consider in applying the Section 6 principles to a given case. Applying the "most significant relationship test," the present facts compel the application of Kansas substantive law.

### 1.   RESTATEMENT Section 6 General Factors.

Section 6 of the RESTATEMENT identifies the general factors relevant to the choice of law question. As the Court will see, an analysis of these considerations weighs heavily in support of applying Kansas law:

     (a)    the needs of the interstate and international systems;

-5-

(b)     the relevant policies of the forum;

(c)     the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d)     the protection of the justified expectations;

(e)     the basic policies underlying the particular field of law;

(f)     certainty, predictability and uniformity of result; and

(g)     ease in determination and application of the law to be applied.

See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6.

**a.     Needs of the Interstate and International Systems.** The goal of this initial factor is to harmonize relations between the states and to facilitate commercial activities between them. *See, Sacks v. Four Seasons Hotel, Ltd.,* 2006 WL 783441 at *17 (E.D. Tex.-Texarkana Div.). Statutory workers' compensation immunity is the most significant difference between the Kansas and Texas laws relevant to this case.[1]

**b.     Relevant Policies of the Forum.** Texas is the site of the joint headquarters of CVR Energy, Inc. and CVR Refining, LP, which possess an indirect equity interest in Plaintiffs' employer, CRRM. With that lone exception, Texas has no recognizable interest in protecting Kansas citizens from Kansas injuries occurring in Kansas by a company doing business in Kansas. The ISOM

---

[1]     Kansas would not allow Plaintiffs to circumvent the workers' compensation immunity by allegations of gross negligence. K.S.A. 44-501b(d); *Duncan v. Perry Packing Co.,* 162 Kan. 79, 174 P.2d 78 (1946).

-6-

fire occurred on the premises of Coffeyville Resources Refining & Marketing, LLC's refinery, located in Coffeyville, Kansas. This Kansas fire harmed Kansas residents who were full-time employees of their Kansas-based employer. For their injuries, the Kansas residents received Kansas workers' compensation. Texas has no real interest in the litigation.

c. **Relevant Policies and Interests of Other Interested States.** The relevant policies of Kansas impact this litigation. Kansas is the residential state of Donald R. Collier and Dale A. Niemeyer. Kansas is the state where the employment relationship between Mr. Collier, Mr. Niemeyer and Coffeyville Resources Refining & Marketing, LLC ("CRRM") existed. Kansas is the state where the accident occurred. Kansas law governed the payment of workers' compensation benefits to Mr. Collier and Mr. Niemeyer and governs the subrogation rights of CRRM and its insurer. Texas has no real interest in this matter.

d. **Protection of Justified Expectations.** According to comment (g) on Subsection 2 of Section 6 of the RESTATEMENT (SECOND) OF CONFLICTS OF LAW, the protection of justified expectations is least appropriate in negligence cases. Specifically, comment (g) states:

> There are occasions, particularly on the area of negligence, when the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied. In such situations, the parties have no justified expectations to protect, and this factor **can play no part in the decision of a choice-of-law question.** (Emphasis added.)

e.	**Basic Policies Underlying the Particular Field of Law.** The workers' compensation policies of Texas have no relationship to the instant litigation. Here, Kansas workers' compensation benefits are being provided to Kansas workers who were injured in Kansas. Kansas had an immediate interest to insure that its public policies are correctly implemented to regulate its employers and its employees.

f.	**Certainty, Predictability and Uniformity of Result.** The principles of certainty, predictability and uniformity of result would be furthered by application of Kansas law to this Kansas accident. Plaintiffs have already and are presently receiving the statutory benefits available to them through the workers' compensation law of Kansas. Utilization of the statutory workers' compensation code of the state in which the accident occurred is the best means of obtaining a certain, predictable and uniform result.

g.	**Ease in Determination and Application of the Law to be Applied.** The application of Kansas law to this case is best accomplished by a Kansas Court. "Even the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds." *In re Dauajare-Johnson*, 2014 WL 3401094 at \*11 (Tex. App.-Hous. [14 Dist.]), citing *Vinmar*, 336 S.W.3d at 679.

2.	**RESTATEMENT Section 145 Specific Factors.**

While Section 6 of the RESTATEMENT "sets out the general principles by which the more specific rules are to be applied," Section 145 of the RESTATEMENT provides

-8-

the more specific criteria applicable to a tort case. *Gutierrez*, 583 S.W.2d 312, 318-19 (Tex. 1979). Section 145 emphasizes the following four factors:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

(*Id.* at 319 (quoting RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 145).) *See also, Liberty Mutual Ins. Co. v. Transit Mix Concrete & Materials Co.*, 2013 WL 3329026 at *5 (Tex. App.-Texarkana).

"In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties . . ." (*Id.* at *6.) Here, the injuries occurred in Kansas. The pump seal leak occurred in Kansas. The fire occurred in Kansas. The conduct associated with the pump seal leak and fire occurred in Kansas. The domicile, residence, place of business of the parties occurred in Kansas. The employment relationship between Mr. Collier, Mr. Niemeyer and their employer occurred in Kansas. Moreover, virtually all witnesses to the accident reside in Kansas. It is difficult to determine how the law of any other forum could apply.

D.    The Fact that Kansas Law is Different is Irrelevant.

Plaintiffs are likely to argue that the law of Kansas is different in many respects.[2] However, the fact "that the substantive law of the alternative forum may be less

---

[2]    See footnote 1 above.

favorable to the plaintiff is entitled to little, if any, weight" in a choice of law or a forum non conveniens decision. *In re Mantle Oil & Gas, LLC,* 426 S.W.3d 182, 189 (Tex. App.-Hous. [1st Dist.]). (Louisiana was an adequate alternative forum, despite the fact that plaintiff's claims would be barred under the Louisiana statute of limitations and that punitive damages were not recoverable in Louisiana.); *see also, In re Pirelli Tire, LLC,* 247 S.W.3d at 678.

In *Sammons & Berry, P.C. v. Nat'l Indemnity Co.,* 2014 WL 3400713 (Tex. App.-Hous. [14 Dist.]), the court stated:

> "[t]hat the substantive law of an alternative forum may be less favorable to the plaintiff is entitled to little, if any, weight." *In re Pirelli Tire, L.L.C.,* 247 S.W.3d at 678. *Forum non conveniens* requires an available remedy in the alternative forum, but does not require the same cause of action or equivalent relief be available. *In re Gen. Elec. Co.,* 271 S.W.3d at 687; *In re Pirelli Tire, L.L.C.,* 247 S.W.3d at 678 (holding Mexico was adequate forum even though it may not afford cause of action for strict liability, or provide for "American–Style" discovery or right to jury); *Berg v. AMF, Inc.,* 29 S.W.3d 212, 216–17 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding Canada was adequate forum although it "does not recognize strict liability causes of action, has monetary limits on non-economic damages, and only allows for recovery of punitive damages upon a showing of intentional conduct"); *Gomez de Hernandez v. Bridgestone/Firestone North Am. Tire, L.L.C.,* 204 S.W .3d 473, 483 (Tex.App.-Corpus Christi 2006, pet. denied) ("The primary consideration is whether the alternate forum entitles appellants to a remedy for their losses, even if the compensation available under the remedy is less than what may be recovered in a Texas court.").

The First District Texas Court of Appeals has held that "even the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds." *See, Vinmar,* 336 S.W.3d at 679. The Fourteenth District did likewise in *Sammons.* Here, Kansas law should clearly be applied by a Kansas court.

**E.    Texas Should not Have to Bear the Burden of Hearing This Case.**

-10-

Obviously, this is an accident which occurred to Kansas residents, employed at a Kansas place of business, through a Kansas employment relationship, for which Kansas workers' compensation benefits were provided. Texas has little, if any, relevance to the litigation. "It is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the State." *In re Mantle Oil & Gas, LLC*, 426 S.W.3d 182, 189, 194-195 (Tex. App.-Hous. [1st Dist.]), citing *In re Pirelli Tire*, 247 S.W.3d at 676 (quoting *In re Smith Barney*, 975 S.W.2d 593, 598 (Tex. 1998); *see also, In re Dauajare-Johnson*, 2014 WL 3401094 (Tex. App.-Hous. [14 Dist.]) at *11.

## II.
## PLAINTIFFS' ARGUMENT THAT DEFENDANTS' NEGLIGENCE OCCURRED IN TEXAS IS INSUFFICIENT

The Plaintiffs' Original Petition does not identify any specific acts of negligence associated with these Defendants. The closest identification of alleged negligence occurs at paragraphs 19 and 22:

19.    On the occasion in question, CVR, by and through their officers, employees, agents and representatives, independently committed acts of omission and commission which collectively and severally constitute negligence that proximately caused the deaths of Plaintiffs' decedents and damages to Plaintiffs.[3]

22.    The corporate domicile of the CVR Defendants is Sugar Land, Texas. The acts of negligence and gross negligence of Defendants CVR occurred in Texas by and through its [sic] corporate officers, directors and employees in Texas.

---

[3]    The Court should observe that the allegation is in error; neither Plaintiff died in the fire.

Such allegations are insufficient to avoid a dismissal on a forum non conveniens basis. Similar arguments were presented by the plaintiffs of *In re BPZ Resources, Inc.*, 359 S.W.3d 866 (Tex. App.-Hous. [14 Dist.]). That appellate court stated:

> Though the relators are Texas corporations who made allegedly negligent decisions that allegedly led to the explosion on the Supe, consideration of all the *Lauritzen - Rhodits* factors, we conclude as a matter of law, that Peruvian law applies to the real parties' claims. (*Id.* at 878.) . . .

> We presume, without deciding, that the relators made decisions in Houston that were a legal cause of the explosion when they allegedly ordered production on the platform to be "ramped up" to quickly generate needed cash, even though they allegedly knew that the operations involved dangerous procedures, insufficient equipment, and unseaworthy vessels. Under this presumption, the real parties' injuries would have resulted in part from acts or omissions that occurred in Texas. Nonetheless, these alleged acts and omissions in Texas would be a more remote cause of the real parties' injuries than the alleged acts or omissions in Peru of Paolillo, the crew of the Supe, and BPZ Peru. (*Id.* at 880). . .

> We conclude that the balance of the parties' private interests and the public interest of the state predominate in favor of this action being brought in a Peruvian court. [Citations omitted.] (*Id.*)

Similar arguments received identical results in *In re Mantle Oil & Gas, LLC*, 426 S.W.3d 182 (Tex. App.-Hous. [1st Dist.]), where the plaintiffs contended that:

> . . . because Mantle Oil is a Texas limited liability company and made decisions regarding the operation of the well from its Texas headquarters, Texas courts and juries have a "significant interest in how [it] operates as a business. Essentially, the Alcee plaintiffs claim that Mantle Oil negligently operated the Well from its Texas headquarters which caused the blowout, and, therefore, because the acts in Texas caused their damages, Texas has a local interest in adjudicating this dispute.. . ." (*Id.* at 195.)

The *Mantle* court rejected these arguments holding that the plaintiffs were not Texas residents and Texas generally afforded "less deference to a non resident's forum

-12-

choice." *In re Mantle*, 426 S.W.3d 182, 188 (Tex.App.-Hous. [1st Dist.]). The court further stated:

> ". . . it is undisputed that the Alcee plaintiffs are Louisiana residents, that the blowout occurred in Louisiana, and that any alleged personal injuries and property damage occurred in Louisiana. Louisiana has a substantial interest in making sure that its citizens and their property are not harmed by oil and gas operations within its borders." (*Id.* at 195.)

After noting that the witnesses and evidence were primarily in Louisiana and that compulsory process was unavailable to compel witness testimony in Texas, the First District Court of Appeals concluded:

> "It is fundamentally unfair to burden the people of Texas with the cost of providing courts to hear cases that have no significant connection with the state." (*Id.* at 189.)

Thus, arguments that the decisions of companies headquartered in Texas caused or contributed to accidents in the out-of-state operations of affiliates or subsidiaries have been rejected by the First and the Fourteenth Texas Courts of Appeal. In each case, the Texas Courts of Appeal dismissed the litigation upon a forum non conveniens analysis statutorily enacted by Section 71.051 of the Texas Civil Practice & Remedies Code due to the fundamental:

 (1) need for reasonable access to out-of-state witnesses and evidence,

 (2) ease of having the out-of-state law administered by the courts of that state, and

 (3) burden which trial would place upon the people of Texas for issues not significant to Texas.

## III.
## CONCLUSION

-13-

The rulings of the Texas Supreme Court and the First and Fourteenth appellate districts present clear decisions on very similar forum non conveniens issues. Those decisions provide unmistakable guidance to this Court. Where Kansas residents were injured in a Kansas accident performing work for their Kansas employer, the case should be tried in Kansas under Kansas law. Texas has little or no interest in the matter and Texas courts and jurors should not be burdened with administering and resolving the litigation. The cause of action should be dismissed in favor of Kansas litigation.

Respectfully submitted,

MARTIN, DISTERE, JEFFERSON & WISDOM, L.L.P.

By:

Phillip D. Sharp
Texas State Bar No. 18118680
808 Travis, 20th Floor
Houston, TX 77002
Telephone: (713) 632-1700
Telefacsimile: (713) 222-0101
Email: sharp@mdjwlaw.com

SMITHYMAN & ZAKOURA, CHARTERED

By:

Lee M. Smithyman
KS Supreme Court #09391
750 Commerce Plaza II
7400 West 110th Street
Overland Park, KS 66210-2362
Telephone: (913) 661-9800
Telefax: (913) 661-9863
Email: lee@smizak-law.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon the following counsel of record in accordance with the Texas Rules of Civil Procedure on the 4th day of August, 2015.

Gary M. Riebschlager
The Riebschlager Law Firm
801 Congress, Suite 250
Houston, TX 77002
Email: gary@riebschlagerlaw.com

Richard L. Tate
Kristin Reis
Tate, Moerer & King, LLP
206 South Second Street
Richmond, TX 77469
Email: rltate@tate-law.com
        kreis@tate-law.com

Attorneys for Plaintiffs

MARTIN, DISIERE, JEFFERSON &
WISDOM, L.L.P

By:
Phillip D. Sharp
Attorneys for Defendants

-15-

# EXHIBIT 1

# CAUSE NO. 15-DCV-220330

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, AND WENDY NIEMEYER, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| vs. | §<br>§ | FORT BEND COUNTY, TEXAS |
| CVR ENERGY, INC. AND CVR REFINING, LP, | §<br>§<br>§ | |
| Defendants. | §<br>§ | 268TH JUDICIAL DISTRICT |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR DISCLOSURE - RULE 194

TO:    Plaintiffs Donald R. Collier, Jennifer J. Collier, Dale A. Niemeyer, and Wendy Niemeyer, by and through their attorney of record, Gary M. Riebschlager, 801 Congress, Suite 250, Houston, Texas, 77002

COME NOW the Defendants, CVR Energy, Inc. ("CVR Energy") and CVR Refining, LP ("CVR Refining"), and serve their Responses to Plaintiffs' Request for Disclosure in accordance with Rule 194 of the Texas Rules of Civil Procedure.

Respectfully submitted,

MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.

By: _____
Phillip D. Sharp
Texas State Bar No. 18118680
808 Travis, 20th Floor
Houston, TX 77002
Telephone: (713) 632-1700
Telefacsimile: (713) 222-0101
Email: sharp@mdjwlaw.com

SMITHYMAN & ZAKOURA, CHARTERED

By:_____
Lee M. Smithyman
KS Supreme Court #09391
750 Commerce Plaza II
7400 West 110th Street
Overland Park, KS 66210-2362
Telephone: (913) 661-9800
Telefax: (913) 661-9863
Email: lee@smizak-law.com

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served upon the following counsel of record in accordance with the Texas Rules of Civil Procedure, by forwarding same by Federal Express on the 6th day of July, 2015, for delivery on July 7, 2015.

Gary M. Riebschlager
The Riebschlager Law Firm
801 Congress, Suite 250
Houston, TX 77002
Email: gary@riebschlagerlaw.com

Richard L. Tate
Kristin Reis
Tate, Moerer & King, LLP
206 South Second Street
Richmond, TX 77469
Email: rltate@tate-law.com
        kreis@tate-law.com

SMITHYMAN & ZAKOURA, CHARTERED

By:_____
Lee M. Smithyman
Attorneys for Defendants

2

## RESPONSES TO PLAINTIFFS' REQUESTS FOR DISCLOSURE

(a)    The correct names of the parties to the lawsuit.

**Response:**    Plaintiffs have correctly named the two Defendants. There is an issue as to whether the Plaintiffs have a cause of action against either of the named Defendants. Defendants will name Coffeyville Resources Refining & Marketing, LLC ("CRRM") as an immune, but appropriate responsible third party.

(b)    The name, address and telephone number of any potential parties.

**Response:**    Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

CRRM is an immune responsible third party which will have a subrogation lien upon all proceeds potentially recovered by Plaintiffs from these answering Defendants.

(c)    The legal theories and, in general, the factual bases of the responding party's claims.

**Response:**    These Defendants, as corporate parents of CRRM, are immune for all non-delegable safety duties of the subsidiary employer, CRRM. Thus, to that extent, these parties have immunity on Plaintiffs' claims. Further, these Defendants have no negligence whatsoever associated with the injuries sustained by Donald R. Collier and Dale A. Niemeyer. Finally, the potential negligence of the employer, CRRM, should be compared even though CRRM has immunity by virtue of providing workers' compensation benefits pursuant to Kansas Statute.

CRRM will be subrogated to all Plaintiffs' proceeds of recovery under K.S.A. 44-504.

See Defendants' Answer as well as Defendants' statements provided above. See Defendants' Motion to Dismiss for Forum Non Conveniens.

(d)    The amount and any method of calculation of economic damages.

**Response:**    N/A

3

(e)  The name, address and telephone number of persons having knowledge or relevant facts and a brief statement of each identified person's connection with the case.

**Response: 1.   Steve K. Adel** (Rotating Equipment Engineer)
Coffeyville Resources Refining & Marketing, LLC
400 N. Linden Street, PO Box 1566
Coffeyville, KS 67337
(620) 251-4000

*Interviewed by OSHA*

**2.   Corey Beacom, CSP**
Compliance Safety & Health Officer
Wichita Area Office
OSHA - U.S. Department of Labor
100 N. Broadway, Suite 470
Wichita, KS 67202
316/269-6644, Ext. 120

*Conducted interviews on 08/26/14*

**3.   Ryan C. Beurskens** (Biller-Loader)
Coffeyville Resources Refining & Marketing, LLC
400 N. Linden Street, PO Box 1566
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

**4.   Jim Berquist** (Rotating Equipment Superintendent)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Member of Incident Investigation Team*

**5.   Donald Collier**
Plaintiff

4

6.     **Janice T. DeVelasco** (Vice President, Environmental,
               Health & Safety)
       CVR Energy, Inc.
       2277 Plaza Drive, Suite 500
       Sugar Land, TX 77479
       (281) 207-3200

       *Supervised investigation*

7.     **Debbie Edwards** (Shift Supervisor)
       Coffeyville Resources Refining & Marketing, LLC
       400 North Linden Street
       Coffeyville, KS 67337
       (620) 251-4000

       *Provided a statement.*

8.     **Marcus D. Grissom** (Pumper-Biller-Loader)
       Coffeyville Resources Refining & Marketing, LLC
       400 North Linden Street
       Coffeyville, KS 67337
       (620) 251-4000

       *Provided a statement.*

9.     **Tucker Hargis** (Area 1 Lead Operator)
       Coffeyville Resources Refining & Marketing, LLC
       400 North Linden Street
       Coffeyville, KS 67337
       (620) 251-4000

       *Provided a statement.*

10.    **Leonard W. Hawthorne** (Pumper-Biller-Loader Lead Qualified)
       Coffeyville Resources Refining & Marketing, LLC
       400 North Linden Street
       Coffeyville, KS 67337
       (620) 251-4000

       *Provided a statement.*

11. **Josh Holt** (Safety Specialist Tech ERT)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

12. **Jerry Hockett** (Board Operator Crude)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

13. **Bob Hunt** (Operator Waste Water)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

14. **Dennis Irwin** (Process Safety Manager)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Interviewed by OSHA; Signatory to Incident Investigation Report*

15. **Jerad Jones** (Operator in Area 1)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

**16.**  **Ray D. Kelm, P.E.**
Kelm Engineering, LLC
907 S. Friendswood Drive, Suite 202
Friendswood, TX 77546
281/993-3717

*Reported on his investigation of pumps number 2216 and 2217*

**17.**  **Keith Kuehn** (Operations Superintendent)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

**18.**  **Rahul Korpe** (Principal Engineer Process Safety Management)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

**19.**  **Steve Lafferty** (Complex Safety Manager)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Interviewed by OSHA; Signatory to Incident Investigation Report*

**20.**  **Kris L. Lenoch**
Assistant Area Director
Wichita Area Office
OSHA - U.S. Department of Labor
100 N. Broadway, Suite 470
Wichita, KS 67202
316/269-6644

*Conducted interviews on 08/26/14*

21.    **Dustin Martin** (Operator 2 in Area 6)
       Coffeyville Resources Refining & Marketing, LLC
       400 North Linden Street
       Coffeyville, KS 67337
       (620) 251-4000

       *Provided a statement.*

22.    **Tracy Maxson** (Board Operator Cat)
       Coffeyville Resources Refining & Marketing, LLC
       400 North Linden Street
       Coffeyville, KS 67337

       *Member of the Incident Investigation Team*

23.    **Michael D. McFetters**
       QA Engineer
       JCI Industries, Inc.
       1161 SE Hamblen Road
       Lee's Summit, MO 64081
       (816) 525-3320

       *Provided Report of August 11, 2014 regarding pump P-2216*

24.    **Dale Niemeyer**
       Plaintiff

25.    **Bryan Oliver** (JDC Crude)
       Coffeyville Resources Refining & Marketing, LLC
       400 North Linden Street
       Coffeyville, KS 67337
       (620) 251-4000

26.    **Jason Ramsey** (Operator 1 in Area 6)
       Coffeyville Resources Refining & Marketing, LLC
       400 North Linden Street
       Coffeyville, KS 67337
       (620) 251-4000

       *Provided a statement.*

27. **David W. Ruark** (Lead Operator Crude Pumping)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

28. **Randy Scott** (Board Operator Crude)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

29. **Robert Stevenson** (Foreman Operations Area)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Interviewed*

30. **Richard Vogel** (Corporate Security Manager)
Wynnewood Refining Company LLC
PO Box 305
906 South Powell
Wynnewood, OK 73098
405/665-6565

*Co-Leader of Incident Investigation Team*

31. **Joshua Warner** (Safety Specialist Technician)
Wynnewood Refining Company LLC
PO Box 305
906 South Powell
Wynnewood, OK 73098
405/665-6565

*Co-Leader of Incident Investigation Team*

**32.  Mark Weber** (Lead Operator HDS)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

**33.  Howard Webster** (Operator 2)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Provided a statement.*

**34.  Terry Wittum** (Training Supervisor)
Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

*Member of Incident Investigation Team*

(f)  For any testifying expert:

(1)  the expert's name, address and telephone number;

(2)  the subject matter on which the expert will testify;

(3)  the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

(4)  if the expert is retained by, employed by or otherwise subject to the control of the responding party:

(A)  all documents, tangible things, reports, models or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(B)  the expert's current resume and bibliography.

10

**Response:** None yet designated. Defendants will do so per the scheduling order issued in this or subsequent litigation.

(g)     Any discoverable indemnity and insuring agreements.

**Response:** Provided at CVR-03756 through CVR-04165.

(h)     Any discoverable settlement agreements.

**Response:** None.

(i)     Any discoverable witness statements.

**Response:** See documents produced by Defendants in response to Plaintiffs' Request for Production of Documents.

(j)     In a suit alleging physical injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.

**Response:** N/A

(k)     In a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.

**Response:** N/A

(l)     The name, address and telephone number of any person who may be designated as a responsible third party.

**Response:** Coffeyville Resources Refining & Marketing, LLC
400 North Linden Street
Coffeyville, KS 67337
(620) 251-4000

11

# Tab 9

| DONALD R. COLLIER, JENNIFER J. | § | IN THE DISTRICT COURT OF |
|---|---|---|
| COLLIER, DALE A. NIEMEYER, and | § | |
| WENDY NIEMEYER | § | |
| Plaintiffs, | § | |
| v. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| CVR ENERGY, INC. and, | § | |
| CVR REFINING, LP. | § | |
| Defendants. | § | 268TH JUDICIAL DISTRICT |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO TEXAS CIVIL PRACTICE & REMEDIES CODE CHAPTER 71.051**

TO THE HONORABLE COURT:

COME NOW, Plaintiffs DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER and WENDY NIEMEYER in the above-entitled and numbered cause and file this their Response to Defendants Motion to Dismiss, and would respectfully show unto the Court as follows:

**I. SUMMARY OF THE ARGUMENT**

1. How many times has this Court admonished the jury that, "what the lawyers say is not evidence?" And so it is here. Defendants' offer one lone affidavit of a former General Counsel, proving little....the location of the explosion and that Defendants' have some authority to conduct business in Kansas. Defendants' have wholly failed to prove any of the statutory requisites pursuant to Tex. Civ. Prac. Rem. Code 71.051 nor any of the factors listed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947). Instead, Plaintiff has proven by Defendants' own documents and depositions, that they are proper Texas defendants, with Sugarland, Texas as their principal place of business; Sugarland headquarters; Sugarland witnesses; Sugarland authorities; and the list goes on. Defendants can hardly complain it is

1

inconvenient to sue them in their own back yard. Did the lawsuit go to the frozen tundra of Alaska when *Exxon Valdez* crashed? No. Exxon was sued right down the road in Houston.

## II. ARGUMENT AND AUTHORITIES

2.     In general, a forum non conveniens analysis is left to the sound discretion of the Court and only reversed upon a showing of *clear* abuse of discretion when all relevant public and private interest factors have been considered. *Quixtar Inc. v. Signature Management Team*, 315 S.W.3d 28 (Tex. 2010).

## III. DEFENDANTS' FAILURE OF PROOF

### A. Introduction

3.     While neither party carries a "burden of proof" per se in the forum non conveniens analysis, some factors are not common knowledge and can only be proved. "To the extent evidence is necessary to support the position of the parties, the trial court must base its findings and decision on the _weight_ of the evidence, and certainly is entitled to take into account the presence or absence of evidence as to some issue or position of the party." *In re General Electric Company*, 271 S.W. 3d 681, 687 (Tex. 2008); See also, *Vinson v. American Bureau of Shipping*, 318 S. W. 3d 34, 43 (Tex. App –Hou [1st Dist.] 2010).

### B. The Gross Affidavit

4.     Defendants submit as its sole source of evidence, information or assistance to the Court, the lone affidavit of its _former_ General Counsel Edmund S. Gross.

5.     The analysis of the Gross affidavit reveals little. In paragraphs 3-5, it shows that an explosion occurred.

6.     Paragraph 6 describes the totality of the witnesses as "*all*" who were workers at the time, EMS and doctors; NOT the 34 witnesses described in a desperate last minute designation of

2

witnesses by lawyers desperate to win a motion. Clearly the Gross affidavit conflicts with the last minute designation by counsel.

7.      Paragraph 7 is not based on personal knowledge. Thus Plaintiffs' object to paragraph 7 based on lack of foundation, is legally insufficient and hereby requests paragraph 7 be stricken.

8.      Finally, paragraphs 8 and 9 simply state CVR ENERGY and CVR Refining, LP can do business in Kansas. That's it. There is NO evidence of private interest factors. And there is NO evidence of public interest factors. Nothing.

9.      **Defendants have failed in its forum non conveniens analysis by failing to prove the** *Gulf Oil* **factors.**

**A. Private Interests and Factors**

(1)      Defendants offered no proof of the relative ease of access to sources of proof. Any discovery on this issue is no different than any other case.  Especially in the case of *LeeAnna Mann and Kari Smith v. CVR Energy, Inc., et al*, (hereinafter referred to as "*Mann Smith*") Cause No. 13-DCV-209679 which is currently before the 434th Judicial District Court of Fort Bend County, Texas. The CVR Defendants conducted discovery in the *Mann Smith* case in Oklahoma for over two and a half years including site studies, plant worker depositions and others in Oklahoma.

(2)      Defendants offered no proof that the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses. It is still unknown whether Kansas can compel documents from these Texas defendants or compel the Texas witnesses. CVR conducted many depositions in Oklahoma in its *Mann Smith* defense.

3

(3) Defendants offered no proof that the possibility of a view of the premises, if a view would be appropriate to the action, would be inconvenient to any of the parties.

(4) The enforceability of a Texas Judgment is a non-factor.

(5) Defendants offered no proof that all other practical problems that make trial of the case easy, expeditious and inexpensive.

**B. Public Interests and Factors**

10.     Defendants offered no proof of any kind regarding the public interest factors as cited in *Gulf Oil.* Specifically,

(1) Defendants offered no proof that there could be administrative difficulties flowing from court congestion. In fact, CVR has requested a Fort Bend jury for the *Mann Smith* case pending in the 434th Judicial District Court.

(2) Defendants offered no proof that there would be any burden of jury duty imposed on the citizens of the community with no relation to the litigation. To the contrary, again. CVR is a local citizen, employs local workers, pays local taxes, seeks protection of Texas state laws and has sought the haven of a Fort Bend jury for the *Mann Smith* case pending in the 434th Judicial District Court.

(3) Defendants offered no proof of there being local interest in having localized controversies decided at home. Again, CVR is a local citizen, employs local workers, pays local taxes, seeks protection of Texas state laws and has sought haven of a Fort Bend jury for the *Mann Smith* case pending in the 434th Judicial District Court.

(4) Defendants offered no proof of being able to avoid unnecessary problems regarding conflicts of law, or the application of foreign law. In *Mann Smith*, CVR made the exact same argument regarding choice of law by way of Motion to Determine Applicable State

4

Law and Motion for Summary Judgment. The summary judgment on choice of law was DENIED.

## IV. APPLICABLE STATE LAW

11. CVR Defendants repeatedly state that the law of Kansas applies because the explosion occurred there. While they give lip service to the Restatement factors, ultimately, that is the extent of the CVR analysis. CVR Defendants had the same exact argument in the *Mann Smith* case.

12. However, the doctrine of lex loci delicti has long been overruled in this state by the Texas Supreme Court. *Gutierrez v. Collins*, 583 S. W.2d 312 (Tex. 1979). The former lex loci doctrine stated the situs of the injury controlled for purposes of conflicts of law analysis.

13. Today, the proper analysis is the "most significant relationship" test set forth in the RESTATEMENT (SECOND OF CONFLICT OF LAWS § 145. *Hughes Wood Products, Inc. v. Wagner*, 18 S. W.3d 202, 205 (Tex. 2000).

14. The general factors relevant to analysis are:

(a) The needs of the interstate and international systems;

(b) The relevant policies of the forum;

(c) The relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;

(d) The protection of justified expectations;

(e) The basic policies underlying the particular field of law;

(f) Certainty, predictability and uniformity of result; and

(g) Ease in the determination and application of the law to be applied.

15. Factors that should be considered by Defendants but blatantly ignored in the choice of law analysis, include:

- The principal place of business of the CVR Defendants is Sugar Land, Fort Bend County, Texas;

- The headquarters and general offices of the executive of the CVR Defendants is Sugar Land, Fort Bend County, Texas;

- The Board of Directors of the CVR Defendants reside and meet in Sugar Land, Fort Bend County, Texas;

- Decisions to operate CRRM were made in Sugar Land, Fort Bend County, Texas;

- Decisions regarding the operation, maintenance, financing and safety at CRRM were made in Sugar Land, Fort Bend County, Texas;

- The CVR Defendants invoke the laws of the State of Texas for its use and benefit.

- Texas, as the forum state, has a significant interest in protecting resident defendants such as CVR Defendants.

*Torrington Co. v. Stutzmen*, 46 S. W.3d 829, 849 (Tex. 2000).

## V. TEXAS IS A CONVENIENT FORUM FOR THESE TEXAS DEFENDANTS

**A. Introduction**

16. Defendants are CVR Energy, Inc. and CVR Refining, L.P., collectively referred to as "CVR". CVR owns two petroleum related refineries – one in Wynnewood, OK and the other in Colleyville, KS. Both have exploded.

17. The first explosion occurred on September 28, 2012 in Wynnewood, OK. Suit was filed against CVR in the 434th Judicial District Court of Fort Bend County, the Honorable Judge Shoemake presiding, under Cause No. 13-DCV-209679. Judge Shoemake, as previously mentioned, DENIED all summary judgment motions. The case has been defended by CVR for two and a half years, with staunch refusal to settle in mediation, in Fort Bend County. Coffeyville

is 108 miles from Wynnewood. At NO time has CVR EVER complained of inconvenience. CVR has AGREED to site evaluations, depositions in Oklahoma, all without complaint regarding convenience. CVR has requested a Fort Bend County jury to judge their conduct. CVR owns Wynnewood just as it owns Coffeyville. Both have exploded due to gross mismanagement by CVR. Both are within 100 miles of each other.

**B.    Public and Private Interest Factors**

18.    Again, CVR Energy, Inc. and CVR Refining, L.P. for purposes of the below discussion will be collectively referred to as "CVR" unless distinction is made.

19.    The primary place of business for CVR is Sugarland, Texas. (Exhibit A, C)

20.    CVR headquarters is Sugarland, Texas. (Exhibit B)

21.    CVR board of directors and all directors are located in Sugarland, Texas. (Exhibit C)

22.    CVR pays taxes to the state of Texas. (Exhibit C)

23.    CVR Refining –Kansas, pays NO taxes. Has no EIN number, Kansas has no states interest in CVR. (Exhibit D)

24.    Annual Shareholders Meetings are held in Sugarland, Texas. All shareholders, officers, directors, and executives were required to travel to Sugarland, Texas, the nerve center, on June 17, 2015. (Exhibit E)

25.    CVR in Sugarland, Texas is the nerve center for all of its companies by providing services from Sugarland to all of the CVR companies by way of a Shared Services Agreement. The Shared Services Agreement is an agreement whereby the Parent Corporation CVR Energy, Inc. loans personnel and services between the companies. It is best explained in the publicly filed *CVR Refining LP 10Q* at page 27 where the services and control of *day-to-day* operations are set forth. (See Exhibit F)

7

*Shared Services Agreement*

CVR Refining obtains certain management and other services from CVR Energy pursuant to a services agreement between the Partnership, CVR Refining GP and CVR Energy dated December 31, 2012, as amended. Under this agreement, the Partnership's general partner has engaged CVR Energy to conduct a substantial portion of its *day-to-day business operations*. CVR Energy provides CVR Refining with the following services under the agreement, among others:

- services from CVR Energy's employees in capacities equivalent to the capacities of corporate executive officers, except that those who serve in such capacities under the agreement shall serve the Partnership on a shared, part-time basis only, unless the Partnership and CVR Energy agree otherwise;

- administrative and professional services, including legal, accounting services, human resources, insurance, tax, credit, finance, government affairs and regulatory affairs;

- *management of the Partnership's property and property of its operating subsidiaries in the ordinary course of business;*

- recommendations on capital raising activities to the board of directors of the Partnership's general partner, including the issuance of debt or equity interests, the entry into credit facilities and other capital market transactions;

- managing or overseeing litigation and administrative or regulatory proceedings, establishing appropriate insurance policies for the Partnership and providing safety and environmental advice;

- recommending the payment of distributions; and

- managing or providing advice for other projects, including acquisitions, as may be agreed by CVR Energy and the Partnership's general partner from time to time.

## C. WITNESSES

26. The pleadings of Plaintiffs Donald R. Collier, Jennifer J. Collier, Dale A. Neimeyer, and Wendy Neimeyer allege corporate control by CVR of its wholly-owned subsidiaries. As a result

of such control, CVR is liable and the dominant parent company for the actions of its subsidiary employer. (Exhibit G)

27.   Accordingly, the primary discovery is against CVR – its policies, procedures, email, budgets, orders, Purchase orders, documents, which CVR controls... all of which was learned during the discovery of the company's case pending in the 434th. Assistance of the Texas courts will be needed to compel these Texas Defendants to produce documents. No showing has been made that Kansas courts can compel documents from Texas defendants. No showing has been made that Kansas can compel Texas witnesses to give up their emails.

28.   In light of previous discovery, only a Texas court will pry loose these documents from CVR – Texas based companies whose headquarters are just miles from this Fort Bend County courthouse.

9.   CVR has failed to mention any of its Sugarland witnesses except for Velasco, the current safety executive.

30.   In addition, others are perceived to be necessary.

a. Robert Haugen – Executive Vice President in charge of Refinery. Haugen is in charge of the day-to-day operation of the refineries. Haugen oversees how each plant is run and operates. (Deposition attached, Exhibit H)

b. Chris Swanberg –former Executive Vice President in charge of Safety. Safety Executive in charge at the time of the explosion.

c. Velasco - current Safety Executive.

d. Jay Finks – Mr. Finks explains how CVR controls all monies. The plants, including CRRM, have no control over capital accounts. All of the money is controlled by corporate CVR. (Deposition attached, Exhibit I)

9

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court enter an Order denying Defendants Motion to Dismiss and retain this Case on the Court's docket in the 268th Judicial District Court of Fort Bend County, Texas and further prays for such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**THE RIEBSCHLAGER LAW FIRM, PC**
801 Congress, Suite 250
Houston, TX   77002
Telephone:  (713) 980-5300
Facsimile (713) 583-5915
Email:  gary@riebschlagerlaw.com

*/s/Gary M. Riebschlager*
GARY M. RIEBSCHLAGER
Texas Bar No. 16902200

TATE MOERER & KING, LLP
RICHARD L. TATE
State Bar No. 19664460
Email: rltate@tate-law.com
KRISTIN REIS
State Bar No. 24060478
Email: kreis@tate-law.com
206 South 2nd Street
Richmond, Texas 77469
Telephone:    281-341-0077
Facsimile:     281-341-1003

**ATTORNEYS FOR PLAINTIFFS**
**DONNIE COLLIER AND JENNIFER COLLIER**
**DALE A. NIEMEYER AND WENDY NIEMEYER**

10

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served in accordance with Rule 21a of the Texas Rules of Civil Procedure on the 5th day of August, 2015, upon all of counsel of record as indicated below:

*Via Facsimile #(713) 222-0101*
Mr. Phillip D. Sharp
Martin, Disiere, Jefferson & Wisdom LLP
808 Travis, 20th Floor
Houston, TX 77002
Email: sharp@mdjwlaw.com

*Via Facsimile #( 913) 661-9863*
Lee M. Smithyman
Smithyman & Zakoura, Chartered
750 Commerce Plaza II
7400 West 110th Street
Overland Park, KS 66210-2362
Email: lee@smizak-law.com

*/s/Gary M. Riebschlager*
**GARY M. RIEBSCHLAGER**

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# Form 10-Q

(Mark One)

☑ QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the quarterly period ended September 30, 2014

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from        to        .

Commission file number: 001-33492

# CVR ENERGY, INC.

*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **61-1512186** |
| *(State or other jurisdiction of* | *(I.R.S. Employer* |
| *incorporation or organization)* | *Identification No.)* |
| | |
| **2277 Plaza Drive, Suite 500** | |
| **Sugar Land, Texas** | **77479** |
| *(Address of principal executive offices)* | *(Zip Code)* |

**(281) 207-3200**
*(Registrant's telephone number, including area code)*

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).'Yes ☑   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer ☑ | Accelerated filer ☐ | Non-accelerated filer ☐ | Smaller reporting company ☐ |
| | | (Do not check if smaller reporting company.) | |

Indicate by check mark whether the registrant is a shell company (as defined by Rule 12b-2 of the Exchange Act). Yes ☐   No ☑

There were 86,831,050 shares of the registrant's common stock outstanding at October 28, 2014.

EXHIBIT
A

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# Form 10-Q

(Mark One)

☑ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended September 30, 2014

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from      to      .
Commission file number: 001-35781

# CVR Refining, LP

*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **37-1702463** |
| *(State or other jurisdiction of Incorporation or organization)* | *(I.R.S. Employer Identification No.)* |

**2277 Plaza Drive, Suite 500**

| | |
|---|---|
| **Sugar Land, Texas** | **77479** |
| *(Address of principal executive offices)* | *(Zip Code)* |

**(281) 207-3200**
*(Registrant's telephone number, including area code)*

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑ No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☑ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer ☐ | Accelerated filer ☐ | Non-accelerated filer ☑ | Smaller reporting company ☐ |
| | | (Do not check if smaller reporting company.) | |

Indicate by check mark whether the registrant is a shell company (as defined by Rule 12b-2 of the Exchange Act). Yes ☐ No ☑

There were 147,600,000 common units outstanding at October 28, 2014.



**Investor Relations**
CVI $39.58

About CVR Energy

CVR Refining, LP

CVR Partners, LP

Community Involvement

Investor Relations

News Room

Careers

Contact Us

**Welcome to CVR Energy**

Headquartered in Sugar Land, Texas, CVR Energy is a diversified holding company primarily engaged in the petroleum refining and nitrogen fertilizer manufacturing industries through its holdings in two limited partnerships, CVR Refining, LP and CVR Partners, LP.

The CVR Energy portfolio of companies employs more than 1,300 employees and generated approximately $9.1 billion in net sales in 2014.

For more information on CVR Refining and CVR Partners, please visit www.CVRRefining.com and www.CVRPartners.com.

**WHAT'S NEW**

**CVR Energy, Inc.** (NYSE: CVI) reports 2015 second quarter results and announces a cash dividend of 50 cents. Please click here for more information.

---

Home | About CVR Energy | Investor Relations | Community Involvement | News Room | Careers
Contact Us | CVR Refining, LP | CVR Partners, LP | Privacy Policy | Legal Notice | Purchase Order Terms and Conditions

Copyright © 2015 CVR Energy, Inc. All rights reserved.

http://cvrenergy.com/



EXHIBIT

B



Investor Relations
CVI $39.58

## CVR Refining, LP

**About CVR En**
**CVR Refining, LP**
**CVR Partners, LP**
**Community Involvement**
**Investor Relations**
**News Room**
**Careers**
**Contact Us**
**Home**

### CVR Refining, LP

Headquartered in Sugar Land, Texas, CVR Refining, LP is an independent downstream energy limited partnership formed by CVR Energy, Inc., to own, operate and grow its refining and related logistics businesses.

CVR Refining's petroleum business includes a complex full coking, medium-sour crude oil refinery with a rated capacity of 115,000 barrels per calendar day operated by Coffeyville Resources Refining & Marketing in Coffeyville, Kansas, and a complex crude oil refinery with a rated capacity of 70,000 barrels per calendar day operated by Wynnewood Refining Company in Wynnewood, Oklahoma. CVR Refining's subsidiaries also operate approximately 336 miles of active owned and leased pipelines, approximately 150 crude oil transports, a network of strategically located crude oil gathering tank farms, and more than six million barrels of owned and leased crude oil storage capacity. Please click here to read more about CVR Refining's petroleum businesses.

CVR Refining, LP is traded on the New York Stock Exchange under the ticker symbol "CVRR." CVR Energy subsidiaries serve as the general partner of CVR Refining and own the majority of the common units representing limited partner interests of CVR Refining.

To learn more about CVR Refining, please visit www.CVRRefining.com.

Home | About CVR Energy | Investor Relations | Community Involvement | News Room | Careers
Contact Us | CVR Refining, LP | CVR Partners, LP | Privacy Policy | Legal Notice | Purchase Order Terms and Conditions

Copyright © 2015 CVR Energy, Inc. All rights reserved.



**Texas Franchise Tax Public Information Report**

TX2014    05-102
Ver. 5.0    (Rev.9-13/32)

*To be filed by Corporations, Limited Liability Companies (LLC) and Financial Institutions*
**This report MUST be signed and filed to satisfy franchise tax requirements**

■ Tcode  13196

| ■ Taxpayer number | ■ Report year | You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381. |
|---|---|---|
| 32050595902 | 2014 | |

| Taxpayer name | |
|---|---|
| CVR REFINING GP, LLC | [X] Check box if the mailing address has changed. |

| Mailing address | Secretary of State (SOS) file number or Comptroller file number |
|---|---|
| C/O TAX DEPARTMENT, 2277 PLAZA DRIVE, SUITE 500 | |

| City | State | ZIP Code | Plus 4 | |
|---|---|---|---|---|
| SUGAR LAND | TX | 77479 | | 801761114 |

☐ Check box if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office |
|---|
| 2277 PLAZA DRIVE, SUITE 500, SUGAR LAND, TX 77479 |

| Principal place of business |
|---|
| 2277 PLAZA DRIVE, SUITE 500, SUGAR LAND, TX 77479 |

*Please sign below!*

Officer, director and manager information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or managers change throughout the year.

3205059590214

**SECTION A**  Name, title and mailing address of each officer, director or manager.

| Name | Title | Director | Term expiration | m m d d y y |
|---|---|---|---|---|
| JOHN J. LIPINSKI | CEO & PRESIDENT | [X] YES | | |
| Mailing address 2277 PLAZA DRIVE, SUITE 500 | City SUGAR LAND | State TX | | ZIP Code 77479 |
| STANLEY A. RIEMANN | COO | [X] YES | | |
| Mailing address 2277 PLAZA DRIVE, SUITE 500 | City SUGAR LAND | State TX | | ZIP Code 77479 |
| SEE ATTACHED LISTING | | ☐ YES | | |
| Mailing address | City | State | | ZIP Code |

**SECTION B**  Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| N/A | | | |
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
| | | | |

**SECTION C**  Enter the information required for each corporation or LLC, if any, that owns an interest of 10 percent or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| CVR REFINING HOLDINGS, LLC | DE | | 100.00 |

| Registered agent and registered office currently on file *(see instructions if you need to make changes)* | ☐ Check box if you need forms to change the registered agent or registered office information. |
|---|---|
| Agent: CORPORATION SERVICE COMPANY | |

| Office: 211 E. 7TH STREET, SUITE 620 | City AUSTIN | State TX | ZIP Code 78701 |
|---|---|---|---|

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in the report who is an officer, director or manager and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ▶ | Title CFO/TREASURER | Date 5/14/14 | Area code and phone number (913) 982-0500 |
|---|---|---|---|

**Texas Comptroller Official Use Only**



| VE/DE ☐ | PIR IND ☐ |
|---|---|

**EXHIBIT C**

# TEXAS FRANCHISE TAX PUBLIC INFORMATION REPORT

CVR REFINING GP, LLC

## SECTION A.

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| SUSAN M. BALL | CFO/TREASURER | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| EDMUND S. GROSS | SECRETARY / SVP / GENERAL COUNSEL | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| ROBERT W. HAUGEN | EXECUTIVE VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| WYATT E. JERNIGAN | EXECUTIVE VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| DAVID L. LANDRETH | SENIOR VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| NATHAN L. POUNDSTONE | CAO/ASST. VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| MICHAEL R. BROOKS | CIO/VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| JOHN R. WALTER | VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| ANGELA J. DASBACH | VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|------|-------|----------|
| GINA BOWMAN | VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| CARL C. ICAHN | CHAIRMAN | X YES |
| MAILING ADDRESS | | |
| C/O CVR REFINING GP, LLC., 2277 PLAZA DRIVE, STE, 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| SUNGHWAN CHO | DIRECTOR | X YES |
| MAILING ADDRESS | | |
| C/O CVR REFINING GP, LLC., 2277 PLAZA DRIVE, STE, 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| ANDREW ROBERTO | DIRECTOR | X YES |
| MAILING ADDRESS | | |
| C/O CVR REFINING GP, LLC., 2277 PLAZA DRIVE, STE, 500, SUGAR LAND, TX 77479 | | ADDRESS?? |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| VINCENT J. INTRIERI | DIRECTOR | X YES |
| MAILING ADDRESS | | |
| C/O CVR REFINING GP, LLC., 2277 PLAZA DRIVE, STE, 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| SAMUEL MERKSAMER | DIRECTOR | X YES |
| MAILING ADDRESS | | |
| C/O CVR REFINING GP, LLC., 2277 PLAZA DRIVE, STE, 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| DANIEL A. NINIVAGGI | DIRECTOR | X YES |
| MAILING ADDRESS | | |
| C/O CVR REFINING GP, LLC., 2277 PLAZA DRIVE, STE, 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| KENNETH SHEA | DIRECTOR | X YES |
| MAILING ADDRESS | | |
| C/O CVR REFINING GP, LLC., 2277 PLAZA DRIVE, STE, 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| JON R. WHITNEY | DIRECTOR | X YES |
| MAILING ADDRESS | | |
| C/O CVR REFINING GP, LLC., 2277 PLAZA DRIVE, STE, 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| GLENN R. ZANDER | DIRECTOR | X YES |
| MAILING ADDRESS | | |
| C/O CVR REFINING GP, LLC., 2277 PLAZA DRIVE, STE, 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| KEITH D. OSBORN | EXECUTIVE VICE PRESIDENT | YES |
| MAILING ADDRESS | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| R. WILLIAM WUENSCHE | SENIOR VICE PRESIDENT | YES |
| MAILING ADDRESS | | |
| 2277 PLAZA DRIVE, STE. 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| PATRICK J. QUINN | SENIOR VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, SUITE 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| CARL FINDLEY | VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, SUITE 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| WES HARRIS | VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, SUITE 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| RHONDA SPEER | VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE 500, SUGAR LAND, TX 77479 | | |

| NAME | TITLE | DIRECTOR |
|---|---|---|
| PATRICK QUINN | SENIOR VICE PRESIDENT | YES |
| **MAILING ADDRESS** | | |
| 2277 PLAZA DRIVE, STE 500, SUGAR LAND, TX 77479 | | |

Form 301
(Revised 1/06)

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512/463-5709
Filing Fee: $750



**Application for
Registration of a
Foreign For-Profit
Corporation**

This space reserved for office use. **FILED**
In the Office of the
Secretary of State of Texas

**JUN 2 8 2007**

**Corporations Section**

1. The entity is a foreign for-profit corporation. The name of the entity is:

CVR Energy, Inc.

2A. The name of the corporation in its jurisdiction of formation does not contain the word "corporation," "company," "incorporated," or "limited" (or an abbreviation thereof). The name of the corporation with the word or abbreviation that it elects to add for use in Texas is:

2B. The corporation name is not available in Texas. The assumed name under which the corporation will qualify and transact business in Texas is:

3. Its federal employer identification number is:  61-1512186

☐ Federal employer identification number information is not available at this time.

4. It is incorporated under the laws of: (set forth state or foreign country) Delaware

and the date of its formation in that jurisdiction is:  September 25, 2006
                                                          mm/dd/yyyy

5. As of the date of filing, the undersigned certifies that the foreign corporation currently exists as a valid corporation under the laws of the jurisdiction of its formation.

6. The purpose or purposes of the corporation that it proposes to pursue in the transaction of business in Texas are set forth below. The corporation also certifies that it is authorized to pursue such stated purpose or purposes in the state or country under which it is incorporated.

Holding Company

7. The date on which the foreign entity intends to transact business in Texas, or the date on which the foreign entity first transacted business in Texas is: upon qualification
                                                                                        mm/dd/yyyy

8. The principal office address of the corporation is:

| 2277 Plaza Drive, Suite 500 | Sugar Land | TX | USA | 77479 |
|---|---|---|---|---|
| *Address* | *City* | *State* | *Country* | *Zip/Postal Code* |

Form 301                                    5

TXSUBOC - 11/08/2006 C T System Online

**RECEIVED**

**JUN 2 8 2007**

**Secretary of State**

☐ **9A.** The initial registered agent is an organization (cannot be entity named above) by the name of:

_____ C T Corporation System _____

**OR**

☐ **9B.** The initial registered agent is an individual resident of the state whose name is:

_____
*First Name*                          *M.I.*          *Last Name*                          *Suffix*

**9C.** The business address of the registered agent and the registered office address is:

350 N. St. Paul Street                              Dallas              TX            75201
_____
*Street Address*                      *City*                          *State*     *Zip Code*

**10.** The corporation hereby appoints the Secretary of State of Texas as its agent for service of process under the circumstances set forth in section 5.251 of the Texas Business Organizations Code.

**11.** The name and address of each person on the board of directors is:

| See attached rider for officers and directors | | | | | |
|---|---|---|---|---|---|
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| *Street or Mailing Address* | *City* | | *State* | *Country* | *Zip Code* |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| *Street or Mailing Address* | *City* | | *State* | *Country* | *Zip Code* |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| *Street or Mailing Address* | *City* | | *State* | *Country* | *Zip Code* |
| *First Name* | *M.I.* | *Last Name* | | | *Suffix* |
| *Street or Mailing Address* | *City* | | *State* | *Country* | *Zip Code* |

TXM1DOC - 123456789 C T System Online

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

A. ☒ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

_____

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: JUNE 27, 2007

UPS General Counsel
Signature and title of authorized person on behalf of the foreign entity

| | |
|---|---|
| Name: | John J. Lipinski, Chairman of the Board of Directors, Chief Executive Officer and President |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Stanley A. Riemann, Chief Operating Officer |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | James T. Rens, Chief Financial Officer and Treasurer |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Edmund S. Gross, Vice President, General Counsel and Secretary |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Robert W. Haugen, Executive Vice President, Refining Operations |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Kevan A. Vick, Executive Vice President, General Manager Nitrogen Fertilizer |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Christopher G. Swanberg, Vice President, Environmental, Health and Safety |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Wesley Clark, Director |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Scott Lebovitz, Director |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |

ftny03\william\701466.1

| | |
|---|---|
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Regis B. Lippert, Director |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | George E. Matelich, Director |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Stanley de J. Osborne, Director |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Kenneth A. Pontarelli, Director |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |
| | |
| Name: | Mark Tomkins, Director |
| Address: | c/o CVR Energy, Inc. |
| | 2277 Plaza Drive, Suite 500 |
| City, State, Zip: | Sugar Land, Texas 77479 |

ffny03\wrllltry\701466.1

| Form 306<br>(Revised 05/11)<br><br>Submit in duplicate to:<br>Secretary of State<br>P.O. Box 13697<br>Austin, TX 78711-3697<br>512 463-5555 ·<br>FAX: 512/463-5709<br>Filing Fee: $750 | Application for<br>Registration<br>of a Foreign Limited<br>Partnership · | This space reserved for office use.<br><br>FILED<br>In the Office of the<br>Secretary of State of Texas<br><br>··· APR 1 2 2013<br><br>Corporations Section |
|---|---|---|

1. The entity is a foreign limited partnership. The name of the entity is:

CVR Refining, LP

*Provide the full legal name of the entity as stated in the entity's formation document in its jurisdiction of formation.*

2A. The name of the entity in its jurisdiction of formation does not contain the word "limited partnership" or "limited" (or an abbreviation thereof). The name of the entity with the word or abbreviation that it elects to add for use in Texas is:

2B. The entity name is not available in Texas. The assumed name under which the entity will qualify and transact business in Texas is:

*The assumed name must include an acceptable organizational identifier or an accepted abbreviation of one of these terms.*

3. Its federal employer identification number is: 37-1702463

☐ Federal employer identification number information is not available at this time.

4. It is organized under the laws of: (set forth state or foreign country) Delaware
and the date of its formation in that jurisdiction is: 09/17/2012
    *mm/dd/yyyy*

5. As of the date of filing, the undersigned certifies that the foreign limited partnership currently exists as a valid limited partnership under the laws of the jurisdiction of its formation.

6. The date on which the foreign entity intends to transact business in Texas, or the date on which the foreign entity first transacted business in Texas is: 01/23/2013
    *mm/dd/yyyy    Late fees may apply (see instructions).*

7. The principal office address of the limited partnership is:

| 2277 Plaza Drive, Suite 500 | Sugar Land | TX | USA | 77479 |
|---|---|---|---|---|
| *Address* .. | *City* · | *State* | *Country* | *Zip/Postal Code* · |

Complete item 8A or 8B, but not both. Complete item 8C.

☒ 8A. The initial registered agent is an organization (cannot be entity named above) by the name of:

Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company '··

OR

☐ 8B. The initial registered agent is an individual resident of the state whose name is:

| *First Name* | *M.I.* | *Last Name* | *Suffix* · |
|---|---|---|---|

Form 306

6

8C. The business address of the registered agent and the registered office address is:

| 211 E. 7th Street, Suite 620 | Austin | TX | 78701-3218 |
|---|---|---|---|
| *Street Address* | *City* | *State* | *Zip Code* |

9. The entity hereby appoints the Secretary of State of Texas as its agent for service of process under the circumstances set forth in section 5.251 of the Texas Business Organizations Code.

10. Governing Persons: The name and address of each general partner is:

| NAME AND ADDRESS OF GENERAL PARTNER (Enter the name of either an individual or an organization, but not both.) | | | | |
|---|---|---|---|---|
| **IF INDIVIDUAL** | | | | |
| OR *First Name* | *M.I.* | *Last Name* | | *Suffix* |
| **IF ORGANIZATION** CVR Refining GP, LLC | | | | |
| *Organization Name* | | | | |
| 2277 Plaza Drive, Suite 500 | Sugar Land | TX | USA | 77479 |
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

| NAME AND ADDRESS OF GENERAL PARTNER (Enter the name of either an individual or an organization, but not both.) | | | | |
|---|---|---|---|---|
| **IF INDIVIDUAL** | | | | |
| OR *First Name* | *M.I.* | *Last Name* | | *Suffix* |
| **IF ORGANIZATION** | | | | |
| *Organization Name* | | | | |
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

| NAME AND ADDRESS OF GENERAL PARTNER (Enter the name of either an individual or an organization, but not both.) | | | | |
|---|---|---|---|---|
| **IF INDIVIDUAL** | | | | |
| OR *First Name* | *M.I.* | *Last Name* | | *Suffix* |
| **IF ORGANIZATION** | | | | |
| *Organization Name* | | | | |
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

## Supplemental Provisions/Information

Text Area: [The attached addendum, if any, is incorporated herein by reference.]

## Effectiveness of Filing (Select either A, B, or C.)

A. ☒ This document becomes effective when the document is filed by the secretary of state.

B. ☐ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _____

C. ☐ This document takes effect upon the occurrence of a future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

## Execution

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date:   3/ 15/2013 _____

_____
Signature of authorized person (see instructions)

CVR Refining, LP
By: CVR Refining GP, LLC
By: Edmund S. Gross, SVP, General Counsel and
Secretary
_____
Printed or typed name of authorized person.



## Acceptance of Appointment
## and
## Consent to Serve as Registered Agent
### §5.201(b) Business Organizations Code

The following form may be used when the person designated as registered agent in a registered agent filing is an individual.

---

### Acceptance of Appointment and Consent to Serve as Registered Agent

I acknowledge, accept and consent to my designation or appointment as registered agent in Texas for

*Name of represented entity*

I am a resident of the state and understand that it will be my responsibility to receive any process, notice, or demand that is served on me as the registered agent of the represented entity; to forward such to the represented entity; and to immediately notify the represented entity and submit a statement of resignation to the Secretary of State if I resign.

**x:** _____

| *Signature of registered agent* | *Printed name of registered agent* | *Date (mm/dd/yyyy)* |
| --- | --- | --- |

---

The following form may be used when the person designated as registered agent in a registered agent filing is an organization.

---

### Acceptance of Appointment and Consent to Serve as Registered Agent

I am authorized to act on behalf of  Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company

*Name of organization designated as registered agent*

The organization is registered or otherwise authorized to do business in Texas. The organization acknowledges, accepts and consents to its appointment or designation as registered agent in Texas for:

## CVR REFINING, LP

*Name of represented entity*

The organization takes responsibility to receive any process, notice, or demand that is served on the organization as the registered agent of the represented entity; to forward such to the represented entity; and to immediately notify the represented entity and submit a statement of resignation to the Secretary of State if the organization resigns.

Brian Courtney,
Asst. Vice President          **04/12/2013**

**x: By:** _____

| *Signature of person authorized to act on behalf of organization* | *Printed name of authorized person* | *Date (mm/dd/yyyy)* |
| --- | --- | --- |

Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company

---

# Limited Partnership Annual Report



1. Partnership Name: CVR REFINING, LP
2. Business Entity ID No.: 4708566
3. Tax Closing Date: December 2014
4. State of Organization: DE
5. Official Mailing Address:
   TAX DIRECTOR, 10 E. CAMBRIDGE CIRCLE DR. STE. 250, KANSAS CITY KS 66103

6. Partners who own 5% or more of capital (Kansas LPs only):

7. Does this partnership own or lease land in Kansas suitable for use in agriculture? No

Federal Employer Identification Number (FEIN): 0000000000

"I declare under penalty of perjury pursuant to the laws of the state of Kansas that the foregoing is true and correct."

Executed on March 20 2015

Signature of General Partner: Susan M. Ball

Signature of General Partner:

Electronic File Stamp
Information:

Filed

* Date: 03/20/2015
* Time: 03:04:17 PM

KANSAS SECRETARY OF STATE
NON-CERTIFIED WEB COPY
8/4/2015 6:59:56 PM



EXHIBIT
D

P1

# Limited Partnership Annual Report

1. Partnership Name: CVR REFINING, LP
2. Business Entity ID No.: 4708566
3. Tax Closing Date: December 2013
4. State of Organization: DE
5. Official Mailing Address:
   TAX DIRECTOR, 10 E. CAMBRIDGE CIRCLE DR. STE. 250, KANSAS CITY KS 66103

6. Partners who own 5% or more of capital (Kansas LPs only):

7. Does this partnership own or lease land in Kansas suitable for use in agriculture? No

Federal Employer Identification Number (FEIN): 0000000000

"I declare under penalty of perjury pursuant to the laws of the state of Kansas that the foregoing is true and correct."

Executed on March 31 2014

Signature of General Partner: Susan M. Ball

Contact phone number: 913-982-0500
E-mail: ebarry@cvrenergy.com

Signature of General Partner:

Contact phone number:
E-mail:

Electronic File Stamp Information:

Filed

* Date: 03/31/2014
* Time: 04:02:48 PM

KANSAS SECRETARY OF STATE
NON-CERTIFIED WEB COPY
8/4/2015 7:00:33 PM

P2

## Table of Contents



April 30, 2015

To the Stockholders of CVR Energy, Inc.:

You are cordially invited to attend the 2015 Annual Meeting of Stockholders of CVR Energy, Inc., on June 17, 2015 at 10:00 a.m. (Central Time) at 2245 Texas Drive, Suite 300, Sugar Land, Texas 77479.

At the Annual Meeting, we will ask you to (1) elect nine directors, (2) ratify the appointment of Grant Thornton LLP, an independent registered public accounting firm, as our independent auditors for the fiscal year ending December 31, 2015, (3) consider an advisory vote on the compensation of our named executive officers, and (4) take action upon any other business that may properly come before the Annual Meeting.

We have elected to take advantage of the rules of the U.S. Securities and Exchange Commission that allow us to furnish our proxy materials over the Internet. As a result, we are mailing a Notice of Internet Availability of Proxy Materials (the "Notice"), rather than a full paper set of the proxy materials, unless you previously requested to receive printed copies. The Notice contains details regarding the date, time and location of the meeting and the business to be conducted, as well as instructions on how to access our proxy materials on the Internet and instructions on how to obtain a paper copy of the proxy materials. This process will substantially reduce the costs associated with printing and distributing our proxy materials.

Whether or not you are able to attend, it is important that your shares be represented at the meeting. You can vote your proxy by telephone by following the instructions on the Notice. Alternatively, you may complete, sign, date and return the proxy card included in our proxy materials at your earliest convenience. If you attend the meeting, you may revoke your proxy, if you wish, and vote personally.

As the representation of stockholders at the meeting is very important, we thank you in advance for your participation.

Sincerely yours,

John J. Lipinski
Chief Executive Officer and President

EXHIBIT

E

Table of Contents

**CVR ENERGY, INC.**
2277 Plaza Drive, Suite 500
Sugar Land, Texas 77479
(281) 207-3200
www.cvrenergy.com

## NOTICE OF 2015 ANNUAL MEETING OF STOCKHOLDERS

NOTICE IS HEREBY GIVEN that the 2015 Annual Meeting (the "Annual Meeting") of Stockholders of CVR Energy, Inc. ("CVR Energy") will be held on June 17, 2015 at 10:00 a.m. (Central Time), at 2245 Texas Drive, Suite 300, Sugar Land, Texas 77479, to consider and vote upon the following matters:

1. Election of nine directors, each to serve a one-year term expiring upon the 2016 Annual Meeting of Stockholders or until his successor has been duly elected and qualified;

2. A proposal to ratify the Audit Committee's selection of Grant Thornton LLP as CVR Energy's independent registered public accounting firm for the fiscal year ending December 31, 2015, which we refer to as the "auditor ratification proposal";

3. A non-binding proposal to approve, on an advisory basis, the compensation of CVR Energy's named executive officers, which we refer to as the "say-on-pay proposal"; and

4. Transaction of such other business as may properly come before the meeting or any adjournments or postponements thereof.

Only stockholders of record as of the close of business on April 20, 2015 will be entitled to notice of, and to vote at, the Annual Meeting and any adjournments or postponements thereof. A list of stockholders entitled to vote at the meeting will be available for inspection during normal business hours beginning June 5, 2015 at CVR Energy's offices at 2277 Plaza Drive, Suite 500, Sugar Land, Texas 77479. You can vote your proxy by telephone by following the instructions on the Notice. Alternatively, you may complete, sign, date and return the proxy card included in our proxy materials at your earliest convenience. If you attend the meeting in person, you may vote your shares of common stock at the meeting, even if you have previously sent in your proxy.

**YOUR VOTE IS VERY IMPORTANT. EVEN IF YOU PLAN TO ATTEND THE ANNUAL MEETING, WE REQUEST THAT YOU READ THE PROXY STATEMENT AND VOTE EITHER (I) BY TELEPHONE BY FOLLOWING THE INSTRUCTIONS PROVIDED ON THE NOTICE OR (II) BY SIGNING, DATING AND RETURNING THE PROXY CARD INCLUDED IN OUR PROXY MATERIALS.**

### IMPORTANT INFORMATION REGARDING THE AVAILABILITY OF PROXY MATERIALS

Our Proxy Statement and the CVR Energy 2014 Annual Report (our "Annual Report"), which includes our Annual Report on Form 10-K for the year ended December 31, 2014 and financial statements, are available at http://annualreport.cvrenergy.com.

By Order of the Board of Directors,

John R. Walter
Senior Vice President, General Counsel
and Secretary

Sugar Land, Texas
April 30, 2015

**If you vote by telephone, you do not need to return your proxy card.**

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# Form 10-Q

(Mark One)

☑ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended September 30, 2014

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from            to            .

Commission file number: 001-35781

# CVR Refining, LP
*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **37-1702463** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |

**2277 Plaza Drive, Suite 500**

| | |
|---|---|
| **Sugar Land, Texas** | **77479** |
| *(Address of principal executive offices)* | *(Zip Code)* |

**(281) 207-3200**
*(Registrant's telephone number, including area code)*

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☑   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer ☐ | Accelerated filer ☐ | Non-accelerated filer ☑ | Smaller reporting company ☐ |
| | | (Do not check if smaller reporting company.) | |

Indicate by check mark whether the registrant is a shell company (as defined by Rule 12b-2 of the Exchange Act). Yes ☐   No ☑

There were 147,600,000 common units outstanding at October 28, 2014.

EXHIBIT
tabbies*
F

**CVR REFINING, LP AND SUBSIDIARIES**
**NOTES TO THE CONDENSED CONSOLIDATED FINANCIAL STATEMENTS (Continued)**
**September 30, 2014**
**(unaudited)**

The price CRNF pays pursuant to the pet coke supply agreement is based on the lesser of a pet coke price derived from the price received for urea ammonium nitrate ("UAN"), or the UAN-based price, and a pet coke price index. The UAN-based price begins with a pet coke price of $25 per ton based on a price per ton for UAN (exclusive of transportation cost), or netback price, of $205 per ton, and adjusts up or down $0.50 per ton for every $1.00 change in the netback price. The UAN-based price has a ceiling of $40 per ton and a floor of $5 per ton.

CRNF pays any taxes associated with the sale, purchase, transportation, delivery, storage or consumption of the pet coke. Amounts payable under the feedstock and shared services agreements can be offset with any amount receivable for pet coke.

The agreement has an initial term of 20 years and will be automatically extended for successive five year renewal periods. Either party may terminate the agreement by giving notice no later than three years prior to a renewal date. The agreement is also terminable by mutual consent of the parties or if a party breaches the agreement and does not cure within applicable cure periods. Additionally, the agreement may be terminated in some circumstances if substantially all of the operations at the nitrogen fertilizer plant or the Coffeyville, Kansas refinery are permanently terminated, or if either party is subject to a bankruptcy proceeding or otherwise becomes insolvent.

Net sales associated with the transfer of pet coke from CRRM to CRNF were approximately $1.9 million and $1.7 million for the three months ended September 30, 2014 and 2013, respectively. Net sales associated with the transfer of pet coke from CRRM to CRNF were approximately $6.5 million and $7.0 million for the nine months ended September 30, 2014 and 2013, respectively. Receivables of approximately $0.1 million and $0.6 million related to the coke supply agreement were included in accounts receivable on the Condensed Consolidated Balance Sheets at September 30, 2014 and December 31, 2013, respectively.

*Environmental Agreement*

CRRM entered into an environmental agreement with CRNF which provides for certain indemnification and access rights in connection with environmental matters affecting the Coffeyville, Kansas refinery and the nitrogen fertilizer plant. Generally, both CRRM and CRNF have agreed to indemnify and defend each other and each other's affiliates against liabilities associated with certain hazardous materials and violations of environmental laws that are a result of or caused by the indemnifying party's actions or business operations. This obligation extends to indemnification for liabilities arising out of off-site disposal of certain hazardous materials. Indemnification obligations of the parties will be reduced by applicable amounts recovered by an indemnified party from third parties or from insurance coverage.

The agreement provides for indemnification in the case of contamination or releases of hazardous materials that were present but unknown at the time the agreement was entered into to the extent such contamination or releases were identified in reasonable detail through October 2012. The agreement further provides for indemnification in the case of contamination or releases which occur subsequent to the execution of the agreement.

The term of the agreement is for at least 20 years, or for so long as the feedstock and shared services agreement is in force, whichever is longer.

*Services Agreement*

CVR Refining obtains certain management and other services from CVR Energy pursuant to a services agreement between the Partnership, CVR Refining GP and CVR Energy dated December 31, 2012, as amended. Under this agreement, the Partnership's general partner has engaged CVR Energy to conduct a substantial portion of its day-to-day business operations. CVR Energy provides CVR Refining with the following services under the agreement, among others:

- services from CVR Energy's employees in capacities equivalent to the capacities of corporate executive officers, except that those who serve in such capacities under the agreement shall serve the Partnership on a shared, part-time basis only, unless the Partnership and CVR Energy agree otherwise;

- administrative and professional services, including legal, accounting services, human resources, insurance, tax, credit, finance, government affairs and regulatory affairs;

27

**CVR REFINING, LP AND SUBSIDIARIES**
**NOTES TO THE CONDENSED CONSOLIDATED FINANCIAL STATEMENTS (Continued)**
**September 30, 2014**
**(unaudited)**

- management of the Partnership's property and the property of its operating subsidiaries in the ordinary course of business;

- recommendations on capital raising activities to the board of directors of the Partnership's general partner, including the issuance of debt or equity interests, the entry into credit facilities and other capital market transactions;

- managing or overseeing litigation and administrative or regulatory proceedings, establishing appropriate insurance policies for the Partnership and providing safety and environmental advice;

- recommending the payment of distributions; and

- managing or providing advice for other projects, including acquisitions, as may be agreed by CVR Energy and the Partnership's general partner from time to time.

As payment for services provided under the agreement, the Partnership, its general partner or subsidiaries must pay CVR Energy (i) all costs incurred by CVR Energy or its affiliates in connection with the employment of its employees, other than administrative personnel, who provide the Partnership services under the agreement on a full-time basis, but excluding certain share-based compensation; (ii) a prorated share of costs incurred by CVR Energy or its affiliates in connection with the employment of its employees, including administrative personnel, who provide the Partnership services under the agreement on a part-time basis, but excluding certain share-based compensation, and such prorated share shall be determined by CVR Energy on a commercially reasonable basis, based on the percentage of total working time that such shared personnel are engaged in performing services for the Partnership; (iii) a prorated share of certain administrative costs, including office costs, services by outside vendors, other sales, general and administrative costs and depreciation and amortization; and (iv) various other administrative costs in accordance with the terms of the agreement, including travel, insurance, legal and audit services, government and public relations and bank charges.

Either CVR Energy or the Partnership's general partner may temporarily or permanently exclude any particular service from the scope of the agreement upon 180 days' notice. Either CVR Energy or the Partnership's general partner may terminate the agreement upon at least 180 days' notice, but not more than one year's notice. Furthermore, the Partnership's general partner may terminate the agreement immediately if CVR Energy becomes bankrupt or dissolves or commences liquidation or winding-up procedures.

In order to facilitate the carrying out of services under the agreement, CVR Refining and CVR Energy have granted one another certain royalty-free, non-exclusive and non-transferable rights to use one another's intellectual property under certain circumstances.

The agreement also contains an indemnity provision whereby the Partnership, its general partner, and its subsidiaries, as indemnifying parties, agree to indemnify CVR Energy and its affiliates (other than the indemnifying parties themselves) against losses and liabilities incurred in connection with the performance of services under the agreement or any breach of the agreement, unless such losses or liabilities arise from a breach of the agreement by CVR Energy or other misconduct on its part, as provided in the agreement. The agreement contains a provision stating that CVR Energy is an independent contractor under the agreement and nothing in the agreement may be construed to impose an implied or express fiduciary duty owed by CVR Energy, on the one hand, to the recipients of services under the agreement, on the other hand. The agreement prohibits recovery of lost profits or revenue, or special, incidental, exemplary, punitive or consequential damages from CVR Energy or certain affiliates, except in cases of gross negligence, willful misconduct, bad faith, reckless disregard in performance of services under the agreement, or fraudulent or dishonest acts.

28

Filed
1/12/2015 11:34:37 AM
Annie Rebecca Elliott
District Clerk
Fort Bend County, Texas
Sonny Garcia

CAUSE NO. **15-DCV-220330**

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NIEMEYER | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| v. | § § | FORT BEND COUNTY, TEXAS |
| CVR ENERGY, INC. and, CVR REFINING, LP. | § § § | Fort Bend County - 268th Judicial District Court |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE COURT:

COME NOW, Plaintiffs DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER and WENDY NIEMEYER complaining of and against CVR ENERGY, INC. and CVR REFINING, LP (hereinafter collectively referred to "CVR"); Defendants herein, and for cause of action, would respectfully show unto the Court as follows:

### I. DISCOVERY CONTROL PLAN

1. Plaintiffs intend to conduct discovery under Level 3 pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

### II. PARTIES

2. Plaintiff DONALD R. COLLIER, is an individual who resides in Independence, Kansas.

3. Plaintiffs JENNIFER J. COLLIER, is an individual who resides in Independence, Kansas.

4. Plaintiff DALE A. NIEMEYER, is an individual who resides in S. Coffeyville, Oklahoma.

5. Plaintiff WENDY NIEMEYER, is an individual who resides in S. Coffeyville, Oklahoma.


EXHIBIT
G

1

6.      Defendant CVR ENERGY, INC. (hereinafter referred to as "CVR") is a Delaware corporation with its principal place of business located in Fort Bend County, Texas. Defendant may be served with process by serving citation on its Registered Agent C. T. Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201.

7.      Defendant CVR Refining, LP (hereinafter referred to as "CVR Refining") is a Delaware corporation with its principal place of business located in Fort Bend County, Texas. Defendant may be served with process by serving citation on its Registered Agent CSC, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

## III. JURISDICTION AND VENUE

8.      Plaintiffs seek damages within the jurisdictional limits of this Court.

9.      This Court has personal jurisdiction over defendants because each of the Defendants has its principal place of business in Fort Bend County, Texas and all Defendants are engaged in foreseeable, intentional, continuous, and/or systematic contacts within Texas, so that there is both general and specific personal jurisdiction.

10.     Furthermore, exercising jurisdiction over those Defendants based outside of Texas will not offend the notions of fair play and substantial justice.

11.     Venue is proper in Fort Bend County, Texas pursuant to TRCP § 15.002(a) (3) because it is the county of the defendant's principal office in this state.

## IV. BACKGROUND AND FACTS

12.     Plaintiffs are employees of Defendant Coffeyville Resources Refining &Marketing, LLC (hereafter referred to as "CRRM"). CRRM is a wholly-owned subsidiary and controlled by Defendants CVR Refining LP, CVR Refining, LLC, and CVR Energy, Inc. (hereafter referred to as "CVR").

2

13. Plaintiffs, as employees of CRRM, worked at an oil refinery in Coffeyville, Kansas, hereafter referred to as the Coffeyville Refinery or the Refinery. The Coffeyville Refinery is owned and controlled by CVR.

14. On July 29, 2014, a critical leak occurred on a pump in the Isometric Unit of the Refinery. A huge, fiery explosion resulted, severely injuring Plaintiffs and causing the death of another employee, Greg Rigdon.

## V. CAUSE OF ACTION—NEGLIGENCE

### Relationship of CRRM and CVR

15. Plaintiffs incorporate, by reference to paragraphs two (2) through fifteen (15) herein, their previous allegations.

16. CRRM is a wholly-owned subsidiary of CVR Refining LP, and ultimately, up the corporate chain, a wholly-owned subsidiary of CVR Energy, LLC.

17. CVR Energy, Inc., and CVR Refining, LP ("CVR Refining") collectively own/control CRRM. CVR are parent companies of CRRM. The CVR companies are created as a vast web of corporate control and direction created for the sole purpose of maximizing profit, corporate greed and veiled legal attempts to protect themselves from their own negligence.

18. CVR controls CRRM in one or more of the following methods:

    a. CVR owns all or most of CRRM stock;

    b. CVR and CRRM have common directors and officers;

    c. CVR provides financing to CRRM;

    d. CVR subscribes to all of CRRM's stock;

    e. CRRM is undercapitalized without CVR;

    f. CVR refers to CRRM as its subsidiary, division or department;

3

g. CRRM's officers or directors follow direction from CVR; and

h. the legal formalities for keeping these entities (CVR and CRRM) separate and independent are observed.

CVR is the collective, dominant corporation over CRRM, their wholly-owned subsidiary and is therefore liable for the torts of its wholly-owned subsidiary.

19. On the occasion in question, CVR, by and through their officers, employees, agents and representatives, independently committed acts of omission and commission which collectively and severally constitute negligence that proximately caused the deaths of Plaintiffs' decedents and damages to Plaintiffs. CVR failed. CVR's failure is negligence as defined above.

## VI. <u>CAUSE OF ACTION—GROSS NEGLIGENCE</u>

20. Plaintiffs incorporate, by reference to paragraphs two (2) through nineteen (19) herein that additionally, Defendants' acts involved an extreme degree of risk to Donald R. Collier and Dale A. Niemeyer, considering the probability and magnitude of the potential harm to others, especially in light of certain facts which were known to Defendants before Donald R. Collier and Dale A. Niemeyer sustained severe and disabling injuries.

21. Defendants' acts and omissions are of such a character as to lead to the conclusion that they not only constitute negligence, but rise to the level of gross negligence/malice. Defendants acted with conscious indifference to the rights, safety, and welfare of Donald R. Collier and Dale A. Niemeyer, and proximately caused their injuries through the enumerated acts or omissions.

## VIII. CHOICE OF LAW – TEXAS

22. The corporate domicile of the CVR Defendants is Sugar Land, Texas. The acts of negligence and gross negligence of Defendants CVR occurred in Texas by and through its

4

corporate officers, directors and employees in Texas. Defendants CVR seek all benefits and protections of Texas law. Texas has a vested interest in the conduct of its corporate citizens.

## IX. DAMAGES

23. As a result of the Defendants' actions, each Plaintiff has been deprived of the care, maintenance, support, services, advice, counsel, and contributions of a pecuniary value, as well as companionship and society, including love and comfort as a result of the injuries of DONALD R. COLLIER and DALE A. NIEMEYER. Further, Plaintiffs have suffered pecuniary losses, in the past, have experienced and will continue to experience immense mental anguish, suffering and grief in the future. Plaintiffs seek all damages available for the injuries of DONALD R. COLLIER and DALE A. NIEMEYER.

24. The Defendants have been guilty of reckless disregard for the rights of others, have acted intentionally and with malice towards others and engaged in conduct life-threatening to humans. Plaintiffs are, therefore, entitled to an award of punitive damages.

## X. CONDITIONS PRECEDENT

25. All conditions precedent to Plaintiffs' right to recover herein and to Defendants' liability have been performed or have occurred.

## XI. JURY DEMAND

26. Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

## XII. REQUEST FOR DISCLOSURE

27. Plaintiffs request all information be provided pursuant to Texas Rule of Civil Procedure 194.2.

## XIII. CONCLUSION AND PRAYER

5

28.    WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, after trial on the merits, Plaintiffs obtain judgment against Defendants for the following:

 i. monetary relief over $1,000,000.00;

 j. pre-judgment and post-judgment interest thereon at the maximum legal rate;

 k. costs of Court; and

 l. such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

**THE RIEBSCHLAGER LAW FIRM, PC**
801 Congress, Suite 250
Houston, TX  77002
Telephone:  (281) 904-1404
Email:  gary@riebschlagerlaw.com


*/s/Gary M. Riebschlager*
GARY M. RIEBSCHLAGER
Texas Bar No. 16902200


TATE MOERER & KING, LLP
RICHARD L. TATE
State Bar No. 19664460
Email:  rltate@tate-law.com
KRISTIN REIS
State Bar No. 24060478
Email: kreis@tate-law.com
206 South 2nd Street
Richmond, Texas 77469
Telephone:    281-341-0077
Facsimile:     281-341-1003

**ATTORNEYS FOR PLAINTIFFS**
**DONNIE COLLIER AND JENNIFER COLLIER**
**DALE A. NIEMEYER AND WENDY NIEMEYER**

6

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. | § | IN THE DISTRICT COURT OF |
| COLLIER, DALE A. NIEMEYER, and | § | |
| WENDY NIEMEYER | § | |
| Plaintiffs, | § | |
| v. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| CVR ENERGY, INC. and, | § | |
| CVR REFINING, LP. | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
## TO DEFENDANTS CVR ENERGY, INC. AND CVR REFINING, LP

TO:  Defendant CVR ENERGY, INC., by and through its Registered Agent, C. T. Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX  77201

Defendant CVR REFINING, LP, by and through their Registered Agent, CSC, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, TX  78701

COME NOW, DONALD L. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NEIMEYER (hereafter collectively referred to as "Plaintiffs"), in the above entitled and numbered cause, and hereby pursuant to Rule 196 of the Texas Rules of Civil Procedure, serve the attached written requests for production on Defendants CVR ENERGY, INC. and CVR REFINING, LP, requesting that Defendants produce and permit the inspection and copying the documents or things requested below, within fifty (50) days after service of this request, at the office of the undersigned located at THE RIEBSCHLAGER LAW FIRM, PC, 801 Congress, Suite 250, Houston, Texas 77002, or at such other time and place as may mutually agreed upon.

Respectfully submitted,

THE RIEBSCHLAGER LAW FIRM, PC

*/s/Gary M. Riebschlager*
GARY M. RIEBSCHLAGER

1

Texas Bar No. 16902200
801 Congress, Suite 250
Houston, TX 77002
Telephone: (281) 904-1404
Email: gary@riebschlagerlaw.com


TATE MOERER & KING, LLP
RICHARD L. TATE
State Bar No. 19664460
Email: rltate@tate-law.com
KRISTIN REIS
State Bar No. 24060478
Email: kreis@tate-law.com
206 South 2nd Street
Richmond, Texas 77469
Telephone:    281-341-0077
Facsimile:    281-341-1003

**ATTORNEYS FOR PLAINTIFFS
DONNIE COLLIER AND JENNIFER COLLIER
DALE A. NIEMEYER AND WENDY NIEMEYER**

2

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions apply to the requests listed below:

1. "Plaintiffs" refer to the Plaintiffs named in this lawsuit unless specifically referred to otherwise.

2. "Defendant" refers to CVR ENERGY, INC.; and CVR REFINING, LP and its agents, representatives and employees (past or present) unless referred to otherwise.

3. "You," "your," or "yours" shall mean CVR ENERGY, INC.; and CVR REFINING, LP or your agent, contractor or designee

4. The term "and/or," "or," and "and" are used inclusively, not exclusively.

5. "Document(s)" shall mean all original or copies of communications reduced to tangible form, whether print or electronic format, in the possession, custody or control of the Defendant.

6. The term "communication(s)" shall mean all emails, letters, telegraphs, memoranda, including all reports of or references to telephone conversations, face-to-face conversations or other forms of oral or written communications, whether maintained as print or electronic format.

7. "Incident" or "Incident in Question" means the valve failure in the ISOM Unit occurring on or about July 29, 2014 causing the events and damages described in Plaintiffs' pleadings.

8. "Relevant Time Period" shall mean 5 years prior to the Incident, inclusive.

9. "OSHA" refers to Occupational Health & Safety Administration.

10. "EPA" shall mean the Environmental Protection Agency.

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
## TO CVR ENERGY, INC.; CVR REFINING, LP

If you claim any document(s) are privileged and not discoverable, please identify generally the document(s) withheld and the basis of privilege.

**REQUEST FOR PRODUCTION NO. 1:**
All documents evidencing statements made by witnesses pertaining to the Incident in question.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 2:**
All initial, preliminary, interim or final incident reports pertaining to the Incident in question including but not limited to those prepared for or by:

    a)    You;
    b)    OSHA;
    c)    any other government agency or department.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 3:**
All drafts of any accident/incident investigation reports pertaining to the Incident in question.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 4:**
All documents furnished to any governmental agency related to the Incident in question.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 5:**
All photographs or video recordings of or near the location of the Incident taken or obtained as a result of the Incident in question.

    **RESPONSE:**

4

**REQUEST FOR PRODUCTION NO. 6:**
All safety bulletins or memos issued or circulated pertaining to the Incident in question.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 7:**
All documents which identify any members of any incident investigation team pertaining to the Incident in question.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 8:**
All documents which identify any members of any incident investigation team pertaining to the Incident in question.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 9:**
All photographs or video recordings taken or recorded during any site inspection related to the Incident in Question.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 10:**
All safety manuals, user manuals, maintenance and repair manuals in your possession with regards to the ISOM Unit that forms the basis of this lawsuit.

    **RESPONSE:**


**REQUEST FOR PRODUCTION NO. 11:**
All documents, pertaining to the maintenance and repairs made, within the Relevant Time Period.to the ISOM Unit valve that failed causing the Incident in Question.

    **RESPONSE:**


5

**REQUEST FOR PRODUCTION NO. 12:**
All communications pertaining to the maintenance and repairs made, within the Relevant Time Period.to the ISOM Unit valve that failed causing the Incident in Question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:**
All OSHA reports and OSHA violations issued regarding your refinery in Coffeyville, Kansas within the Relevant Time Period

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**
All documents prepared and submitted by you to OSHA or any other governmental agency concerning your refinery in Coffeyville, Kansas regarding the Incident in Question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**
All documents prepared by you or any third party regarding the ISOM Unit valve failure regarding the Incident in Question.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:**
The Budget prepared by and for the Coffeyville plant, inclusive of the ISOM Unit, for the year 2014 and submitted to the Board of Directors of Coffeyville Refining and Marketing and/or its parents CVR Refining LLC or CVR Refining, LP.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**
The Budgets prepared by the Coffeyville plant for the Relevant Time Period.

**RESPONSE:**

6

**REQUEST FOR PRODUCTION NO. 18:**
The Capital Plan prepared by and for the Coffeyville plant, inclusive of the ISOM Unit, for the year 2014 and submitted to the Board of Directors of Coffeyville Refining and Marketing and/or its parents CVR Refining LLC or CVR Refining LP

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:**
All Capital Plans prepared by the Coffeyville plant for the Relevant Time Period.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 20:**
All communications between you and any agent, employee or representative of CVR Refining LLC and /or CVR Refining LP regarding the Budget of 2014.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 21:**
All communications between you and agent, employee, or representative of CVR Refining LLC and/or CVR Refining LP regarding the Capital Plan of 2014.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 22:**
All documents evidencing any actual maintenance upon the valve/pump from which product leaked causing the Incident in Question.

    **RESPONSE:**

**REQUEST FOR PRODUCTION NO. 23:**
All documents evidencing any planned maintenance upon the valve/pump from which product leaked causing the Incident in Question.

7

## REQUEST FOR PRODUCTION NO. 23:
All documents evidencing any actual maintenance upon the valve/pump from which product leaked causing the Incident in Question.

### RESPONSE:


## REQUEST FOR PRODUCTION NO. 2:
All documents evidencing any inspection of the valve/pump from which product leaked causing the Incident in Question during the Relevant Time Period.

### RESPONSE:

8

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NIEMEYER | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| v. | § § | FORT BEND COUNTY, TEXAS |
| CVR ENERGY, INC. and, CVR REFINING, LP. | § § § | |
| Defendants. | § | 268TH JUDICIAL DISTRICT |

## VERIFICATION

STATE OF TEXAS

}

COUNTY OF HARRIS

    BEFORE ME, the undersigned authority, appeared GARY M. RIEBSCHLAGER, known to me to be the person whose name is subscribed herein, being duly sworn, deposes and says that the pages attached hereto are true and correct excerpts of the deposition of ROBERT WESTGROVE HAUGEN, taken on January 19, 2015, in the above-styled matter.

_____
GARY M. RIEBSCHLAGER

    SUBSCRIBED AND SWORN TO before me, a notary public, by GARY M. RIEBSCHLAGER, on this ___5th___ day of ___August 2015___, 2015, to which witness my hand and seal of office.

_____
CECILIA GAITAN
Notary Public in and for the State of Texas

CECILIA GAITAN
Notary Public, State of Texas
My Commission Expires
December 05, 2017

COPY

CAUSE NO: 13-DCV-209679

| | | |
|---|---|---|
| LEEANNA MANN and KARI SMITH, | ) | IN THE DISTRICT COURT OF |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CVR Energy, INC.; | ) | FORT BEND COUNTY, TEXAS |
| CVR PARTNERS, LP; | ) | |
| CVR REFINING, LP; | ) | |
| GARY-WILLIAMS | ) | |
| ENERGY COMPANY, LLC; | ) | |
| and WYNNEWOOD | ) | |
| REFINING COMPANY, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | 434th JUDICIAL DISTRICT |

VIDEO DEPOSITION OF ROBERT WESTGROVE HAUGEN
TAKEN ON BEHALF OF THE PLAINTIFFS
IN OKLAHOMA CITY, OKLAHOMA
ON JANUARY 19, 2015

REPORTED BY: KATHY FOREMAN, CSR #190





EXHIBIT
H

A       Robert Haugen.

              (Plaintiff's Exhibit No. 1 marked

              for identification)

Q       I hand you what's marked as Exhibit No. 1, which is the Notice of Deposition of the Corporate Representative of CVR Energy, Inc. and CVR Refining, LP, the person with the most knowledge regarding due diligence of the purchase or acquisition of the Wynnewood Refining Company.

              Is that your understanding, sir?

A       Yes.

Q       As the -- I'm going to just use CVR as an acronym for CVR Energy and CVR Refining, LP. Is that okay with you?

A       Yes.

Q       Have you been designated by CVR as a person with -- most knowledgeable regarding that topic?

A       Yes.

Q       All right.  Where do you work, sir?

A       At CVR Energy's Sugar Land office.

Q       All right.  Where do you reside?

A       Houston, Texas.

Q       How long have you worked for CVR



Energy, Inc.?

A    Since June of 2005.

Q    Am I correct in assuming that you worked for CVR Energy, Inc.?

A    I worked for -- I'm an officer of CVR Energy, Incorporated.  I'm an officer of CVR Refining, LP, and I'm an officer of Wynnewood Refining Company, LLC., I believe.

I think I'm an officer of all of the companies in the refining side of the business.

Q    All right.  So that would make you an officer of CVR Energy, CVR Refining, Wynnewood Refining, LLC, Coffeyville Refining and Marketing, and then all of the other subsidiaries on the refining side?

A    Right.

Q    Okay.  What office do you hold, sir?

A    Executive Vice President of Refining Operations.

Q    How long have you held the office of Executive Vice President of Refining Operations for all of those companies?

A    I'd have to go back and look for each specific one.  Obviously when we purchased Wynnewood, I became an officer of that company --



responsibilities.

Q    Yes.

A    So currently I'm responsible for the day-to-day operations of the refineries. And I'll try to clarify that by excluding some responsibilities.

So the marketing group, the marketing and supply group do not report to me. Our economics and planning group is separate.

But if you look at the day-to-day refinery operations and maintenance personnel report to me. Our environmental group reports to me. Our capital project group currently reports to me, and the pipeline operations group, similar to the refining group, so that we have a marketing and supply group on the pipeline operations that do not report to me but the operational portion of the pipelines and the truck operations on the pipeline side report to me.

Q    In terms of planning and budgeting currently, do you oversee or have reported to you the planning and budgeting requirements for each of the refineries?

A    Again, I'll try to -- it's somewhat



C E R T I F I C A T E

STATE OF OKLAHOMA    )
                     )  SS:
COUNTY OF CANADIAN   )


        I, KATHY FOREMAN, Certified Shorthand Reporter within and for the State of Oklahoma, do hereby certify that the above-named ROBERT WESTGROVE HAUGEN was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth, in the case aforesaid; that the above and foregoing deposition was by me taken in shorthand and thereafter transcribed; that the same was taken on January 19, 2015, in Oklahoma City, Oklahoma, pursuant to agreement and under the stipulations hereinbefore set out; and that I am not an attorney for nor relative of any of said parties or otherwise interested in the event of said action.

        IN WITNESS WHEREOF, I have hereunto set my hand and official seal this 1st day of February 2015.


                    _____
                    KATHY FOREMAN
                    State of Oklahoma CSR #190



## CAUSE NO. 15-DCV-220330

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. | § | IN THE DISTRICT COURT OF |
| COLLIER, DALE A. NIEMEYER, and | § | |
| WENDY NIEMEYER | § | |
| Plaintiffs, | § | |
| v. | § | FORT BEND COUNTY, TEXAS |
| | § | |
| CVR ENERGY, INC. and, | § | |
| CVR REFINING, LP. | § | |
| Defendants. | § | 268TH JUDICIAL DISTRICT |

## VERIFICATION

STATE   OF   TEXAS

}

COUNTY OF HARRIS

BEFORE ME, the undersigned authority, appeared GARY M. RIEBSCHLAGER, known to me to be the person whose name is subscribed herein, being duly sworn, deposes and says that the pages attached hereto are true and correct excerpts of the deposition of JAY FINKS, taken on December 10, 2014, in the above-styled matter.

_____
GARY M. RIEBSCHLAGER

SUBSCRIBED AND SWORN TO before me, a notary public, by GARY M. RIEBSCHLAGER, on this 6th day of August, 2015, to which witness my hand and seal of office.

_____
CECILIA GAITAN
Notary Public in and for the State of Texas

CECILIA GAITAN
Notary Public, State of Texas
My Commission Expires
December 05, 2017

P1

CAUSE NO. 13-DCV-209679

LEANNA MANN AND KARI )    IN THE DISTRICT COURT OF
SMITH, )
)
Plaintiffs, )
)
VS. )    FORT BEND COUNTY, TEXAS
)
CVR ENERGY, INC.; CVR )
PARTNERS, LP; CVR )
REFINING, LP; )
GARY-WILLIAMS ENERGY )
CORP.; WYNNEWOOD REFINING )
COMPANY, LLC; )
)
Defendants. )    434TH JUDICIAL DISTRICT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF
JAY M. FINKS
DECEMBER 10, 2014
Volume 1 of 1

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF JAY M. FINKS, produced as
a witness, duly sworn by me at the instance of the
PLAINTIFF, was taken in the above-styled and numbered
cause on the 10TH of DECEMBER, 2014, from 10:03 A.M. to
1:08 P.M., before PENNY L. PABITZKY, CSR, RPR, in and
for the State of Texas, reported by stenographic method,
at the offices of Martin, Disiere, Jefferson & Wisdom,
LLP, 808 Travis, 20th Floor, Houston, Texas, pursuant to
the Texas Rules of Civil Procedure and the provisions
stated on the record or attached hereto.

\*\*\*\*\*

MAGNA LEGAL SERVICES
866-626-6221
www.MagnaLS.com





EXHIBIT
I

APPEARANCES

FOR THE PLAINTIFFS:
MR. GARY M. RIEBSCHLAGER
Riebschlager Law Firm
801 Congress
Suite 250
Houston, Texas 77002
713-980-5300
gary@riebschlagerlaw.com
and
MR. MYRON PAPADAKIS
Brent Coon & Associates
300 Fannin
Suite 200
Houston, Texas 77002
713-225-1682
pappy@bcoonlaw.com

FOR THE DEFENDANTS:

MR. PHILLIP D. SHARP
Martin Disiere Jefferson & Wisdom, LLP
808 Travis
20th Floor
Houston, Texas 77002
713-632-1700
sharp@mdjwlaw.com

and

MR. LEE M. SMITHYMAN
Smithyman & Zakoura
750 Commerce Plaza II
7400 West 110th Street
Overland Park, Kansas 66210-2362
913-661-9800
lee@smizak.com

INDEX

PAGE

Appearances . . . . . . . . . . . 2
Stipulations . . . . . . . . 4
JAY M. FINKS
    Examination by Mr. Riebschlager . . . . . 5

Signature and Changes . . . . . . . . 94
Reporter's Certificate . . . . . . . . 96

CERTIFIED QUESTIONS

PAGE/LINE NUMBER    QUESTION BY

(No questions were certified.)

REQUESTED INFORMATION

PAGE/LINE NUMBER    DESCRIPTION

(No additional information was requested.)

EXHIBITS

NO.    DESCRIPTION    PAGE

1    List of Subsidiaries of CVR Energy, Inc.    9

2    United States Securities and Exchange    38
     Commission, Form 10-Q, CVR Refining, LP
3    Securities and Exchange Commission,    74
     Amendment No. 4 to FORM S-4, Registration
     Statement under the Securities Act of
     1933, CVR Refining, LLC, coffeyville
     Finance Inc., (as Issuers), CVR Refining,
     LP, (as Parent Guarantor)

4    Services Agreement, dated 12-31-12    50

APPEARANCES

ALSO PRESENT:
    Mr. Edmund Gross
    Ms. Penny L. Pabitzky, RPR
    California CSR 13235 - Expires 07/31/15
    Texas CSR 5040 - Expires 12/31/15
    Texas Firm Registration No.: 633
    Magna Legal Services
    215-207-9460

PROCEEDINGS

THE REPORTER: We are on the record at 10:03 a.m., December 10th, 2014, in the LeeAnna Mann vs. CVR Energy, et al.

This is the deposition of Jay Finks.

Stipulations, please?

MR. RIEBSCHLAGER: By the Texas Rules of Civil Procedure.

MR. SMITHYMAN: That's where it's appropriate.

(Witness sworn.)

JAY M. FINKS,

having been first duly sworn, testified as follows:

EXAMINATION

BY MR. RIEBSCHLAGER:

Q. Good morning, sir. Can you tell the Court and jury your name, please?

A. Jay Finks.

Q. And where do you reside, sir?

A. Kansas City.

Q. For whom do you work?

A. CVR Energy.

Q. Energy?

A. Yes.

Q. How long have you worked for CVR Energy?



A. Approximately six years.

Q. Do you recall the year that you started with them?

A. Yes. 2008. March.

Q. Are you working pursuant to an employment agreement?

A. No.

Q. Are you an officer or -- are you an officer of CVR Energy?

A. No.

Q. Are you a director of CVR Energy?

A. Director as in director of investor relations.

Q. Okay. Do you sit on the board of directors of CVR Energy?

A. No.

Q. All right. What titles -- job titles do you hold at CVR Energy?

A. Director of investor relations.

Q. What are your job duties as director of investor relations?

A. I manage the treasury and credit departments as well as the investor relations pertaining to the CVR Refining entity as well as CVR Energy.

Q. Do you have a staff?

A. Yes,

Q. How many?

A. Nine.

Q. In terms of investor relations, does your staff handle queries from investors, stock investors in the Refining entities and/or CVR Energy?

A. Yes, I do.

Q. Does it monitor stock prices, et cetera?

A. Yes.

Q. What other specific job duties do you do on a day-to-day basis?

A. Within -- I'll speak to the treasury department specifically. In the treasury department, we manage cash amongst all entities across -- the three public entities: CVR Energy, CVR Refining, and CVR Partners. On the credit side, we -- we look at the creditworthiness of all of our customers to which we do sales, both on the refining and on the fertilizer businesses.

In addition, at the treasury, we -- we manage and administer the credit facilities for all of our public companies.

Q. All right. So, you handle all cash?

A. Uh-huh.

Q. For all of the entities pertaining to each of the publicly held companies?

A. That's correct.

Q. And the publicly-held companies are CVR Energy, correct?

A. Yes.

Q. CVR Partners, LP?

A. Correct.

Q. And CVR Refining. LP, correct?

A. Correct.

Q. Now, underneath each one of those entities, there are various companies, correct?

A. Yes.

Q. Do you handle the cash for each one of the wholly-owned or owned subsidiaries for each one of the public entities just named?

A. Yes.

Q. On the refining side, which would be -- I'm talking about refining -- CVR Refining, LP. Does your department handle all cash transactions for CVR Refining, LP?

A. We manage the bank accounts pertaining to those entities.

Q. Do you manage the bank accounts for its general partner, CVR -- CVR Refining Holdings?

A. Yes.

Q. So, that would actually be the owner of the GP.

The CVR Refining, GP, is the general partner for Refining, LP, correct?

A. Correct.

Q. Do you -- do you handle the bank accounts for CVR Refining, GP?

A. We do.

Q. Do you -- do you handle the bank accounts for its owner, CVR Refining Holdings?

A. Yes.

Q. Do you handle the bank accounts for CVR Refining, LLC?

A. Yes.

Q. Do you handle all the bank accounts for Wynnewood Energy Company, LLC?

A. Yes.

Q. Do you handle all the bank accounts for Wynnewood Refining Company?

A. Yes.

Q. Do you handle all the bank accounts for Coffeyville Refining & Marketing, LLC?

A. Yes.

Q. Do you handle all the bank accounts for crude and transportation and so-and-so, LLC?

A. Correct.

(Marked Exhibit Nos. 1 through 4.)



Q. (BY MR. RIEBSCHLAGER) All right. I'll hand you what's marked as Exhibit No. 1.

A. Yes.

Q. It appears to be a list of subsidiaries that I obtained as an exhibit to a publicly filed document on the SEC website.

Does that appear to be accurate?

A. It appears to be.

Q. What subsidiaries does this -- does Exhibit No. 1 list?

A. Coffeyville Refining & Marketing Holdings, Inc.

Q. No. No. Of -- of which -- it's a bad question, and I apologize.

A. Okay.

Q. Of which -- of which parent does this Exhibit 1 list its subsidiaries?

A. Well, there are -- these are all legal -- legal entities. So, each would have a separate parent; and then they would have a separate parent. So, for instance, CVR Partners, LP, which is on the UAN side, which would have their CVR Partners, GP, which would be above it. So, each would have a separate parent; and then that parent would have another parent.

Q. All right. And am I correct in assuming that the document in front of you pertains to the refining

side, or does it pertain to Refining and the Partners side?

A. And Partners.

Q. Okay. So, Exhibit 1 then includes both Refining and Partners?

A. Which is the fertilizer, yeah -- yes.

Q. Okay. Now, you -- you read my mind.

Just so the jury understands, the way CVR Energy runs its business, it breaks out the nitrogen fertilizer business and -- by the CVR Partners side, correct?

And then it runs its refining business out of the CVR Refining, LP, side. Is that -- is that close?

A. Those are two separately public entities, yes.

Q. But my point is that the nitrogen fertilizer business is -- is operated through CVR Partners, LP.

A. Yes.

Q. And the refining petroleum business is operated through CVR Refining, LP.

A. Yes.

Q. All right. And then profits, losses, and funds, they funnel up through to CVR Energy.

A. They are consolidated up into CVR Energy.

Q. Okay. All right. Can you -- can you read into

the record, then, the -- the wholly-owned subsidiaries of both Refining and Partners as listed on Exhibit No. 1?

A. The -- the subsidiaries of CVR Refining and CVR Partners are listed here: but additionally you have Coffeyville Resources. LLC. which is not a part of CVR Refining and CVR Partners.

Q. Correct. So, other than Coffeyville Resources, LLC. the entities listed on Exhibit 1 are wholly-owned subsidiaries of either Refining or Partners?

A. No. You have -- there are entities above CVR Refining, LP, as well, listed on here.

Q. All right. Who are -- who are those?

A. CVR Refining Holdings.

Q. Okay. And that would be the owner of the CGP?

A. Correct.

Q. Anybody else?

A. At this time, that's all I can see.

Q. All right. Now, when you said earlier that you managed the bank accounts for those subsidiaries and the public entities, what does that mean?

A. For instance, we actually process the payments through our bank accounts. So, when accounts payable processes a payment to said vendor, we release the funds for those payments and then report ending balances for

those bank accounts.

Q. Okay. So, if Wynnewood, for instance, as a refinery would -- would issue a PO or something for -- to a vendor, tell me what the process is for payment of that PO.

A. If -- for payment of a purchase order, it would have to go through the appropriate approvals for the delegations.

Q. Tell me how that works.

A. If an invoice came in from said vendor, it would then have to be approved by, depending upon the amount and the delegation of -- of the person who ordered the PO would have the authority to authorize payment on that PO. When -- when the person has the correct authority, then that would be processed through accounts payable.

When accounts payable receives it, they verify that the person has the right authority. Well, once -- once that occurs, it's booked and then the payment of that invoice is then processed through the appropriate bank account --

Q. All right.

A. -- for that legal entity.

Q. Okay. So, once the purchase order has received the correct authority --

A. Uh-huh.



MAGNA
LEGAL SERVICES

Q. -- and that's a whole set of -- another set of other issues, I suppose -- that purchase order then goes to accounts payable.

A. Uh-huh.

Q. Is that a "yes"?

A. Yes.

Q. Okay. You have to give me a --

A. Yes.

Q. -- either a "yes" or "no" for the court reporter to take it down. I didn't go through these -- our ground rules, but you understand?

A. Yes.

Q. Now, the accounts payable you're talking about is at CVR Energy in Kansas.

A. The -- not specific for CVR Energy. Accounts payable is -- is a department that processes payables amongst a multitude of -- of entities. It's not just for CVR Energy legal entity. It could be for CVR Refining, LLC, as an example.

Q. Right. So -- so, Wynnewood would have its own accounts payable department?

A. No. They may have an individual at the plant that may enter or code invoices into the system, but we do have a centralized accounts payable group.

Q. So, Wynnewood, for -- for -- by way of example,

only, and there are other subsidiaries, does not pay its own accounts payable. In other words, it doesn't write its own check?

A. I do not know that for sure.

Q. But as far as you understand the -- the method, a Wynnewood clerk would enter it into the system and it would go into an accounts payable department and it would ultimately get to your department for payment.

A. For the release of funds.

Q. For the release --

A. My -- my department specifically releases the cash out of the bank account.

Q. And when you say "my department" --
   (Simultaneously speaking.)

A. Meaning -- to clarify, the treasury department.

Q. (BY MR. RIEBSCHLAGER) The treasury department at CVR Energy?

A. Yes.

Q. Now, in the centralized accounting system, are all of the companies in the CVR system hooked up to the same centralized accounting system?

A. We use Oracle.

Q. Okay. Okay. Thank you for telling me who you use, but are all the companies still hooked up to -- to Oracle?

A. I believe so.

Q. Okay. For instance, Wynnewood would be hooked up to it. Coffeyville Refining and -- and Coffeyville Crude --

A. Yes.

Q. -- would be hooked up to it?

A. Yes.

Q. And Crude Transportation would be hooked up to it, and other companies on that list would be hooked up to the Oracle system?

A. Yes.

Q. And just -- and just these other entities would have their own separate codes?

A. You would have separate business units, for instance, accounting stream codes that were -- the -- the invoice and/or expense would be coded to that specific entity and/or department.

Q. And getting back to your original testimony, the treasury department at CVR Energy handles the same scenario of payables for all the entities in the CVR Energy system?

A. We handle the cash movement across those entities. We don't handle the actual accounts payable function.

Q. I'm still a bit unclear about the accounts

payable function. Can you enlighten me further on that, please?

A. What specifically do you not --

Q. All right. Let's just -- again, the -- the bill comes in to -- from Wynnewood?

A. Uh-huh.

Q. And it needs to get paid. An electrical -- electrical contractor submits a bill.

A. Right.

Q. And it needs to get paid. Explain to me, the Court, and the jury how that bill ultimately gets paid through your department step by step.

A. When the -- when the invoice would be received, it would be coded by the appropriate accounting individual.

Q. At Wynnewood?

A. I don't specifically know because it depends upon where the invoices were to be received. For instance, if it was received somewhere else, it might be booked at a different location. So, once the invoice is then booked, as it gets processed through the -- through the system -- when I say "processed through the system," entered through accounts payable.

Then it is then scheduled for payment, whether it's ACH or wire or check. And once the ACH



and/or wire payments are scheduled to be released, the treasury department then confirms those payments with the invoice and scheduling via the batch -- wire batch system. Let me -- that was not correct.

The wire batch is not a system. It's a report. We confirm that with the invoice and what's entered into our banking system. Confirm that and then we release the funds.

Q. All right.

A. We do not review all checks that are cut.

Q. Okay. Is it safe to say, then, that CVR Energy would pay the bills of Wynnewood Refining Company?

A. No. Wynnewood Refining through CVR Refining pays the bills.

Q. Okay. Through CVR Refining.

A. Correct.

Q. All right. So -- okay. I got it now.

So, CVR Refining then -- or CVR Refining -- when you say "CVR Refining," are you talking about the LP or the LLC?

A. LLC.

Q. Okay. So, CVR Refining, LLC, pays the bills for Wynnewood Refining Company.

A. Not from a pure cash standpoint. It would be then out -- the best way to describe this, if -- if

you're looking at the entities, if Wynnewood Refining Company has an invoice into which it pays, it pays out of -- out of their account, which is funded by CVR Refining. So, it -- it's -- CVR Refining gets -- Coffeyville Resources -- you've got -- not Coffeyville Resources -- Coffeyville Refining & Marketing, et cetera. They all have their specific accounts; but it all gets paid out of Coffeyville -- or CVR Refining, LLC.

Q. CVR Refining, LLC.

A. Yes. I'm specifically speaking to the wires and ACHs that we're doing. Now, checks might be cut on different accounts.

Q. All right. And, then, that holds true for all the subs under Refining, LLC; Wynnewood --

A. Crude Transportation.

Q. -- Crude Transportation, Coffeyville, et cetera?

A. Yes.

Q. All right. Talk to me about capital expenditures, the big spends. Okay?

A. Uh-huh.

Q. Are those handled differently than day-to-day accounts payable?

A. "Handled differently" as to?

Q. Payment.

A. Payment? No. They would go through their same approval process based upon the delegation of authority of the individual who is, A, requesting the cap X to be spent; and once it gets through its -- the system, the approval of -- of moneys for cap X would be wired or ACH'd the same way that a regular invoice for printing would be.

Q. So -- so, the payment process under capital expenditure, or cap X as you've abbreviated, is -- is essentially the same. It ultimately comes out of the treasury department for CVR Energy. The only true difference would be the approval process for the capital expenditure.

A. Correct.

Q. Do you have any personal knowledge regarding the approval process for capital expenditures that pertain to, say, Wynnewood Refining Company?

A. I -- in general, I know the process. I don't know specifics.

Q. All right. Can you give me the -- generally, to the limits of your knowledge, the approval process for the approval of a capital expenditure for Wynnewood Refining Company?

A. Well, the approval process begins with the capital plan. So, every year we go through a budget

into which we have a plan; and -- and those capital plans are, therefore, approved.

Once that's -- once that's done, then, as capital -- capital expenditures become expensed and/or incurred, they go through approval processes similar to just like a regular invoice you would receive and based upon the delegations of authority to the correct -- the right individuals would have to approve those capital expenditures. And that would go through an AFE, which is "Authority for Expenditure," which is -- that's the difference than a regular invoice you might get from printing.

Q. I get that.

You say that a capital plan is prepared and approved each year?

A. Uh-huh.

Q. "Yes"?

A. Yes. I apologize.

Q. Now, is it prepared and approved each year for each company?

A. For -- Petroleum would have its own capital plan. Fertilizer would have its own capital plan.

Q. All right. Now, would it be -- when you say "petroleum," that would be CVR Refining, LP, would have --



A. Yes.

Q. -- its own capital plan, right?

A. That's right

Q. Not necessarily. Wynnewood would have a capital plan but --

A. Collectively they would

Q. So, collectively, because it's all done on a collective basis. Am I -- am I right?

A. Well, it's -- well, it's bottoms up. So, you would look at each individual plan and have a capital plan for each, and then you would have a total consolidated capital plan.

Q. And, so, they are consolidated just like you have consolidated statements and tax returns and whatnot?

A. Yes.

Q. Even your capital plans are consolidated into refining and consolidated into partners.

A. Correct.

Q. So, then, truly, then, Wynnewood or Coffeyville, Crude, et cetera, would have their own capital plan per year. Consolidate that up into Refining, LLC and then consolidate that into Refining, LP. Am I accurate?

A. Yes.

Q. And, so, there should be a written document for

a capital plan per year for -- for Wynnewood through LLC and then through CVR Refining, LP.

A. For a written plan?

Q. Yes.

A. There would be a -- there would be a plan for -- yeah. There would be -- I don't know about a specific written plan, but a -- a schedule of anticipated capital expenditures.

Q. Okay. Got it. Is that what a capital plan is, is a schedule of written -- I mean, a written schedule of anticipated expenditures?

A. Yes.

Q. Okay.

A. That's the way my capital plan is.

Q. All right. Okay. That's the -- that's the way you perceive it to be?

A. Yes.

Q. Have you seen those?

A. Have I seen a cap X plan? Yes.

Q. Yes. And -- and can you tell me what the title of the document is, for lack of a better word, so I can ask for it?

A. "Capital Plan." I mean that --

Q. Okay. So, if I ask for a capital plan, then CVR Refining, LP, will know what I'm asking for?

A. I believe so.

Q. Okay. Now, within the capital plan, you -- you also mentioned the term "budget."

A. Uh-huh.

Q. Yes?

A. Yes I apologize

Q. It's cool, man. I mean, you don't testify every day.

In terms of the budget that you mentioned in reference to a capital plan, what were you referring to?

A. The annual budget.

Q. Okay. Now, the same series of questions.

Is the annual budget prepared by -- on a consolidated basis by each wholly-owned subsidiary, which is then consolidated into CVR Refining, LLC, which is then consolidated into a comprehensive consolidated annual budget for CVR Refining, LP?

A. Yes. And then --

Q. Per year?

A. Per year, and then consolidated up into CVR Energy.

Q. And then consolidated into CVR Energy.

Now, is the -- is the budget document separate from the capital plan or is it subsumed within the capital plan?

A. It's a schedule of the annual budget.

Q. When you say "schedule of the annual budget" I -- I -- I --

A. Capital plan of the annual budget.

MR. SMITHYMAN: You've got to wait until he's done because she takes down what he says --

THE WITNESS: I thought he was done. I apologize.

MR. SMITHYMAN: Well, just take your time --

THE WITNESS: Okay.

MR. SMITHYMAN: -- and make sure you understand.

THE WITNESS: Yes, sir.

(Brief comments off the record.)

Q. (BY MR. RIEBSCHLAGER) Let me do a restart. So, the budget and you said schedule of annual plan, is a -- is a -- is the annual plan attached as a schedule to another document or is it a separate document called "annual plan"?

A. The budget would have -- would include a capital plan.

Q. So, the budget is -- is the primary document and the capital plan is subsumed within the budget.

A. Part of.

Q. Yes, it's a part of the budget.



And, once again, Wynnewood would submit a budget, Coffeyville would submit a budget, Crude, and all the subsidiaries would submit a budget for a year. correct?

A. I don't know the specifics on how they do -- let me ask something -- Are you referring to the capital --

Q. Plan --

A. -- plan?

Q. -- and budget.

A. Yes.

Q. All the same --

A. Yeah. Now, I -- I do not know specifically on the details of how they roll up into that. I was speaking to a capital -- overall capital plan that I -- that I know of and how that gets approved. How it rolls up into there, I am not completely aware of all the details.

Q. The one thing we're absolutely sure of is that per year there is a consolidated capital plan budget per year in -- in possession of CVR Refining. LP.

A. Yes.

Q. How it's -- how it's created and how it does its business, you're not precisely sure of all those details?

A. Correct.

A. It would go to -- of the LP

Q. So, then, the LP or --

A. I believe -- I believe. I -- actually, I -- I don't want to -- I don't want to misspeak -- I'm not sure exactly --

Q. Okay.

A. -- once it gets to there.

(Simultaneously speaking.)

Q. (BY MR. RIEBSCHLAGER) The LP -- the LP doesn't have a board. The GP does.

A. The GP, yeah. I apologize.

Q. So, the GP of the LP would approve the capital plan?

A. I am not sure.

Q. All right. Once the capital plan budget is approved by all the senior management and board of directors for CVR Refining, LP, does it -- where does it go next, if anywhere?

Does it go to CVR Energy for approval?

A. I -- I'm not sure.

Q. Who would know?

A. The -- the formal process?

Q. Uh-huh.

A. Ms. Ball.

Q. Okay. Is Ms. Ball a part of the approval

Q. All right. I can live with that.

Mr. Fink, are you familiar -- familiar with the approval process of capital plans and/or budgets by CVR Refining, LP?

A. In -- in general, yes.

Q. Can you tell me what your general knowledge is, then, of the approval of capital plans and budgets by CVR Refining, LP?

A. They are prepared annually. They are then presented to senior management, then presented to the board.

Q. Okay. When you say "senior management" for CVR Refining, LP, to whom are you referring?

A. The executive management team of CVR Refining.

Q. And whom would that be?

A. That would be -- I don't have -- I don't have the officers memorized.

Q. Okay. But it would be presented to the officers of Refining or the officers of the GP? Which one or both?

A. It would be -- without seeing a comparative list, I wouldn't be able to answer that specifically.

Q. Okay. And then once the senior management approves the budget, the capital plan of CVR Refining, LP, is submitted to the board of directors of whom?

process of the capital plan and/or budget for CVR Refining, LP?

A. When you say "the final approval," I -- she's part of the senior management team that would then review it.

Q. Okay. Because she's the chief financial officer?

A. That's correct.

Q. And because she is also treasurer of the company, she's also -- of CVR Refining, LP; CVR Energy; and a bunch of other companies, she's considered to be part of the senior management, correct?

A. Yes.

Q. So, she would have personal knowledge of the approval process of a capital plan and the budgets?

A. Yes.

Q. She would, likewise, have personal knowledge of the next level of approvals by CVR Energy, I'm assuming, of the -- of the capital plan and budgets for the same reasons because she's chief financial officer of CVR Energy and treasurer of CVR Energy.

Would you agree with that?

A. Yes. She's the CFO of CVR Energy and treasurer.

Q. Do you have any knowledge regarding what makes up the budget for -- what items make up the budget

for -- the annual budget for CVR Refining?

A. What specific items?

Q. What does -- what does CVR Refining, LP. attempt -- budget each year? I know it's a general question, but I -- I have to ask a general question.

A. The budget is the operating plan for the -- for the next year.

Q. It would. I assume, include allocation of costs of feedstock, for instance? In other words, cost of materials, cost of personnel; cost of leases; cost of --

A. The budget --

Q. -- the cost of operation. It would include costs and then it would include capital expenditures and then it also would include anticipated profits, et cetera.

Am I roughly correct?

A. The budget would include an operating plan which would include your operating rates for the year. It would include an estimated cost of crude, cost of products sold, labor costs, and then would include your anticipated earnings for the year.

Q. Does it include such items as maintenance, safety, and upkeep of the refineries?

A. Yes. The capital plan would include that.

Q. You said the capital plan would include

go through some of that in a minute.

You said you "assisted." Who did you assist?

A. The CFO.

Q. Susan Ball?

A. No.

Q. Mr. Morgan?

A. Yes.

Q. Was Susan Ball not involved in the acquisition of Wynnewood Refinery?

A. I can't speak on her behalf.

Q. Oh, okay. But you were working with Morgan and --

A. Yes.

Q. -- and pardon me. I have forgotten his first name.

A. Edward.

Q. Was he the chief financial officer at the time?

A. Yes.

Q. And Ms. Ball was an accounting officer, if I recall --

A. Yes.

Q. -- is that correct?

Is Mr. Morgan still with CVR Energy?

A. No.

maintenance, safety, and upkeep of the refinery?

A. Capital expenditures, yes.

Q. Do you have any personal knowledge of the acquisition of the Wynnewood Refinery in 2011?

A. Define "knowledge." I know of --

Q. Were you -- were you involved in the process of the acquisition of the Wynnewood Refinery?

A. Not in the detailed due diligence.

Q. All right. Were you involved in the financing of the -- of the Wynnewood Refinery?

A. I assisted, yes.

Q. In what fashion did you assist in the financing of the Wynnewood project?

A. Through the ABL at the time.

Q. Are you talking about the 150 million ABL? It's -- it's 150 million, right?

A. Well, we -- we increased it at the time of the --

Q. Purchase?

A. -- at the purchase.

Q. Okay. That was through Wells Fargo?

A. No.

Q. Who was it?

A. At the time, it was through Deutsche Bank.

Q. Oh, that's right. Deutsche Bank. Okay. We'll

Q. When did he leave?

Well, let me ask a better question.

Is Mr. Morgan employed by any entity in the CVR system?

A. No.

Q. Can you tell me why?

A. He -- no. He's not here.

Q. Okay. Well, did he -- did he resign or did he quit or he just walk off the job or --

A. He left to pursue other opportunities.

Q. Okay. Fine. That's all I need to know.

So, he's no longer employed with CVR Energy?

A. No, sir.

Q. Okay. Thank you very much.

Do you know when he resigned or left the firm?

A. I cannot recall a specific date, but it was the end -- he -- he left in June of '12, I believe.

Q. To your knowledge, did he leave under amicable terms?

A. I'm not aware of any of that.

Q. All right. Did Mr. Morgan work on the Wynnewood project during the entire acquisition period?

A. Yes.

Q. By -- by "acquisition period," what -- what do



## Page 98

lee@smizak.com

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

Certified to by me this 23RD day of DECEMBER, 2014.

_____
PENNY L. PABITZKY, RPR
California CSR 13235 - Expires 07/31/15
Texas CSR 5040 - Expires 12/31/15
Texas Firm Registration No.: 633
Magna Legal Services
1635 Market Street
Eighth Floor
Philadelphia, Pennsylvania 19103
215-207-9460

## Page 99

FURTHER CERTIFICATION UNDER RULE 203 TRCP

The original deposition was/was not returned to the deposition officer on _____;

If returned, the attached Changes and Signature page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to MR. GARY RIEBSCHLAGER, TBA NO. 16902200, Custodial Attorney;

That $_____ is the deposition officer's charges to the Plaintiff for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3, and that a copy of this certificate was served on all parties shown herein on _____ and filed with the Clerk.

Certified to by me this_____day of _____, 2014.

_____
PENNY L. PABITZKY, RPR
California CSR 13235 - Expires 07/31/15
Texas CSR 5040 - Expires 12/31/15
Texas Firm Registration No.: 633
Magna Legal Services
1635 Market Street
Eighth Floor
Philadelphia, Pennsylvania 19103
215-207-9460

26 (Pages 98 to 99)



# Tab 10

# CAUSE NO. 15-DCV-220330

| | | |
|---|---|---|
| DONALD R. COLLIER, JENNIFER J. COLLIER, DALE A. NIEMEYER, and WENDY NIEMEYER, | § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| vs. | § § | FORT BEND COUNTY, TEXAS |
| CVR ENERGY, INC. and CVR REFINING, LP, | § § § § | |
| Defendants. | § | 268th JUDICIAL DISTRICT |

## PLAINTIFFS' SUPPLEMENTAL PETITION

Comes now Plaintiffs Donald R. Collier, Jennifer J. Collier, Dale A. Niemeyer and Wendy Niemeyer in the above-entitled and numbered cause and files this their Supplemental Petition.

1.      In addition to the allegations previously pled, Plaintiffs allege that Defendants were independently negligent in the performance of their duties under the Management Services Agreement proximatley causing Plaintiffs damages and injuries as previously pled.

Respectfully submitted,

**The Riebschlager Law Firm, PC**

By:_/S/Richard L. Tate_____
GARY M. RIEBSCHLAGER
State Bar No. 16902200
Email: **gary@riebschlagerlaw.com**
801 Congress, Suite 250
Houston, TX 77002
Telephone: 281-904-1404

**TATE MOERER & KING, LLP**
Richard L. Tate
State Bar No. 19664460
Email: **rltate@tate-law.com**
206 South Second Street
Richmond, Texas  77469
Telephone:     (281) 341-0077
Facsimile:     (281) 341-1003

ATTORNEYS FOR PLAINTIFFS
DONALD COLLIER, JENNIFER COLLIER,
DALE A. NIEMEYER AND WENDY
NIEMEYER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served in accordance with Rule 21a of the Texas Rules of Civil Procedure on the 7th day of August, 2015, upon all counsel of record as indicated below:

Mr. Phillip D. Sharp
Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis, 20th Floor
Houston, TX 77002
Facsimile # 713-222-0101
Email: **sharp@mdjwlaw.com**

Lee M. Smithyman
Smithyman & Zakoura, Chartered
750 Commerce Plaza II
7400 West 110th Street
Overland Park, KS 66210-2362
Email: **lee@smizak-law.com**

_/S/ Richard L. Tate_____
Richard L. Tate

# Tab 11

# SERVICES AGREEMENT

This Services Agreement (this "*Agreement*") is entered into as of the 31st day of December, 2012, by and among CVR Refining, LP, a Delaware limited partnership ("*MLP*"), CVR Refining GP, LLC, a Delaware limited liability company ("*GP*"), and CVR Energy, Inc., a Delaware corporation ("*CVR*", and collectively with MLP and GP, the "*Parties*" and each, a "*Party*").

## RECITALS

MLP is the owner, directly or indirectly, of CVR Refining, LLC, Wynnewood Energy Company, LLC, Wynnewood Refining Company, LLC, Coffeyville Resources Refining & Marketing, LLC, Coffeyville Resources Crude Transportation, LLC, Coffeyville Resources Terminal, LLC and Coffeyville Resources Pipeline, LLC (collectively, the "*Refining Subs*"). CVR is an indirect owner of Coffeyville Resources Nitrogen Fertilizers, LLC, a Delaware limited liability company ("*Fertilizer*"). GP, in its capacity as the general partner of MLP, desires to engage CVR, on its own behalf and for the benefit of the Refining Subs and MLP, to provide certain services necessary to operate the business conducted by the Refining Subs, MLP and GP (the "*Services Recipients*"), and CVR is willing to undertake such engagement, subject to the terms and conditions of this Agreement.

MLP, GP (for itself and in its capacity as the general partner of MLP), and CVR agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01    Terms.  The following defined terms will have the meanings given below:

"*Administrative Personnel*" means individuals who are employed by CVR or any of its Affiliates and assist in providing, as part of the Services, any of the administrative services referred to in Exhibit 1 hereto.

"*Affiliate*" shall mean with respect to any Person, any other Person that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person.  For purposes of this definition, "control" when used with respect to any Person means the power to direct the management and policies of such Person, directly or indirectly, through the ownership of voting securities, by contract or otherwise (provided that, solely for purposes of this Agreement, the Services Recipients shall not be deemed Affiliates of CVR).

"*Bankrupt*" with respect to any Person shall mean such Person shall generally be unable to pay its debts as such debts become due, or shall so admit in writing or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against such Person seeking to adjudicate it a bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the

entry of an order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property and, in the case of any such proceeding instituted against it (but not instituted by it), shall remain undismissed or unstayed for a period of 30 days; or such Person shall take any action to authorize any of the actions set forth above.

*"CVR Representative"* means such person as is designated in writing by CVR to serve in such capacity.

*"Default Rate"* shall mean an interest rate (which shall in no event be higher than the rate permitted by applicable law) equal to 300 basis points over LIBOR.

*"Fertilizer"* has the meaning set forth in the Recitals hereinabove.

*"Governmental Approval"* shall mean any material consent, authorization, certificate, permit, right of way grant or approval of any Governmental Authority that is necessary for the construction, ownership and operation of the assets used in the business of the Services Recipients in accordance with applicable Laws.

*"Governmental Authority"* shall mean any court or tribunal in any jurisdiction or any federal, state, tribal, municipal or local government or other governmental body, agency, authority, department, commission, board, bureau, instrumentality, arbitrator or arbitral body or any quasi-governmental or private body lawfully exercising any regulatory or taxing authority.

*"GP/MLP Representative"* means such person as is designated in writing by GP to serve in such capacity.

*"Initial Offering"* means the initial public offering of common units representing limited partner interests in MLP.

*"Laws"* shall mean any applicable statute, environmental law, common law, rule, regulation, judgment, order, ordinance, writ, injunction or decree issued or promulgated by any Governmental Authority.

*"Party"* and *"Parties"* means the parties to this Agreement.

*"Person"* means an individual, corporation, partnership, joint venture, trust, limited liability company, unincorporated organization or other entity.

*"Personnel Costs"* means all compensation costs incurred by an employer in connection with the employment by such employer of applicable personnel, including all payroll and benefits but excluding any (i) Share-Based Compensation and (ii) severance costs (other than for Seconded Personnel).

*"Refining Payroll Percentage"* means, for any applicable period, the percentage represented by a fraction, the numerator of which is the total payroll amount of the Refining Subs for such period, and the denominator of which is the total payroll amount of the Refining Subs plus the total payroll amount of Fertilizer for such period, as such payroll amounts are calculated on a consistent basis for purposes of determining the Refining Payroll Percentage.

2

CVR-12539

*"Refining Subs"* has the meaning set forth in the Recitals hereinabove.

*"Seconded Personnel"* means individuals, other than Administrative Personnel, who are employed by CVR or any of its Affiliates and provided on a full-time basis to the Services Recipients in connection with provision of the Services.

*"Services"* shall consist of those services performed for the Services Recipients as described on Exhibit 1 hereto.

*"Services Recipients"* has the meaning set forth in the Recitals hereinabove.

*"Share-Based Compensation"* means any compensation accruing or payable under any incentive or other compensation plan or program of an employer based upon changes in the equity value of such employer or any of its Affiliates (but excluding MLP and its subsidiaries).

*"Shared Personnel"* means individuals, other than Administrative Personnel, who are employed by CVR or any of its Affiliates and provided on a part-time basis to the Services Recipients in connection with provision of the Services.

## ARTICLE II

## RETENTION OF CVR; SCOPE OF SERVICES

Section 2.01 <u>Retention of CVR</u>. GP, on its own behalf and for the benefit of the Services Recipients, hereby engages CVR to perform the Services and CVR hereby accepts such engagement and agrees to perform the Services and to provide all Administrative Personnel, Seconded Personnel, and Shared Personnel necessary to perform the Services.

Section 2.02 <u>Scope of Services</u>. The Services shall be provided in accordance with (i) applicable material Governmental Approvals and Laws, (ii) applicable industry standards and (iii) quality standards that, taken as a whole, are not materially less favorable to the Services Recipients compared to those provided to the Services Recipients as of the date of this Agreement.

Section 2.03 <u>Exclusion of Services</u>. At any time, GP or CVR may temporarily or permanently exclude any particular service from the scope of the Services upon 180 days' notice.

Section 2.04 <u>Performance of Services by Affiliates or Other Persons</u>. The Parties hereby agree that in discharging its obligations hereunder, CVR may engage any of its Affiliates or other Persons to perform the Services (or any part of the Services) on its behalf and that the performance of the Services (or any part of the Services) by any such Affiliate or Person shall be treated as if CVR performed such Services itself. No such delegation by CVR to Affiliates or other Persons shall relieve CVR of its obligations hereunder.

3

## ARTICLE III

## PAYMENT AMOUNT

Section 3.01 <u>Payment Amount</u>. GP shall pay or cause MLP or the Refining Subs to pay, to CVR (or its Affiliates as CVR may direct) the amount of any direct or indirect expenses incurred by CVR or its Affiliates in connection with the provision of Services by CVR or its Affiliates (the "*Payment Amount*"), in accordance with the following:

(a) <u>Seconded Personnel</u>. The Payment Amount will include all Personnel Costs of Seconded Personnel, to the extent attributable to the periods during which such Seconded Personnel are provided to the Services Recipients.

(b) <u>Shared Personnel and Administrative Personnel</u>. The Payment Amount will include a pro rata share of all Personnel Costs of Shared Personnel and Administrative Personnel (including government and public relations), as determined by CVR on a commercially reasonable basis, based on the percent of total working time that such respective personnel are engaged in performing any of the Services.

(c) <u>Administrative Costs</u>. The Payment Amount will include following:

(i) <u>Office Costs</u>. A pro rata share of all office costs (including, without limitation, all costs relating to office leases, equipment leases, supplies, property taxes and utilities) for all locations of Administrative Personnel, as determined by CVR on a commercially reasonable basis, based on the Refining Payroll Percentage;

(ii) <u>Insurance</u>. Insurance premiums will be direct charged to the applicable insured to the extent possible, and otherwise will be allocated on a commercially reasonable basis as mutually agreed upon by the Parties;

(iii) <u>Outside Services</u>. Services provided by outside vendors (including audit services, legal services, government and public relation services, and other services) will first be direct charged where applicable; provided, however that the Payment Amount will include a pro rata share of charges for all services that are provided by outside vendors and not direct charged, as determined by CVR on a commercially reasonable basis, based upon the following percentages of such charges: legal services — 65%; and all other services — Refining Payroll Percentage;

(iv) <u>Other SGA Costs</u>. A pro rata share of all other sales, general and administrative costs relating to the Services Recipients, as determined by CVR on a commercially reasonable basis, based on the Refining Payroll Percentage; and

(v) <u>Depreciation and Amortization</u>. A pro rata share of depreciation and amortization relating to all locations of Administrative Personnel, as determined by CVR on a commercially reasonable basis, based on the Refining Payroll Percentage, following recognition of such depreciation or amortization as an expense on the books and records of CVR or its Affiliates.

4

(d)   Other Costs. Bank charges, interest expense and any other costs as reasonably incurred by CVR or its Affiliates in the provision of Services will be direct charged as applicable. For the avoidance of doubt, any of the foregoing costs and expenses described in Section 3.01 that are direct charged to any Party will not be included in the Payment Amount.

Section 3.02   Payment of Payment Amount. CVR shall submit monthly invoices to GP for the Services, which invoices shall be due and payable net 15 days. GP shall pay or cause MLP or the Refining Subs to pay, to CVR in immediately available funds, the full Payment Amount due under Section 3.01. Past due amounts shall bear interest at the Default Rate. Allocation percentages referred to in this Article III will be calculated and determined for calendar year or calendar quarter periods, as CVR may determine, based upon CVR's annual audited financials, or quarterly unaudited financials, for the immediately preceding calendar year or calendar quarter, as applicable.

Section 3.03   Disputed Charges. GP MAY, WITHIN 90 DAYS AFTER RECEIPT OF A CHARGE FROM CVR, TAKE WRITTEN EXCEPTION TO SUCH CHARGE, ON THE GROUND THAT THE SAME WAS NOT A REASONABLE COST INCURRED BY CVR OR ITS AFFILIATES IN CONNECTION WITH THE SERVICES. GP SHALL NEVERTHELESS PAY OR CAUSE MLP OR THE REFINING SUBS TO PAY IN FULL WHEN DUE THE FULL PAYMENT AMOUNT OWED TO CVR. SUCH PAYMENT SHALL NOT BE DEEMED A WAIVER OF THE RIGHT OF THE SERVICES RECIPIENT TO RECOUP ANY CONTESTED PORTION OF ANY AMOUNT SO PAID. HOWEVER, IF THE AMOUNT AS TO WHICH SUCH WRITTEN EXCEPTION IS TAKEN, OR ANY PART THEREOF, IS ULTIMATELY DETERMINED NOT TO BE A REASONABLE COST INCURRED BY CVR OR ITS AFFILIATES IN CONNECTION WITH ITS PROVIDING THE SERVICES HEREUNDER, SUCH AMOUNT OR PORTION THEREOF (AS THE CASE MAY BE) SHALL BE REFUNDED BY CVR TO THE SERVICES RECIPIENTS TOGETHER WITH INTEREST THEREON AT THE DEFAULT RATE DURING THE PERIOD FROM THE DATE OF PAYMENT BY THE SERVICES RECIPIENTS TO THE DATE OF REFUND BY CVR.

Section 3.04   CVR's Employees. The Services Recipients shall not be obligated to pay directly to Seconded Personnel or Shared Personnel any compensation, salaries, wages, bonuses, benefits, social security taxes, workers' compensation insurance, retirement and insurance benefits, training or other expenses; provided, however, that if CVR fails to pay any employee within 30 days of the date such employee's payment is due:

(a)   The Services Recipients may (i) pay such employee directly, (ii) employ such employee directly, or (iii) notify CVR that this Agreement is terminated and employ such employees directly; and

(b)   CVR shall reimburse GP, MLP or the Refining Subs, as the case may be, for the amount GP, MLP or the Refining Subs, as applicable, paid to CVR with respect to employee services for which CVR did not pay any such employee.

5

CVR-12542

# ARTICLE IV

## BOOKS, RECORDS AND REPORTING

Section 4.01    Books and Records.  CVR and its Affiliates and the Services Recipients shall each maintain accurate books and records regarding the performance of the Services and calculation of the Payment Amount, and shall maintain such books and records for the period required by applicable accounting practices or law, or five (5) years, whichever is longer.

Section 4.02    Audits.  CVR and its Affiliates and the Services Recipients shall have the right, upon reasonable notice, and at all reasonable times during usual business hours, to audit, examine and make copies of the books and records referred to in Section 4.01.  Such right may be exercised through any agent or employee of the Person exercising such right if designated in writing by such Person or by an independent public accountant, engineer, attorney or other agent so designated.  Each Person exercising such right shall bear all costs and expenses incurred by it in any inspection, examination or audit.  Each Party shall review and respond in a timely manner to any claims or inquiries made by the other Party regarding matters revealed by any such inspection, examination or audit.

Section 4.03    Reports.  CVR shall prepare and deliver to GP any reports provided for in this Agreement and such other reports as GP may reasonably request from time to time regarding the performance of the Services.

# ARTICLE V

## INTELLECTUAL PROPERTY

Section 5.01    Ownership by CVR and License to MLP.  Any (i) inventions, whether patentable or not, developed or invented, or (ii) copyrightable material (and the intangible rights of copyright therein) developed, by CVR, its Affiliates or its or their employees in connection with the performance of the Services shall be the property of CVR; provided, however, that CVR hereby grants, and agrees to cause its Affiliates to grant, to MLP an irrevocable, royalty-free, non-exclusive and non-transferable (without the prior written consent of CVR) right and license to use such inventions or material; and further provided, however, that MLP shall only be granted such a right and license to the extent such grant does not conflict with, or result in a breach, default, or violation of a right or license to use such inventions or material granted to CVR by any Person other than an Affiliate of CVR.  Notwithstanding the foregoing, CVR will and will cause its Affiliates to, use all commercially reasonable efforts to grant such right and license to MLP.

Section 5.02    License to CVR and its Affiliates.  MLP hereby grants, and will cause its Affiliates to grant, to CVR and its Affiliates an irrevocable, royalty-free, non-exclusive and non-transferable right and license to use, during the term of this Agreement, any intellectual property provided by MLP or its Affiliates to CVR or its Affiliates, but only to the extent such use is necessary for the performance of the Services.  CVR agrees that CVR and its Affiliates will utilize such intellectual property solely in connection with the performance of the Services.

6

CVR-12543

## ARTICLE VI

## TERMINATION

Section 6.01    Termination By GP.

(a)    Upon the occurrence of any of the following events, GP may terminate this Agreement by giving written notice of such termination to CVR:

(i)    CVR becomes Bankrupt; or

(ii)    CVR dissolves and commences liquidation or winding-up.

Any termination under this Section 6.01(a) shall become effective immediately upon delivery of the notice first described in this Section 6.01(a), or such later time (not to exceed the first anniversary of the delivery of such notice) as may be specified by GP.

(b)    In addition to its rights under Section 6.01(a), after the first year anniversary of the completion of the Initial Offering, GP may terminate this Agreement at any time by giving notice of such termination to CVR.  Any termination under this Section 6.01(b) shall become effective 180 days after delivery of such notice, or such later time (not to exceed the first anniversary of the delivery of such notice) as may be specified by GP.

Section 6.02    Termination By CVR.  After the first year anniversary of the completion of the Initial Offering, CVR may terminate this Agreement at any time by giving notice of such termination to GP.  Any termination under this Section 6.02 shall become effective 180 days after delivery of such notice, or such later time (not to exceed the first anniversary of the delivery of such notice) as may be specified by CVR.

Section 6.03    Effect of Termination.  If this Agreement is terminated in accordance with Section 6.01 or Section 6.02, all rights and obligations under this Agreement shall cease except for (a) obligations that expressly survive termination of this Agreement; (b) liabilities and obligations that have accrued prior to such termination, including the obligation to pay any amounts that have become due and payable prior to such termination, and (c) the obligation to pay any portion of any Payment Amount that has accrued prior to such termination, even if such portion has not become due and payable at that time.

Section 6.04    Transition of Services.  During the period of 180 days following the delivery of any notice of termination delivered in accordance with Section 6.01(b) or 6.02, in addition to the Services, CVR will, and will cause its Affiliates to, provide to MLP such additional services as may be reasonably requested by the GP to assist the Services Recipients in effecting a transition of the responsibility for providing the Services.

Section 6.05    Survival.  The provisions of this Article VI and Sections 3.03, 4.01, 4.02, 5.01, 8.01, 8.02, 8.03 and Articles IX and X will survive and continue in full force and effect notwithstanding the termination of this Agreement.

7

CVR-12544

## ARTICLE VII

## ADDITIONAL REPRESENTATIONS AND WARRANTIES

Section 7.01    Representations and Warranties of CVR.    CVR hereby represents, warrants and covenants to the other Parties that as of the date hereof:

(a)    CVR is duly organized, validly existing, and in good standing under the laws of the State of Delaware; CVR is duly qualified and in good standing in the States required in order to perform the Services except where failure to be so qualified or in good standing could not reasonably be expected to have a material adverse impact on GP or MLP; and CVR has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder

(b)    CVR has duly executed and delivered this Agreement, and this Agreement constitutes the legal, valid and binding obligation of CVR, enforceable against it in accordance with its terms (except as may be limited by bankruptcy, insolvency or similar laws of general application and by the effect of general principles of equity, regardless of whether considered at law or in equity); and

(c)    The authorization, execution, delivery, and performance of this Agreement by CVR does not and will not (i) conflict with, or result in a breach, default or violation of, (A) the amended and restated certificate of incorporation of CVR, (B) any contract or agreement to which CVR is a party or is otherwise subject, or (C) any law, order, judgment, decree, writ, injunction or arbitral award to which CVR is subject; or (ii) require any consent, approval or authorization from, filing or registration with, or notice to, any governmental authority or other Person, unless such requirement has already been satisfied, except, in the case of clauses (i)(B) and (i)(C), for such conflicts, breaches, defaults or violations that would not have a material adverse effect on CVR or on its ability to perform its obligations hereunder, and except, in the case of clause (ii), for such consents, approvals, authorizations, filings, registrations or notices, the failure of which to obtain or make would not have a material adverse effect on CVR or on their ability to perform their obligations hereunder.

Section 7.02    Representations and Warranties of GP and MLP.    Each of GP and MLP hereby represents, warrants and covenants to the other Parties that as of the date hereof:

(a)    Each of GP and MLP is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its formation; each of GP and MLP has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder;

(b)    Each of GP and MLP has duly executed and delivered this Agreement, and this Agreement constitutes the legal, valid and binding obligation of each such Person enforceable against it in accordance with its terms (except as may be limited by bankruptcy, insolvency or similar laws of general application and by the effect of general principles of equity, regardless of whether considered at law or in equity); and

(c)    The authorization, execution, delivery, and performance of this Agreement by each of GP and MLP does not and will not (i) conflict with, or result in a breach, default or

8

violation of, (A) the limited liability company agreement of GP or the partnership agreement of MLP, (B) any contract or agreement to which such Person is a party or is otherwise subject, or (C) any law, order, judgment, decree, writ, injunction or arbitral award to which such Person is subject; or (ii) require any consent, approval or authorization from, filing or registration with, or notice to, any governmental authority or other Person, unless such requirement has already been satisfied, except, in the case of clause (i)(B) and (i)(C), for such conflicts, breaches, defaults or violations that would not have a material adverse effect on GP or MLP or on their ability to perform their obligations hereunder, and except, in the case of clause (ii), for such consents, approvals, authorizations, filings, registrations or notices, the failure of which to obtain or make would not have a material adverse effect on GP or MLP or on their ability to perform their respective obligations hereunder.

## ARTICLE VIII

## ADDITIONAL REQUIREMENTS

Section 8.01    Indemnity.   The Services Recipients shall indemnify, reimburse, defend and hold harmless CVR and its Affiliates and their respective successors and permitted assigns, together with their respective employees, officers, members, managers, directors, agents and representatives (collectively the "Indemnified Parties"), from and against all losses (including lost profits), costs, damages, injuries, taxes, penalties, interests, expenses, obligations, claims and liabilities (joint or severable) of any kind or nature whatsoever (collectively "Losses") that are incurred by such Indemnified Parties in connection with, relating to or arising out of (i) the breach of any term or condition of this Agreement, or (ii) the performance of any Services hereunder; *provided, however,* that the Services Recipients shall not be obligated to indemnify, reimburse, defend or hold harmless any Indemnified Party for any Losses Incurred, by such Indemnified Party in connection with, relating to or arising out of:

(a)    a breach by such Indemnified Party of this Agreement;

(b)    the gross negligence, willful misconduct, bad faith or reckless disregard of such Indemnified Party in the performance of any Services hereunder; or

(c)    fraudulent or dishonest acts of such Indemnified Party with respect to the Services Recipients.

The rights of any Indemnified Party referred to above shall be in addition to any rights that such Indemnified Party shall otherwise have at law or in equity.  Without the prior written consent of the Services Recipients, no Indemnified Party shall settle, compromise or consent to the entry of any judgment in, or otherwise seek to terminate any, claim, action, proceeding or investigation in respect of which indemnification could be sought hereunder unless (a) such Indemnified Party indemnifies the Services Recipients from any liabilities arising out of such claim, action, proceeding or investigation, (b) such settlement, compromise or consent includes an unconditional release of the Services Recipients and Indemnified Party from all liability arising out of such claim, action, proceeding or investigation and (c) the parties involved agree that the terms of such settlement, compromise or consent shall remain confidential.  In the event that indemnification is provided for under any other agreements between CVR or any of its Affiliates

9

and any of the Services Recipients or any of their Affiliates, and such indemnification is for any particular Losses, then such indemnification (and any limitations thereon) as provided in such other agreement shall apply as to such particular Losses and shall supersede and be in lieu of any indemnification that would otherwise apply to such particular Losses under this Agreement.

Section 8.02  Limitation of Duties and Liability.  The relationship of CVR to the Services Recipients pursuant to this Agreement is as an independent contractor and nothing in this Agreement shall be construed to impose on CVR, or on any of its Affiliates, or on any of their respective successors and permitted assigns, or on their respective employees, officers, members, managers, directors, agents and representatives, an express or implied fiduciary duty. CVR and its Affiliates and their respective successors and permitted assigns, together with their respective employees, officers, members, managers, directors, agents and representatives, shall not be liable for, and the Services Recipients shall not take, or permit to be taken, any action against any of such Persons to hold such Persons liable for, (a) any error of judgment or mistake of law or for any liability or loss suffered by the Services Recipients in connection with the performance of any Services under this Agreement, except for a liability or loss resulting from gross negligence, willful misconduct, bad faith or reckless disregard in the performance of the Services, or (b) any fraudulent or dishonest acts with respect to the Services Recipients. In no event, whether based on contract, indemnity, warranty, tort (including negligence), strict liability or otherwise, shall CVR or its Affiliates, their respective successors and permitted assigns, or their respective employees, officers, members, managers, directors, agents and representatives, be liable for loss of profits or revenue or special, incidental, exemplary, punitive or consequential damages.

Section 8.03  Reliance.  CVR and its Affiliates and their respective successors and permitted assigns, together with their respective employees, officers, members, managers, directors, agents and representatives, may take and may act and rely upon:

(a)  the opinion or advice of legal counsel, which may be in-house counsel to the Services Recipients or to CVR or its Affiliates, any U.S.-based law firm, or other legal counsel reasonably acceptable to the Boards of Directors of the Services Recipients, in relation to the interpretation of this Agreement or any other document (whether statutory or otherwise) or generally in connection with the Services Recipients;

(b)  advice, opinions, statements or information from bankers, accountants, auditors, valuation consultants and other consulted Persons who are in each case believed by the relying Person in good faith to be expert in relation to the matters upon which they are consulted; or

(c)  any other document provided in connection with the Services Recipients upon which it is reasonable for the applicable Person to rely.

A Person shall not be liable for anything done, suffered or omitted by it in good faith in reliance upon such opinion, advice, statement, information or document.

Section 8.04  Services to Others.  While CVR is providing the Services under this Agreement, CVR shall also be permitted to provide services, including services similar to the Services covered hereby, to others, including Affiliates of CVR.

10

CVR-12547

Section 8.05  Transactions With Affiliates.  CVR may recommend to the Services Recipients, and may engage in, transactions with any of CVR's Affiliates; *provided*, that any such transactions shall be subject to the authorization and approval of the Services Recipients' Boards of Directors, as applicable.

Section 8.06  Sharing of Information.  Each Party (the "*Recipient Party*") agrees to maintain the confidentiality of, and not to use, the confidential or proprietary information disclosed pursuant to or in connection with this Agreement ("*Confidential Information*") by or on behalf of the other Party (the "*Disclosing Party*") for any purpose whatsoever except in connection with performance pursuant to this Agreement.  The obligations undertaken pursuant to this Section do not apply to such part of the Confidential Information that is or has become published or otherwise generally available to the public, other than as a consequence of the willful or negligent act or omission of the Recipient Party, or which, at the time of disclosure to the Recipient Party, was already in the lawful possession of the Recipient Party, as evidenced by written records.  The Recipient Party will impose corresponding obligations of confidentiality and non-use on its Affiliates and each of their respective employees, agents and representatives (collectively, "*Representatives*") involved in the performance of this Agreement prior to making the Confidential Information available to them.  Any breach of confidentiality or non-use of Confidential Information by any Representative will be deemed a breach of confidentiality or non-use by the Recipient Party.  It will not be a breach of the confidentiality obligations herein for the Recipient Party to disclose Confidential Information, where such disclosure is required by law or applicable legal process, provided the Recipient Party agrees to (a) immediately notify the Disclosing Party in writing of the existence, terms and circumstances surrounding such a requirement, and (b) assist the Disclosing Party in seeking a protective order or other appropriate remedy satisfactory to the Disclosing Party (at the expense of the Disclosing Party).  If such protective order or other remedy is not obtained (or the Disclosing Party waives compliance with the provisions hereof), (i) the Recipient Party may disclose that portion of the Confidential Information it is legally required to disclose, (ii) the Recipient Party will exercise reasonable efforts to obtain assurance that confidential treatment will be accorded the Confidential Information to be disclosed, and (iii) the Recipient Party will give written notice to the Disclosing Party of the information to be so disclosed as far in advance of its disclosure as practicable.  The parties agree that any violation of this Section by the Recipient Party or its Representatives may be enforced by the Disclosing Party by obtaining injunctive or specific relief from a court of competent jurisdiction.  Such relief is cumulative and not exclusive of any other remedies available to the Disclosing Party at law or in equity, including, but not limited to, damages and reasonable attorneys' fees.

Section 8.07  Disclosure of Remuneration.  CVR shall disclose the amount of remuneration of the Chief Financial Officer and any other officer or employee shared with or seconded to the Services Recipients, including the Chief Executive Officer, to the Boards of Directors of the Services Recipients to the extent required for the Services Recipients to comply with the requirements of applicable law, including applicable Federal securities laws.

Section 8.08  Additional Seconded Personnel or Shared Personnel.  CVR and the Services Recipients' Boards of Directors may agree from time to time that CVR shall provide additional Seconded Personnel or Shared Personnel, upon such terms as CVR and the Services Recipients' Board of Directors may mutually agree.  Any such individuals shall have such titles

11

CVR-12548

and fulfill such functions as CVR and the Services Recipients may mutually agree but subject to compliance with the agreement of limited partnership of MLP.

Section 8.09 <u>Operations Personnel</u>. Personnel performing the actual day-to-day business and operations of the Refining Subs at the refinery or operating level will be employed by the Refining Subs, and the Refining Subs will bear all Personnel Costs or other costs relating to such personnel.

Section 8.10 <u>Election</u>. The Services Recipients shall cause the election of any Seconded Personnel or Shared Personnel to the extent required by the organizational documents of the Services Recipients. The Services Recipients' Board of Directors, after due consultation with CVR, may at any time request that CVR replace any Seconded Personnel and CVR shall, as promptly as practicable, replace any individual with respect to whom such Board of Directors shall have made its request, subject to the requirements for the election of officers under the organizational documents of the Services Recipients but subject to compliance with the agreement of limited partnership of MLP.

## ARTICLE IX

## DISPUTES

Section 9.01 <u>Resolution of Disputes</u>. The Parties shall in good faith attempt to resolve promptly and amicably any dispute between the Parties arising out of or relating to this Agreement (each a "<u>Dispute</u>") pursuant to this Article IX. The Parties shall first submit the Dispute to the CVR Representative and the GP/MLP Representative, who shall then meet within fifteen (15) days to resolve the Dispute. If the Dispute has not been resolved within forty-five (45) days after the submission of the Dispute to the CVR Representative and the GP/MLP Representative, the Dispute shall be submitted to a mutually agreed non-binding mediation. The costs and expenses of the mediator shall be borne equally by the Parties, and the Parties shall pay their own respective attorneys' fees and other costs. If the Dispute is not resolved by mediation within ninety (90) days after the Dispute is first submitted to the CVR Representative and the GP/MLP Representative as provided above, then the Parties may exercise all available remedies.

Section 9.02 <u>Multi-Party Disputes</u>. The Parties acknowledge that they or their respective affiliates contemplate entering or have entered into various additional agreements with third parties that relate to the subject matter of this Agreement and that, as a consequence, Disputes may arise hereunder that involve such third parties (each a "<u>Multi-Party Dispute</u>"). Accordingly, the Parties agree, with the consent of such third parties, that any such Multi-Party Dispute, to the extent feasible, shall be resolved by and among all the interested parties consistent with the provisions of this Article IX.

## ARTICLE X

## MISCELLANEOUS

Section 10.01 <u>Notices</u>. Except as expressly set forth to the contrary in this Agreement, all notices, requests or consents provided for or permitted to be given under this Agreement must

12

be in writing and must be delivered to the recipient in person, by courier or mail or by facsimile, telegram, telex, cablegram or similar transmission; and a notice, request or consent given under this Agreement is effective on receipt by the Party to receive it; provided, however, that a facsimile or other electronic transmission that is transmitted after the normal business hours of the recipient shall be deemed effective on the next business day. All notices, requests and consents to be sent to MLP must be sent to GP. All notices, requests and consents (including copies thereof) to be sent to GP must be sent to or made at the address given below for GP.

If to GP or MLP, to:

> Edmund S. Gross,
> Senior Vice President and General Counsel
> CVR Energy, Inc.
> 10 E. Cambridge Circle, Ste. 250
> Kansas City, Kansas 66103
> Facsimile: (913) 982-5651

If to CVR, to:

> John J. Lipinski
> President and CEO
> 2277 Plaza Drive
> Suite 500
> Sugar Land, Texas 77479
> Facsimile: (281) 207-3505

Section 10.02 <u>Effect of Waiver or Consent</u>. Except as otherwise provided in this Agreement, a waiver or consent, express or implied, to or of any breach or default by any Party in the performance by that Party of its obligations under this Agreement is not a consent or waiver to or of any other breach or default in the performance by that Party of the same or any other obligations of that Party under this Agreement. Except as otherwise provided in this Agreement, failure on the part of a Party to complain of any act of another Party or to declare another Party in default under this Agreement, irrespective of how long that failure continues, does not constitute a waiver by that Party of its rights with respect to that default until the applicable statute-of-limitations period has run.

Section 10.03 <u>Headings; References; Interpretation</u>. All Article and Section headings in this Agreement are for convenience only and will not be deemed to control or affect the meaning or construction of any of the provisions hereof. The words "hereof," "herein" and "hereunder" and words of similar import, when used in this Agreement, will refer to this Agreement as a whole, and not to any particular provision of this Agreement. All references herein to Articles and Sections will, unless the context requires a different construction, be deemed to be references to the Articles and Sections of this Agreement, respectively. All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, will include all other genders, and the singular will include the plural and vice versa. The terms "include," "includes," "including" or words of like import will be deemed to be followed by the words "without limitation."

13

CVR-12550

Section 10.04 <u>Successors and Assigns</u>. This Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 10.05 <u>No Third Party Rights</u>. The provisions of this Agreement are intended to bind the parties signatory hereto as to each other and are not intended to and do not create rights in any other person or confer upon any other person any benefits, rights or remedies, and no person is or is intended to be a third party beneficiary of any of the provisions of this Agreement.

Section 10.06 <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, all of which together will constitute one agreement binding on the Parties.

Section 10.07 <u>Governing Law</u>. THIS AGREEMENT IS GOVERNED BY AND SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF KANSAS.

Section 10.08 <u>Submission to Jurisdiction; Waiver of Jury Trial</u>. Subject to the provisions of <u>Article IX</u>, each of the Parties hereby irrevocably acknowledges and consents that any legal action or proceeding brought with respect to any of the obligations arising under or relating to this Agreement may be brought in the courts of the State of Kansas, or in the United States District Court for the District of Kansas and each of the Parties hereby irrevocably submits to and accepts with regard to any such action or proceeding, for itself and in respect of its property, generally and unconditionally, the non-exclusive jurisdiction of the aforesaid courts. Each Party hereby further irrevocably waives any claim that any such courts lack jurisdiction over such Party, and agrees not to plead or claim, in any legal action or proceeding with respect to this Agreement or the transactions contemplated hereby brought in any of the aforesaid courts, that any such court lacks jurisdiction over such Party. Each Party irrevocably consents to the service of process in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such party, at its address for notices set forth in this Agreement, such service to become effective ten (10) days after such mailing. Each Party hereby irrevocably waives any objection to such service of process and further irrevocably waives and agrees not to plead or claim in any action or proceeding commenced hereunder or under any other documents contemplated hereby that service of process was in any way invalid or ineffective. The foregoing shall not limit the rights of any Party to serve process in any other manner permitted by applicable law. The foregoing consents to jurisdiction shall not constitute general consents to service of process in the State of Kansas for any purpose except as provided above and shall not be deemed to confer rights on any Person other than the respective Parties. Each of the Parties hereby waives any right it may have under the laws of any jurisdiction to commence by publication any legal action or proceeding with respect this Agreement. To the fullest extent permitted by applicable law, each of the Parties hereby irrevocably waives the objection which it may now or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this Agreement in any of the courts referred to in this Section 10.08 and hereby further irrevocably waives and agrees not to plead or claim that any such court is not a convenient forum for any such suit, action or proceeding. The Parties agree that any judgment obtained by any Party or its successors or assigns in any action, suit or proceeding referred to above may, in the discretion of such Party (or its successors or assigns), be enforced in any jurisdiction, to the extent permitted by applicable law. The Parties agree that the remedy at law for any breach of this Agreement may be inadequate and that should any

14

dispute arise concerning any matter hereunder, this Agreement shall be enforceable in a court of equity by an injunction or a decree of specific performance. Such remedies shall, however, be cumulative and nonexclusive, and shall be in addition to any other remedies which the Parties may have. Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect of any litigation as between the Parties directly or indirectly arising out of, under or in connection with this Agreement or the transactions contemplated hereby or disputes relating hereto. Each Party (i) certifies that no representative, agent or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 10.08.

Section 10.09 Remedies to Prevailing Party. If any action at law or equity is necessary to enforce or interpret the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements in addition to any other relief to which such party may be entitled.

Section 10.10 Severability. If any provision of this Agreement or the application thereof to any Person or any circumstance is held invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law.

Section 10.11 Amendment or Modification. This Agreement may be amended or modified from time to time only by the written agreement of all the Parties.

Section 10.12 Integration. This Agreement and the exhibit referenced herein supersede all previous understandings or agreements among the Parties, whether oral or written, with respect to its subject matter. This Agreement and such exhibit contain the entire understanding of the Parties with respect to its subject matter. In the case of any actual conflict or inconsistency between the terms of this Agreement and the agreement of limited partnership of MLP, the terms of the agreement of limited partnership of MLP shall control. No understanding, representation, promise or agreement, whether oral or written, is intended to be or will be included in or form part of this Agreement unless it is contained in a written amendment hereto executed by the Parties after the date of this Agreement.

Section 10.13 Further Assurances. In connection with this Agreement and the transactions contemplated hereby, each Party shall execute and deliver any additional documents and instruments and perform any additional acts that may be reasonably necessary or appropriate to effectuate and perform the provisions of this Agreement and those transactions.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

15

CVR-12552

This Agreement has been duly executed by the Parties as of the date first written above.

**CVR REFINING, LP**

By: CVR REFINING GP, LLC
    its General Partner

By: _____
Name: Susan M. Ball
Title: Chief Financial Officer and Treasurer

**CVR REFINING GP, LLC**

By: _____
Name: Susan M. Ball
Title: Chief Financial Officer and Treasurer

**CVR ENERGY, INC.**

By: _____
Name: John J. Lipinski
Title: Chief Executive Officer and President

**Exhibit 1**

The Services shall include the following:

- services in capacities equivalent to the capacities of corporate executive officers, except that the persons serving in such capacities shall serve in such capacities as Shared Personnel on a shared, part-time basis only, unless and to the extent otherwise agreed by CVR;

- safety and environmental advice;

- administrative and professional services, including legal, accounting, human resources, insurance, tax, credit, finance, government affairs, and regulatory affairs;

- manage the Services Recipients' day-to-day business and operations, including managing its liquidity and capital resources and compliance with applicable law;

- establishing and maintaining books and records of the Services Recipients in accordance with customary practice and GAAP;

- recommend to the Services Recipients' Board of Directors (x) capital raising activities, including the issuance of debt or equity securities of the Services Recipients, the entry into credit facilities or other credit arrangements, structured financings or other capital market transactions, (y) changes or other modifications in the capital structure of the Services Recipients, including repurchases;

- recommend to the Services Recipients' Board of Directors the engagement of or, if approval is not otherwise required hereunder, engage agents, consultants or other third party service providers to the Services Recipients, including accountants, lawyers or experts, in each case, as may be necessary by the Services Recipients from time to time;

- manage the Services Recipients' property and assets in the ordinary course of business;

- manage or oversee litigation, administrative or regulatory proceedings, investigations or any other reviews of the Services Recipients' business or operations that may arise in the ordinary course of business or otherwise, subject to the approval of the Services Recipients' Board of Directors to the extent necessary in connection with the settlement, compromise, consent to the entry of an order or judgment or other agreement resolving any of the foregoing;

- establish and maintain appropriate insurance policies with respect to the Services Recipients' business and operations;

- recommend to the Services Recipients' Board of Directors the payment of dividends or other distributions on the equity interests of the Services Recipients;

Exhibit 1
Page 1

- attend to the timely calculation and payment of taxes payable, and the filing of all taxes return due, by the Services Recipients; and

- manage or provide advice or recommendations for other projects of the Services Recipients, as may be agreed to between GP and CVR from time to time.

EXHIBIT 1
PAGE 2

CVR-12555

# Tab 12

---

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 4. Liability in Tort
      Chapter 71. Wrongful Death; Survival; Injuries Occurring Out of State (Refs & Annos)
        Subchapter D. Forum Non Conveniens

V.T.C.A., Civil Practice & Remedies Code § 71.051

§ 71.051. Forum Non Conveniens

Effective: September 1, 2005
Currentness

(a) Repealed by Acts 2003, 78th Leg., ch. 204, § 3.09.

(b) If a court of this state, on written motion of a party, finds that in the interest of justice and for the convenience of the parties a claim or action to which this section applies would be more properly heard in a forum outside this state, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action. In determining whether to grant a motion to stay or dismiss an action under the doctrine of forum non conveniens, the court shall consider whether:

  (1) an alternate forum exists in which the claim or action may be tried;

  (2) the alternate forum provides an adequate remedy;

  (3) maintenance of the claim or action in the courts of this state would work a substantial injustice to the moving party;

  (4) the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

  (5) the balance of the private interests of the parties and the public interest of the state predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this state; and

  (6) the stay or dismissal would not result in unreasonable duplication or proliferation of litigation.

(c) The court may set terms and conditions for staying or dismissing a claim or action under this section as the interests of justice may require, giving due regard to the rights of the parties to the claim or action. If a moving party violates a term or condition of a stay or dismissal, the court shall withdraw the order staying or dismissing the claim or action and proceed as if the order had never been issued. Notwithstanding any other law, the court shall have continuing jurisdiction for purposes of this subsection.

---

(d) A request for stay or dismissal under this section is timely if it is filed not later than 180 days after the time required for filing a motion to transfer venue of the claim or action. The court may rule on a motion filed under this section only after a hearing with notice to all parties not less than 21 days before the date specified for the hearing. The court shall afford all of the parties ample opportunity to obtain discovery of information relevant to the motion prior to a hearing on a motion under this section. The moving party shall have the responsibility to request and obtain a hearing on such motion at a reasonable time prior to commencement of the trial, and in no case shall the hearing be held less than 30 days prior to trial.

(e) The court may not stay or dismiss a plaintiff's claim under Subsection (b) if the plaintiff is a legal resident of this state. If an action involves both plaintiffs who are legal residents of this state and plaintiffs who are not, the court may not stay or dismiss the action under Subsection (b) if the plaintiffs who are legal residents of this state are properly joined in the action and the action arose out of a single occurrence. The court shall dismiss a claim under Subsection (b) if the court finds by a preponderance of the evidence that a party was joined solely for the purpose of obtaining or maintaining jurisdiction in this state and the party's claim would be more properly heard in a forum outside this state.

(f) A court that grants a motion to stay or dismiss an action under the doctrine of forum non conveniens shall set forth specific findings of fact and conclusions of law.

(g) Any time limit established by this section may be extended by the court at the request of any party for good cause shown.

(h) In this section:

(1) "Legal resident" means an individual who intends the specified political subdivision to be his permanent residence and who intends to return to the specified political subdivision despite temporary residence elsewhere or despite temporary absences, without regard to the individual's country of citizenship or national origin. The term does not include an individual who adopts a residence in the specified political subdivision in bad faith for purposes of avoiding the application of this section.

(2) "Plaintiff" means a party seeking recovery of damages for personal injury or wrongful death. In a cause of action in which a party seeks recovery of damages for personal injury to or the wrongful death of another person, "plaintiff" includes both that other person and the party seeking such recovery. The term does not include a counterclaimant, cross-claimant, or third-party plaintiff or a person who is assigned a cause of action for personal injury, or who accepts an appointment as a personal representative in a wrongful death action, in bad faith for purposes of affecting in any way the application of this section.

(i) This section applies to actions for personal injury or wrongful death. This section shall govern the courts of this state in determining issues under the doctrine of forum non conveniens in the actions to which it applies, notwithstanding Section 71.031(a) or any other law.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 4, § 1, eff. Aug. 30, 1993. Amended by Acts 1995, 74th Leg., ch. 567, § 1, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 424, § 1, eff. May 29, 1997; Acts 2003, 78th Leg., ch. 204, §§ 3.04, 3.09, eff. Sept. 1, 2003; Acts 2005, 79th Leg., ch. 248, § 1, eff. Sept. 1, 2005.

Notes of Decisions (143)

V. T. C. A., Civil Practice & Remedies Code § 71.051, TX CIV PRAC & REM § 71.051
Current through Chapters effective immediately through Chapter 46 of the 2015 Regular Session of the 84th Legislature

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Tab 13

West's Kansas Statutes Annotated
  Chapter 60. Procedure, Civil
    Article 2. Rules of Civil Procedure

K.S.A. 60-258a

60-258a. Comparative negligence

Currentness

(a) *Effect of contributory negligence.* The contributory negligence of a party in a civil action does not bar that party or its legal representative from recovering damages for negligence resulting in death, personal injury, property damage or economic loss, if that party's negligence was less than the causal negligence of the party or parties against whom a claim is made, but the award of damages to that party must be reduced in proportion to the amount of negligence attributed to that party. If a party claims damages for a decedent's wrongful death, the negligence of the decedent, if any, must be imputed to that party.

(b) *Special verdicts or findings required.* When the comparative negligence of the parties is an issue, the jury must return special verdicts, or in the absence of a jury, the court must make special findings, determining the percentage of negligence attributable to each party and the total amount of damages sustained by each claimant. The court must determine the appropriate judgment.

(c) *Joining additional parties.* On motion of any party against whom a claim is asserted for negligence resulting in death, personal injury, property damage or economic loss, any other person whose causal negligence is claimed to have contributed to the death, personal injury, property damage or economic loss, must be joined as an additional party.

(d) *Apportioning liability.* When the comparative negligence of the parties is an issue and recovery is permitted against more than one party, each party is liable for that portion of the total dollar amount awarded as damages to a claimant in the proportion that the amount of that party's causal negligence bears to the amount of the causal negligence attributed to all parties against whom recovery is permitted.

(e) *Applicability.* This section is applicable to actions under this chapter and to actions commenced under the code of civil procedure for limited actions.

**Credits**
Laws 1974, ch. 239, § 1; Laws 1976, ch. 251, § 4; Laws 1987, ch. 221, § 1; Laws 2010, ch. 135, § 132, eff. July 1, 2010.

Notes of Decisions (290)

K. S. A. 60-258a, KS ST 60-258a
Statutes are current through laws enacted during the 2014 Regular Session of the Kansas Legislature and those laws enacted during the 2015 Regular Session of the Kansas Legislature effective on or before June 26, 2015 (chapters 1, 4, 5, 9, 13, 14, 27, 32, 39, 41, 43, 48, 49 (partial), 50, 51, 54, 56, 59, 72, 74, 79, 80, 81 (partial), 84, 86, 92 (partial) and 103).

---

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

---

# Tab 14

| West's Kansas Statutes Annotated |
| --- |
| Chapter 60. Procedure, Civil |
| Article 5. Limitations of Actions |
| Personal Actions and General Provisions |

K.S.A. 60-513

60-513. Actions limited to two years

Currentness

(a) The following actions shall be brought within two years:

(1) An action for trespass upon real property.

(2) An action for taking, detaining or injuring personal property, including actions for the specific recovery thereof.

(3) An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered.

(4) An action for injury to the rights of another, not arising on contract, and not herein enumerated.

(5) An action for wrongful death.

(6) An action to recover for an ionizing radiation injury as provided in K.S.A. 60-513a, 60-513b and 60-513c, and amendments thereto.

(7) An action arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract.

(b) Except as provided in subsections (c) and (d), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

(c) A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action.

(d) A negligence cause of action by a corporation or association against an officer or director of the corporation or association shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than five years beyond the time of the act giving rise to the cause of action. All other causes of action by a corporation or association against an officer or director of the corporation or association shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury and there exists a disinterested majority of nonculpable directors of the corporation or association, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable and there exists a disinterested majority of nonculpable directors of the corporation or association, but in no event shall such an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action. For purposes of this subsection, the term "negligence cause of action" shall not include a cause of action seeking monetary damages for any breach of the officer's or director's duty of loyalty to the corporation or association, for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, for liability under K.S.A. 17-5812, 17-6410, 17-6423, 17-6424 or 17-6603 and amendments thereto, or for any transaction from which the officer or director derived an improper personal benefit.

(e) The provisions of this section as it was constituted prior to July 1, 1996, shall continue in force and effect for a period of two years from that date with respect to any act giving rise to a cause of action occurring prior to that date.

**Credits**
Laws 1963, ch. 303, 60-513; Laws 1968, ch. 6, § 1; Laws 1976, ch. 254, § 1; Laws 1987, ch. 222, § 1; Laws 1996, ch. 127, § 1.

Notes of Decisions (1004)

K. S. A. 60-513, KS ST 60-513
Statutes are current through laws enacted during the 2014 Regular Session of the Kansas Legislature and those laws enacted during the 2015 Regular Session of the Kansas Legislature effective on or before June 26, 2015 (chapters 1, 4, 5, 9, 13, 14, 27, 32, 39, 41, 43, 48, 49 (partial), 50, 51, 54, 56, 59, 72, 74, 79, 80, 81 (partial), 84, 86, 92 (partial) and 103).

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# Tab 15

## 171.02

## TYPES OF DAMAGES ALLOWED—PERSONAL INJURY

When determining the amount of damages sustained by the plaintiff, you must allow the amount of money that will reasonably compensate plaintiff for his/her injuries and losses resulting from the occurrence in question. These injuries and losses may include any of the following shown by the evidence:

1. MEDICAL EXPENSES. Medical expenses include the reasonable expenses of necessary medical care, hospitalization and treatment received as a result of plaintiff's injuries to date (and the medical expenses plaintiff is reasonably expected to incur in the future) [reduced to present value].

2. ECONOMIC LOSS. Economic loss includes loss of time or income and losses other than medical expenses incurred as a result of plaintiff's injuries to date (and the economic loss plaintiff is reasonably expected to incur in the future) [reduced to present value].

3. NONECONOMIC LOSS. Noneconomic loss includes pain, suffering, disabilities, disfigurement and any accompanying mental anguish suffered as a result of plaintiff's injuries to date (and the noneconomic loss plaintiff is reasonably expected to suffer in the future) [reduced to present value].

[The reasonable value of any medical care, hospitalization, or treatment incurred by the plaintiff is a question for the jury to determine. Evidence relevant to determining the reasonable value of an injured plaintiff's medical expenses may include the amount actually billed by the health care provider. The evidence also may include write-offs or other acknowledgments that something less than the amount charged has satisfied, or will satisfy, the amount billed. Accordingly, neither the amount billed nor the amount actually accepted after a write-off conclusively establishes the reasonable value of medical services.]

When determining the amount of plaintiff's damages you must consider plaintiff's age, condition of health before and after the occurrence in question, and the nature, extent and duration of the plaintiff's injuries.

If you find plaintiff suffered an injury or injuries and more than minimal discomfort as a result of the occurrence, then you must compensate the plaintiff for plaintiff's pain and suffering. There is no unit value and no mathematical formula the court can give you for determining items such as pain, suffering, disability, and mental anguish. You must establish an amount that will fairly and adequately compensate the plaintiff. This amount rests within your sound discretion.

## You must itemize the amounts of damages awarded in this case on the verdict form.

**Notes on Use**

For authority, see K.S.A. 60-249a. This instruction combines the two separate instructions which originally appeared as 171.01 and 171.02.

The trial court should instruct the jury only on those items of damage upon which there is some evidence to base an award. The parenthetical language should be included when there is evidence of future damages. The bracketed language should be used only when evidence of present value has been introduced.

In *Martinez v. Milburn Enterprises, Inc.*, 290 Kan 572, 233 P.3d 205 (2010), the court held that the collateral source rule did not bar evidence of the amount originally billed by the health care provider for plaintiff's medical treatment or the reduced amount accepted by the provider in full satisfaction of the amount billed. Evidence of the amount billed and the reduced amount accepted are relevant to prove the reasonable value of medical treatment. If such evidence is admitted, the bracketed paragraph regarding the reasonable value of medical treatment should be used. In addition, a limiting instruction must be given. See PIK 4th 102.40, Limited Admissibility of Evidence as to One Party or Purpose.

In *Stowers v. Rimel*, 19 Kan. App. 2d 723, 875 P.2d 1002 (1994), the jury returned a verdict limited to the plaintiff's medical expenses. Because the evidence was uncontradicted that plaintiff had experienced pain and suffering, the trial court instructed the jury to resume its deliberations to consider that element of damage. On appeal, the Court of Appeals affirmed the trial court's order that the jury resume its deliberations.

Under circumstances like those presented in *Stowers*, the following instruction could be used:

> In view of your verdict awarding medical expenses, the law requires that you award some amount for pain and suffering. You should resume your deliberations to determine that amount. The amount of damages rests within your sound discretion.

This pattern instruction must be revised or modified if the underlying theory to support recovery is based upon diminution or deprivation of chance to survive. See *Boody v. U.S.*, 706 F. Supp. 1458 (D. Kan. 1989), and *Donnini v. Ouano*, 15 Kan. App. 2d 517, 810 P.2d 1163 (1991). See also PIK 4th 181.05, Verdict Form—Loss of Chance Issue—Survival, and PIK 4th 123.21, Loss of Chance—Survival—Causation.

**Comment**

In a personal injury action, the incidence of federal or state income taxation is not a proper factor to be considered by the jury in making an award of damages. *Rediker v. Chicago, Rock Island & Pacific Rld. Co.*, 1 Kan. App. 2d 581, 590, 571 P.2d 70 (1977); *Spencer v. Eby Construction Co.*, 186 Kan. 345, 350, 350 P.2d 18 (1960).

In an action for personal injuries, the trial court should instruct the jury only on those items of damage upon which there is some evidence to base an award. It is not proper to give a general instruction on damages for "any of the following shown by the evidence," when there is no evidence to support an award for a particular item. *Wahwasuck v. Kansas Power & Light Co.*, 250 Kan. 606, 828 P.2d 923 (1992); *Garrison v. Marlatt*, 224 Kan. 390, 580 P.2d 885 (1978).

A defendant in any action is allowed to have amounts allowed for future damages reduced to present worth where there are reasonable grounds to expect that the amount awarded may be safely and profitably invested. Evidence demonstrating how to compute present worth, either by way of expert testimony or appropriate mathematical tables or formulae, is admissible in any action in which substantial future damages are claimed. *Gannaway v. Missouri-Kansas-Texas Rld. Co.*, 2 Kan. App. 2d 81, 575 P.2d 566 (1978).

Disfigurement has been defined as that which impairs or injures the beauty, symmetry or appearance of a person or thing, that which renders unsightly, misshapen or imperfect, or deforms in some manner. *Smith v. Marshall*, 225 Kan. 70, 587 P.2d 320 (1978). Evidence of a locking elbow which occurred frequently and without warning meets the definition of disfigurement. *Ratterree v. Bartlett*, 238 Kan. 11, 21, 707 P.2d 1063 (1985), citing with approval this instruction.

Impairment of an injured party's capacity to earn is relevant in calculating that party's loss of income. The amount of damages to be awarded is determined by "comparing what the injured party was capable of earning at or before the time of the injury with what the party is capable of earning after the injury." The injured party's health and physical ability before and after the injury should also be considered. *Morris v. Francisco*, 238 Kan. 71, 79, 708 P.2d 498 (1985). See also *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 837 P.2d 330 (1992).

Loss of enjoyment of life is not a separate category of nonpecuniary damages in a personal injury action and it is error to submit a separate instruction, or provide a separate verdict form entry, on loss of enjoyment of life. However, in a proper case loss of enjoyment of life is a valid subcomponent or element of pain and suffering and/or disability. *Leiker v. Gafford*, 245 Kan. 325, 778 P.2d 823 (1989).

Under the rationale of *Leiker*, the trial court properly allowed plaintiff to argue loss of enjoyment of life and instructed the jury that such a loss is an element of disability, pain, and suffering. *Gregory v. Carey*, 246 Kan. 504, 514, 791 P.2d 1329 (1990).

60-19a01 and 60-19a02 limit maximum allowable recovery for noneconomic loss to $250,000 in any action for personal injuries. In *Samsel v. Wheeler Transport Services, Inc.*, 244 Kan. 726, 771 P.2d 71 (1989), these limits were held constitutional. The jury is not to be told about the statutory limit, but is required to itemize the amount awarded for pain and suffering. Although it is proper for counsel to tell the jury that the plaintiff is only asking for $250,000 for noneconomic loss or that plaintiff's claim for such loss is limited to $250,000, the jury is not to be told that this is a statutory limitation. *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 311, 836 P.2d 1102 (1992).

Anxiety based upon a reasonable fear that an existing injury will lead to the occurrence of a disease or condition in the future is an element of recovery. For the fear to be reasonable, it is not necessary to show that the prospect of such an occurrence is a medical certainty or probability. It is sufficient if there is a showing that a substantial possibility exists for such an occurrence. *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 308, 836 P.2d 1102 (1992).

A disability may be a noneconomic loss or an economic loss. If damages are awarded for pain and suffering based upon a disability, the disability is a noneconomic loss subject to a damages cap. If the damages award is for diminished earning capacity based on that disability, the loss is economic and not subject to a damages cap. Extent of diminished earning capacity is arrived at by comparing what the injured party was capable of earning at or before time of injury with what party is capable of earning after injury. *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, 471, 856 P.2d 906 (1993).

Economic damages include the cost of medical care, past and future, and related benefits, *i.e.*, lost wages, loss of earning capacity, and other such losses. Noneconomic losses include claims for pain and suffering, mental anguish, injury, disfigurement not affecting earning capacity, and losses which cannot be easily expressed in dollars and cents. *McKissick v. Frye*, 255 Kan. 566, 588, 876 P.2d 1371 (1994).

In *Shirley v. Smith*, 261 Kan. 685, 933 P.2d 651 (1997), a medical malpractice case arising from an unsuccessful bone marrow operation, the court allowed the plaintiff to claim economic damages for loss of time spent by the plaintiff in self-catheterization. The court determined that loss of time was compensable as measured by the amount an employer would have paid plaintiff for the time spent on the procedure. The amount awarded was not subject to the cap for noneconomic damages.

In *Wilson v. Williams*, 261 Kan. 703, 710, 933 P.2d 757 (1997), the court allowed a per diem or mathematical formula argument by counsel in order for a jury to place value on pain and suffering. This decision overruled *Caylor v. Atchison, T. & S. F. Rly. Co.*, 190 Kan. 261, 374 P.2d 53 (1962). Even though counsel is now allowed to argue a mathematical formula for the jury to compute pain and suffering, the trial court should not provide a mathematical formula to the jury.